# No. 09-50323

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### UNITED STATES OF AMERICA,
**Plaintiff-Appellee,**

**v.**

**SAID FRANCISCO HERRERA, also known as Shorty; ARTURO ENRIQUEZ, also known as Tury; MANUEL CARDOZA, also known as Tolon; CARLOS PEREA, also known as Shotgun; EUGENE MONA, also known as Gino; BENJAMIN ALVAREZ, also known as T-Top Defendants-Appellants.**

**Appeal from the United States District Court
for the Western District of Texas**

—————————————————

**BRIEF FOR DEFENDANT-APPELLANT
CARLOS PEREA, also known as Shotgun**

—————————————————

John D. Gates
1700 N. Stanton
El Paso, Texas  79902
(915) 532-3638
Fax (915) 545-1066
Attorney for Carlos Perea

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.   These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.  Carlos Perea, defendant-appellant;

2.  Johnny Sutton, Former United States Attorney
    John E. Murphy, Acting United States Attorney;

3.  Jose Luis Acosta, Assistant United States Attorney who
        represented plaintiff-appellee in the district court;

4.  Joseph H. Gay, Jr.,  Assistant United States Attorney who
        represents the plaintiff-appellee before this court;

5.  Gary B. Weiser, who represented defendant-appellant in
        the district court;

7.  John D. Gates, who represents defendant- appellant before
        this court.

_____
John D. Gates
Attorney for defendant-appellant
/s/ John D. Gates

ii

## STATEMENT REGARDING ORAL ARGUMENT

Carlos Perea ("Perea"), defendant-appellant, does not believe that oral argument is necessary in this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS..........................................ii

STATEMENT REGARDING ORAL ARGUMENT................................iii

TABLE OF CONTENTS..........................................................................iv

TABLE OF AUTHORITIES.................................................................v-vi

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUES……......................................................2

STATEMENT OF THE CASE..............................................................2-6

   *Nature of the Case*………………………………………………2-4

   *Course of Proceedings and Disposition in the Court Below*……….4

   *Statement of Facts*…………………………..…………………....5-6

SUMMARY OF THE ARGUMENT.........................................................6

ARGUMENT.....................................................................................6-18

CONCLUSION.....................................................................................18

CERTIFICATE OF SERVICE...............................................................19

CERTIFICATE OF COMPLIANCE......................................................19

# TABLE OF AUTHORITIES

**Cases**                                                      **Page**

*Brady v. Maryland*, 373 U.S. 83 (1963)……………………….…9, n. 5

*Estelle v. Williams,* 425 U.S. 501 (1976)……………………………..15

*Holbrook v. Flynn,* 475 U.S. 560 (1986)………………………………..15

*Kyles v. Whitley*, 514 U.S. 419 (1995)……………………………….…9

*Powell v. Quarterman*, 536 F. 3d 325 (5th Cir. 2008)……………………10

*United States v. Auten*, 632 F. 2d 478, 480 (5th Cir. 1980)………..…….18

*United States v. Cervantes,* 132 F. 3d 1106 (5th Cir. 1998)…………….17

*United States v. Dula,* 989 F.2d 772 (5th Cir.1993)………………………7

*United States v. Dupre,* 117 F.3d 810 (5th Cir.1997)……………………7

*United States v. Edwards*, 442 F. 3d 258 (5th Cir. 2006)………………..16

*United States v. Holmes,* 406 F.3d 337 (5th Cir.2005)…………………..7

*United States v. Krout*, 66 F. 3d 1420 (5th Cir. 1995)………………….12-14

*United States v. Miller*, 520 F. 3d 504 (5th Cir. 2008)……………………7

*United States v. Perea*, 625 F. Supp. 2d 327 (W.D. Tex. 2009)…...12, n. 7

*United States v. Runyan*, 290 F. 3d 223 (5th Cir. 2002)………………….9

*United States v. Sanchez,* 74 F. 3d 562 (5th Cir. 1996)…………………11

*United States v. Severns*, 559 F. 3d 274 (5th Cir. 2009)…………………9

*United States v. Sipe*, 388 F. 3d 471 (5th Cir. 2004)……………….……9

*United States v. Theriault,* 531 F.2d 281 (5th Cir.)…………………..….15

**Statutes/Rules**

18 U.S.C. § 3231……………………………………………….…………1

28 U.S.C. § 1291……………………………………………….…………1

18 U.S.C. § 3742(a)…………………………………………………………1

Fed. R. App. P. 4(b) and 26(a)……………………………………………1

FED. R. CRIM. P. 33……………………………………………………..9

**United States Sentencing Guidelines**

U.S.S.G §3D1.3(a)……………………………………………………….3

**Constitutional Provisions**

None

**Other**

None

# STATEMENT OF JURISDICTION

## Subject Matter Jurisdiction in the District Court

This case arose from the  prosecution of an alleged offense against the laws of the United States, thereby conferring jurisdiction on the district court under 18 U.S.C. § 3231.

## Jurisdiction in the Court of Appeals

This is a direct appeal from a final decision of the United States District Court for the Western District of Texas, entering judgment of criminal conviction and sentence under the Sentencing Reform Act of 1984.  This court has jurisdiction of the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Under Federal Rules of Appellate Procedure 4(b) and 26(a) in effect at the time, a criminal defendant who wishes to appeal a district court judgment must file notice of appeal in the district court within ten days (excluding intermediate Saturdays and Sundays) of the entry of either the judgment or the order being appealed.[1]  In this case, written judgment was entered on April 14, 2009 and Perea timely filed his notice of appeal on  April 23, 2009.  (CR, p. 1627; Rec. Exc. tab 2).[2]

---

[1] Under the new appellate rules, effective December 1, 2009, the notice of appeal in a criminal case must be filed within 14 days of the entry of judgment.

[2] The record on appeal with be cited:  the clerk's record as "CR [page number]"; the reporter's record as "RR, [volume][page number]"; the presentence investigation report as "PSR [paragraph number];" and the record excerpts as "Rec. Exc. [tab number]."

## STATEMENT OF THE ISSUES

1.  The trial court committed error when it denied Perea's motion for dismissal or, in the alternative, a motion for new trial, because of the government's violations of the discovery rules.

2.  The trial court committed error when it denied Perea's motion for dismissal or, in the alternative, a motion for new trial, because of the overtly prejudicial manner of transporting the jurors to and from the courthouse.

3. The trial court committed error when it denied Perea's motion for an evidentiary hearing in the sentencing phase because of the government's unexpected allegations of  unadjudicated extraneous offenses neither supported by evidence at trial or provided through the discovery process.

## STATEMENT OF THE CASE

Nature of the Case

In an eleven-count indictment filed in the Western District of Texas, El Paso Division, Perea was charged with:

*Count 1*:  Engaging in the Affairs of an Enterprise Through a Pattern of Racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963(a);

*Count 2*:  Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering, in violation of 18 U.S.C. §§ 1962(d) and 1963(a);

*Count 4*:  Conspiracy to Laundering Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(l,) B(i) and (h);

*Count 5*:  Conspiracy to Possess Over 1 Kilogram of Heroin, Over 5 Kilograms of Cocaine, and Over 100 Kilograms of Marijuana, with Intent to Distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii) and (b)(1)(B)(vii).  (CR, pp. 28-52).

Perea was held accountable for the collection of approximately $960,000.00 in *"cuota"* or taxes paid by various drug-traffickers who were given permission by

the Barrio Azteca ("BA") gang to sell narcotics under the BA's jurisdiction. (PSR, ¶ 245). Perea was also accountable for the narcotics trafficking and money laundering, and for the murders of various individuals who either failed to pay a *cuota* or violated BA rules. (PSR,¶ 245).

In accordance with the relevant provisions of the United States Sentencing Guidelines ("Sentencing Guidelines"), all of the above-listed counts were grouped, with the highest offense level applicable to the group determinative of the offense level for the group. U.S.S.G §3D1.3(a);(PSR, ¶ 245). In this case, the highest or greatest of the adjusted offense levels was 52, stemming from the attributable murders of various individuals (base offense level of 43, with a plus 4 adjustment for Perea's role in the offense, and an increase in offense level of 5); however, a comment to the Sentencing Guidelines provides that an offense level over 43 is to be treated as on offense level of 43. (PSR, ¶¶ 302-369); U.S.S.G. Ch. 5, Pt. A, note 2).

Following a jury trial in which Perea was found guilty on counts one, two, four and five, the district court sentenced the appellant to imprisonment for a term of life on each of counts one, two and five, and 240 months as to count four, all to be served concurrently, while the sentences would be served consecutively with a sentence earlier imposed in federal court. (CR, pp. 1607-1608; Rec. Exc., tab 4). In addition, the judge sentenced Perea to non-reporting supervised release for a

term of 5 years on counts one, two, and five, and three years on count four, to be served concurrently, as well as a $400.00 assessment and a fine of $2500.00. (CR, pp. 1608-1612; Rec. Exc., tab 4).

On appeal, Perea argues that the court erred in denying his motion for mistrial or new trial based upon discovery violations and the government's prejudicial transportation of jurors by armed personnel to and from a military installation.

Course of Proceedings and Disposition of Case by the District Court

On November 3, 2008, Perea, together with five co-defendants,[3] proceeded to a trial before a jury, the Honorable David Briones, United States District Judge, presiding, and after a four-week trial, was found guilty by the jury on all four counts. (CR, p. 138). On July 14, 2009, the district court sentenced Perea to imprisonment for a term of life on each of counts one, two and five, and 240 months as to count four, all to be served concurrently, non-reporting supervised release of five years, and a special assessment of $400.00 and a fine of $2500.00 (CR, pp. 1608-1612; Rec. Exc., tab 4).

Perea appeals, resulting in this brief. (CR, p. 1627; Rec. Exc. tab 2).

---

[3] Those co-defendants were Manuel Cardoza, Benjamin Alvarez, Eugene Mona, Said Francisco Herrera, and Arturo Enriquez.

Statement of Facts[4]

Perea is a member of a gang known as the Barrio Azteca ("BA") a criminal organization allegedly involved in activities of extortion, retaliation, robbery, assault, murder, money laundering and narcotics trafficking. Members of the BA are principally located in prison—either in local jails, state prisons, or federal correctional facilities—or "on the outside" in El Paso, Texas and other locales. The organization has a hierarchy that includes "*capos*," (captains), of which Perea was one, and others in a descending rank, to embrace lieutenants, sergeants and soldiers, also known as "*indios*." Generally, a BA member who is released from prison is instructed to report to a ranking member of the organization in El Paso or another city, so that he can be instructed in his next task for the group.

During the period from January 1, 2003 to January 9, 2009, the BA, with Perea among them (although he was in prison during the entire time), allegedly engaged in the various criminal enterprises listed above. Much of the income to the organization was generated through the sale of narcotics and the collection of "*cuotas*," payments received through extortion or threats, and many of the orders to carry out specific tasks of the enterprise are issued from members who reside in

---

[4] As this brief makes mention several times in its entirety, there exists approximately 4000 pages of testimony in this trial, occurring over a four-week period. For that reason, no concise factual summary can be found in any easily compact form in any witnesses' particular testimony; however, the cites to the record do give the reader some guidance.

prison, either through letters or telephone conversations.  (RR 2, pp. 138-216; RR 6, pp. 14-39; PSR ¶¶ 31-232).

## SUMMARY OF THE ARGUMENT

The trial court erred when, following a lengthy trial, counsel for Perea discovered that there existed exculpatory information that had not been submitted to him by the government—an error that should have required a mistrial.  In addition, a mistrial or new trial should have been granted after Perea's counsel was made aware that, during the course of the four-week trial, jurors were secretly shuttled to and from the courthouse from a local military installation in vehicles belonging to the United States Marshals Office, those officers being armed, creating overwhelming prejudice against Perea.  Finally, the court erred in not granting an evidentiary hearing during the sentencing phase when counsel became aware that the probation office were utilizing unadjudicated extraneous offenses neither supported by evidence at trial or provided through the discovery process.

## ARGUMENT

**Issue No. One:   The trial court committed error when it denied Perea's motion for dismissal or, in the alternative, a motion for new trial, because of the government's violations of the discovery rules.**

<u>Standard of Review</u>

This court will review alleged errors in the administration of discovery rules under an abuse of discretion standard and will not reverse on that basis unless a

defendant establishes prejudice to his substantial rights."*United States v. Holmes,* 406 F.3d 337, 357 (5th Cir.2005).   The court will also review denials of motions for mistrial and for a new trial for an abuse of discretion. *United States v. Dupre,* 117 F.3d 810, 823 (5th Cir.1997); *United States v. Dula,* 989 F.2d 772, 778 (5th Cir.1993).  If, however, the motion is based upon allegations of *Brady* error, the district court's determination is reviewed *de novo.  United States v. Miller*, 520 F. 3d 504, 514 (5th Cir. 2008).

<u>Argument and Authorities</u>

*The Motion and Its Response*

Following the trial of this matter, trial counsel for  Perea filed "Defendant's Motion for Dismissal on the Basis of *Brady* Violations or in The Alternative for a New Trial." (CR, pp. 1599-1603).  In that motion, counsel argued that, after reading the PSR filed in the case, he had become aware that "important exculpatory information" was never disclosed to him in discovery.  (CR, p. 1599). Specifically, the motion sets out that information supplied by undisclosed sources reveal that (1) information given to the government by non-indicted informants about indicted codefendants who eventually became government witnesses at trial and (2) information of criminal activity of non-indicted informants who also testified against Perea at trial.  (CR, p. 1599).

In addition, the motion asserts that there were numerous other *Brady* violations, among them, that the murders alluded to in the PSR based on confidential reports allege that the killings were ordered by persons other than Perea, and carried out, by others, yet, those reports were not  provided to Perea in the discovery phase and, therefore, were not available to his counsel for vigorous cross-examination and impeachment purposes at trial.  (CR, pp. 1599-1601). Because of this, Perea argued in the motion that he was denied basic constitutional rights.

The government responded to the motion, stating that the reports in question were provided to the probation office "from the government's copy of reports resubmitted to defense counsel during trial," and, therefore, no violation of *Brady* or the court's discovery order resulted.  (CR, pp. 1620-1621).  In addition, the government alleges that the reports put into question by Perea's counsel are not *Brady* material because the information contained in the documents are not impeachment evidence, "but merely information that was provided to the witness by another sources (sic) after the fact."  (CR, p.1621).  Finally, the government contends that Perea's motion, notwithstanding its other arguments, would not satisfy the so-called *Berry* test. (CR, p. 1622).

*Rules and Case Law*

Of course, the Federal Rules of Criminal Procedure authorizes a district court to grant a new trial "in the interest of justice," based upon a defendant's motion.  FED. R. CRIM. P. 33.  To make out a *Brady*[5] violation, a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment.  *United States v. Severns*, 559 F. 3d 274, 278 (5th Cir. 2009). Evidence is material under *Brady* "when there is a 'reasonable probability' that the outcome of the trial would have been different if the suppressed evidence had been disclosed to the defendant."  *United States v. Runyan*, 290 F. 3d 223, 245 (5th Cir. 2002).  A "reasonable probability" can be established when the failure to disclose the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Kyles v. Whitley*, 514 U.S. 419 (1995). Further, when there are alleged to be a number of *Brady* violations, a court must analyze "whether the cumulative effect of all such evidence suppressed by the government raises a reasonable probability that its disclosure would have produced a different result."  *United States v. Sipe*, 388 F. 3d 471, 479 (5th Cir. 2004).

---

[5] *See Brady v. Maryland*, 373 U.S. 83 (1963) as the progenitor of the long march of *Brady* cases.

*Summary*

As evidenced by even a cursory examination of the myriads of pages of witness testimony in this case (approximately 4000),  Perea's chief argument and defense is that, although his name is breezily bandied about throughout the trial as a principle in ongoing criminal acts, there is no concrete or reliable evidence directly linking him to allegations of extortion, murder, drug trafficking or money laundering.[6]  For that reason, a vigorous cross-examination, as Perea's trial counsel maintained, is necessary to exploit this principal weakness in the government's case.

This court has held that a defendant is not prejudiced by a tardy disclosure of *Brady* material if it was submitted to counsel "in time for its effective use at trial." *Powell v. Quarterman*, 536 F. 3d 325, 335 (5th Cir. 2008). Here, as Perea maintained in his motion, two government witnesses, Gustavo Gallardo and Gerardo Hernandez, gave "damning" testimony against Perea, yet, government reports pertaining to alleged murders carried out by the two witnesses were not submitted to counsel for cross-examination and impeachment of these two men in

---

[6] As an example, a member of the BA who became a paid informant for the FBI, after detailing two drug deals  in his direct examination, was asked on *voir dire* by Perea's attorney if Perea had anything to do with those transactions, to which he answered, "No."  (RR, 4, p. 151).  Similarly, another former BA member turned government witness could not identify Perea, and further stated that Perea never gave him instructions, or talked to him or wrote him a letter.  (RR, 4, pp. 181, 185, 236-237).   In fact, even an El Paso Police Officer assigned to the gang task force admitted under cross-examination that there was no evidence to connect Perea with the murder of David Meraz.  (RR7, p. 69).

time for that effective use.  (CR, p. 1600; also see testimony at RR 4, pp. 169-283;

RR 5, pp.21-111; RR 6, pp. 14-166).

**Issue No. Two:   The trial court committed error when it denied Perea's motion for dismissal or, in the alternative, a motion for new trial, because of the overtly prejudicial manner of transporting the jurors to and from the courthouse.**

Standard of Review

A district court's decision to empanel an anonymous jury is entitled to

deference and is scrutinized by this court for abuse of discretion.  *United States v.*

*Sanchez,* 74 F. 3d 562, 564 (5th Cir. 1996).

Argument and Authorities

*The Motion and Its Response*

In the same motion that Perea filed after trial seeking a mistrial or new trial

for discovery and *Brady* abuses, as outlined above, he also sought the same relief

because his attorney had new information that the jurors in the case had been

transported to and from a local United States Army installation, Ft. Bliss, to the

courthouse every day of trial.  (CR, pp. 1602-1603).  According to the motion, the

jurors were placed in a vehicle operated by the United States Marshals Service,

which were equipped with high-powered weapons in full public view.  (CR, p.

1602).  Perea alleges that this mode of heavily guarded and protected

transportation indicated to each juror that they were in extreme danger from "the

very people that they were to judge in the trial," thereby impeding Perea's right to a fair trial. (CR, p. 1602).

*The Memorandum Opinion and* Krout

The court responded to the motion with an order[7] that found that that the procedures undertaken to protect the jurors were "wholly appropriate." (CR, p. 1652). The court bases its assessment on one appellate case, one in which this court set out the following five factors that justifies an anonymous jury, only, and nothing else:

> (1) the defendants' involvement in organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties; and, (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment. (CR, p. 1652) (citing *United States v. Krout*, 66 F. 3d 1420, 1427 (5th Cir. 1995)).

Reliance by both the government and the district court on *Krout* is misplaced. In that case, anonymous jury empanelment was an issue of first impression where seven defendants were tried for participating in a continuing enterprise of murder, drug distribution, and other offenses as members of a Texas prison gang known as the "Mexican Mafia." *Id*. at 1424. The district judge in *Krout*, in assuming that anonymity "would dispel possible fear by jurors for their

---

[7] In addition to its inclusion in the record, that order can be viewed at *United States v. Perea*, 625 F. Supp. 2d 327 (W.D. Tex. 2009).

safety and promote impartial verdicts," prohibited the disclosure to the parties of the names, addresses, and places of employment of the jurors, and also ordered a United States Deputy Marshal to accompany jurors at recesses and to pick up and drop off jurors at an undisclosed location at the beginning and end of each day. *Id.* at 1427, n. 5.

Importantly, however, while the anonymity of the jurors persisted throughout trial, the judge in *Krout* did not put into effect his proposed method of transporting the jurors with an armed guard; rather the court allowed jurors to report directly to the courthouse each day during the course of the trial. *Id.* Logically, then, the remainder of this court's opinion on the jury anonymity issue focused on just that: the concealment of the jurors' identities, and not the method of guarded transportation to undisclosed "drop-off" points. Put another way, *Krout* only addresses identity protection, not an exotic and secretive method of shuttling jurors to and from a military base and the courthouse, so the that the issue of prejudicial transporting, it can be argued, is still one of first impression.

Despite the limitation of *Krout* to jury identity secrecy, only, the trial court here, in its order denying the mistrial, stated, "Thus, the Fifth Circuit [in *Krout*] upheld the district court's empanelment of an anonymous jury, *including transportation of the jurors by a U.S. Deputy Marshal to parking at an undisclosed location.*" (CR, p. 1652) (emphasis added). Based on this erroneous assumption

of what *Krout* stands for, the district court then went on to justify its use of the United States Marshals Office to ferry jurors from an Army installation to the courthouse and back, all based on the inapplicable *Krout* factors.  (CR, p. 1653)

And, for the sake of argument, even if the five factors listed above were relevant to a decision to use stealthy, commando-like methods for the movement of jurors,  they simply could not justify the implementation of such prejudicial conduct present in this case.  Certainly, the defendants were involved in organized crime and faced lengthy prison sentences, but there is no evidence that they had the capacity to harm jurors, that there were past attempts to interfere with the judicial process or witnesses, or that there was extensive publicity that could expose the jurors to intimidation and harassment.

But in his order, the trial court states that, "while no threat was ever perceived against a juror, undoubtedly the BA, with its extensive ties to [a drug trafficking organization], had the capacity to harm jurors."  (CR, pp. 1652-1653). This statement is pure assumption, and it being predicated upon one organization's relationship with another begs clarification.  Further, the court does not address the fourth factor concerning  the length of incarceration but, instead, states, without adequate explanation, that the "last factor—extensive media coverage—was the factor of most concern…." (CR, p. 1653).

None of this can dispel the deeper issue at play: the outright prejudice that the court-imposed quasi-military transportation of jurors produced.

*Summary*

An accused is, of course, presumed innocent and, as such, is entitled to all of the trappings of innocence during trial. *United States v. Theriault,* 531 F.2d 281 (5th Cir.), *cert. denied,* 429 U.S. 898 (1976). For example, the state may not compel an accused to appear before the jury in prison garb. *Estelle v. Williams,* 425 U.S. 501 (1976). The Supreme Court also has instructed that some procedures, such as shackling, pose a threat to the factfinding process and are to be closely scrutinized. *Holbrook v. Flynn,* 475 U.S. 560 (1986). In *Holbrook*, the Court stated that "certain practices pose such a threat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny." and such scrutiny should be directed at any "constant reminder of the accused's condition…." *Id*. (quoting *Estelle,* 425 U.S at 503-504. While the Court held that the practice of armed security guards *within* the courtroom is generally acceptable, it did not address the rather bizarre idea of shuttling jurors by armed guards in United States Marshals Office vehicles to military installations, then back again, all of it in an atmosphere of secrecy and stealth, weaponry brandished, with the idea of imminent catastrophe because of their jury service made evident.

Besides creating the obvious inference that the defendants were so dangerous and wild and unpredictable that it required a quasi-military operation to secure the jury's safety, the clandestine transportation practice authorized and implemented by the judge simply served to show the jurors—chauffeured and protected by United States Marshals and the United States Army—that they were not independent and unbiased factfinders, ordinary citizens, but were, in fact, an extension of the team, as it were, plainclothes (and unwitting)  soldiers in the government's war against crime.[8]

The prejudice occasioned by what the trial court deemed a simple precautionary measure is overwhelming, and constitutes obvious error.

**Issue No. Three:   The trial court committed error when it denied Perea's motion for an evidentiary hearing in the sentencing phase because of the government's unexpected allegations of  unadjudicated extraneous offenses neither supported by evidence at trial or provided through the discovery process.**

Standard of Review

A district court's denial of a request for an evidentiary hearing is reviewed for abuse of discretion.  *United States v. Edwards*, 442 F. 3d 258, 264 (5th Cir. 2006).

---

[8] Although courts routinely provide jurors with refreshments, lunches, and even overnight accommodations in the even of a sequestered jury, note should be taken of a gratuity that may exceed that which is normal:  the government's offer (and acceptance, it seems) of free transportation of jurors in government vehicles, when there is no logical reason to do so.

Argument and Authorities

*The Motion*

After trail, Perea's trial counsel filed his "Motion for Evidentiary Hearing," requesting a hearing in connection with the sentencing of his client. (CR, p. 1586). In support of that motion, Perea's attorney stated that he had received a 97-page PSR which raised a series of questions about unadjudicated extraneous offenses which were not supported by evidence adduced at trial or by way of discovery. (CR, p. 1586). Specifically, the motion went on, the PSR attempted to hold Perea accountable for the collection of $960,000.00 in "*cuota*" (taxes), a large volume of illicit drugs, and the murders of eight individuals. (CR, p. 1587). Because of those allegations, the probation office increased Perea's sentence pursuant to the relevant conduct portion of the Sentencing Guidelines, and Perea requested a hearing so that the government could establish a nexus between the alleged crimes and Perea before he could be held accountable for such. (CR, p. 1587). The motion was denied by inaction.

*The Case Law*

This court has held that a defendant is entitled to an evidentiary hearing if he produces "independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties…." *United States v. Cervantes,* 132 F. 3d 1106, 1110 (5th Cir. 1998). This, of course, is to preclude

mere conclusory allegations to support such a request. *United States v. Auten*, 632 F. 2d 478, 480 (5th Cir. 1980).

Although there were no affidavits introduced, of course, the trial court had more than sufficient evidence, based upon the 4000 pages of testimony, to adequately rule without them. As Perea's trial counsel asserted, the PSR contained 97 pages of information and records, certainly more than any affidavit or a number of affidavits could supply.

Because of the allegations lodged by Perea's counsel (and others) concerning the eleventh-hour information received by defense counsel, the district court should have conducted a hearing to sort out all of the new and conflicting allegations.

## CONCLUSION

For the above reasons, this court should reverse the judgment of the trial court and remand the case for retrial.

Respectfully submitted,

_____
John D. Gates
1700 N. Stanton
El Paso, Texas  79902
(915) 532-3638; Fax (915) 545-1066
Attorney for defendant-appellant
/s/ John D. Gates

## CERTIFICATE OF SERVICE

I, John Gates, certify that on December 10, 2009 two copies of the brief for appellant and  one copy of the record excerpts, with a  compact disc of  both documents, and the official record in this case consisting of 1 volume of the clerk's record and 16 volumes of the reporter's record in electronic form were served upon the United States Department of Justice, through Mr. Joseph Gay, Jr., Chief of the Appellate Section, 601 NW Loop, 410 Ste. 600, San Antonio, Texas 78216, by first-class mail.  I also certify that a copy of the brief and record excerpts were served on Mr. Carlos Perea, #48383-080, USP Pollack, U.S. Penitentiary, P.O. Box 2009, Pollack, LA  71467, by first-class mail.

_____
John D. Gates
Attorney for defendant-appellant
/s/ John D. Gates

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 4212 words, excluding the parts of the brief exempted by Fed. R. App. P.  32(a)(7)(B)(iii) and 5th Cir. R. 32.2.

2.  This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P.32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2007 in Times New Roman 14-point font in text and 12-point font in footnotes.

3. Undersigned counsel also certifies that the clerk and opposing counsel are provided a computer readable compact disc of the brief, and will provide, upon request, a copy of the word printout to the court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limits in 5th Cir. R. 32.2 may result in the court's striking this brief and imposing sanctions against the person who signed it.

_____
John D. Gates
Attorney for defendant-appellant
Date:  December 10, 2009
/s/ John D. Gates