No. 09-50323

In the United States Court of Appeals
for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
v.

ARTURO ENRIQUEZ,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

RECORD EXCERPTS

PATRICK A. LARA, ESQ.

*Attorney for Defendant-Appellant*
501 North Kansas Street
Suite 206
El Paso, Texas 79901
Tel.: (915) 231-1809
Fax: (915) 532-0817
Texas Bar # 00792639

# RECORD EXCERPTS

## Contents

1. Criminal Docket (22 pages)          Page 1

2. Indictment (16 pages)          Page 23

3. Verdict (17 pages)          Page 39

4. Pre-Sentence Report (68 pages)          Page 56

5. Judgment (6 pages)          Page 124

6. Notice of Appeal (1 page)          Page 130

7. Certificate of Service          Page 132

# U.S. District Court [LIVE]
## Western District of Texas (El Paso)
## CRIMINAL DOCKET FOR CASE #: 3:08-cr-00059-DB-15

Case title: USA v. Perea, et al

Date Filed: 01/09/2008

Assigned to: Judge David Briones

Appeals court case number: '09-50365'
'5th Circuit USCA'

### Defendant (15)

**Arturo Enriquez**
*also known as*
Tury
*TERMINATED: 04/14/2009*

represented by **Leonard C. Morales**
Law Office of Leonard Morales
210 N. Campbell
El Paso , TX 79901
(915)546-2696
Fax: 915/532-0904
Email: Leonard@lmoraleslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Patrick Adam Lara**
Attorney at Law
501 North Kansas Street
Suite 206
El Paso , TX 79901
(915) 231-1809
Fax: (915) 532-0817
Email: plara2@mac.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

### Pending Counts

INTERFERENCE WITH COMMERCE
BY THREAT OR VIOLENCE in
violation of Title 18 USC, Section(s) 1951

### Disposition

180 months imprisonment, 3 years
supervised release, $1,000.00 fine, $100
S/A

(3)                                                                                                         3/A

## Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| CONSPIRACY TO POSSESS CONTROLLED SUBSTANCE - heroin, cocaine & marijuana with intent to distribute in violation of Title 21 USC, Section(s) 846 & 841(a)(1) (5) | Acquitted on count 5. |
| RACKETEERING ACTIVITY, MURDER/KIDNAPPING in violation of Title 18 USC, Section(s) 1959(a)(1) (11) | Not guilty on count 11. |

## Highest Offense Level (Terminated)

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

## Plaintiff

**USA**                                                            represented by   **Jose Luis Acosta**
U.S. Attorney's Office
700 E. San Antonio St.
Suite 200
El Paso , TX 79901
(915) 534-6884
Fax: 915/534-3418
Email: Jose.Acosta2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph H. Gay , Jr.**
Assistant U.S. Attorney
601 N.W. Loop 410
Suite 600
San Antonio , TX 78216
(210) 384-7090
Fax: 210/530-6180

Email: Joseph.Gay@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/09/2008 | 49 | MOTION to Seal Indictment/Information by USA as to Arturo Enriquez. (rrv, ) (Entered: 01/15/2008) |
| 01/09/2008 | 50 | ORDER granting 49 Motion to Seal Indicment as to Arturo Enriquez (15). Signed by Judge Norbert J. Garney. (rrv, ) (Entered: 01/15/2008) |
| 01/09/2008 | 51 | SEALED Indictment filed (Redacted Version) Unredacted document sealed pursuant to E-Government Act of 2002 as to Arturo Enriquez (15) count(s) 3, 5, 11. (rrv, ) (Entered: 01/15/2008) |
| 01/09/2008 | 53 | Personal Data Sheet (Redacted) by USA as to Arturo Enriquez (rrv, ) (Entered: 01/15/2008) |
| 01/09/2008 | 54 | ORDER FOR ISSUANCE OF Bench Warrant as to Arturo Enriquez. Signed by Judge Norbert J. Garney. (rrv, ) (Entered: 01/15/2008) |
| 01/09/2008 | 55 | Bench Warrant Issued as to Arturo Enriquez. (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | | Arrest of Arturo Enriquez (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | | INDICTMENT UNSEALED as to Arturo Enriquez (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | 56 | MOTION to Detain Defendant without Bond by USA as to Arturo Enriquez. (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | 57 | CJA 20 as to Arturo Enriquez: Appointment of Attorney Leonard C. Morales for Arturo Enriquez.. Signed by Judge Richard P. Mesa. (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | 58 | NOTICE OF HEARING as to Arturo Enriquez Arraignment set for 1/17/2008 10:00 AM before Judge Richard P. Mesa. Detention Hearing set for 1/17/2008 10:00 AM before Judge Richard P. Mesa. (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | | Minute Entry for proceedings held before Judge Richard P. Mesa:Initial Appearance as to Arturo Enriquez held on 1/14/2008 (Minute entry documents are not available electronically.) (Court Reporter ero.) (rrv, ) (Entered: 01/15/2008) |
| 01/14/2008 | | ORAL ORDER OF DETENTION: Bond set to no bond set as to Arturo Enriquez. by Judge Richard P. Mesa. (rrv, ) (Entered: 01/15/2008) |
| 01/15/2008 | 63 | Notice of Arrest to CRD Cabrera as to Arturo Enriquez (rrv, ) (Entered: 01/15/2008) |
| 01/15/2008 | 72 | Notice of Arrest from U.S. Marshals Service as to Arturo Enriquez (rrv, ) (Entered: 01/16/2008) |
| 01/15/2008 | 87 | Notice of Arrest from U.S. Marshals Service as to Arturo Enriquez (rrv, ) (Entered: 01/16/2008) |

| 01/16/2008 | 89 | ORDER SETTING as to Eric Saucedo, Eugene Mona, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, ( Docket Call set for 3/7/2008 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 01/16/2008) |
|---|---|---|
| 01/16/2008 | 116 | WAIVER of Detention Hearing by Arturo Enriquez (rrv, ) (Entered: 01/18/2008) |
| 01/17/2008 | 117 | ORDER OF DETENTION: Bond set to detain w/out bond as to Arturo Enriquez. Signed by Judge Richard P. Mesa. (rrv, ) (Entered: 01/18/2008) |
| 01/18/2008 | 118 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Arturo Enriquez (rrv, ) (Entered: 01/18/2008) |
| 01/18/2008 | 119 | General ORDER of Discovery as to Arturo Enriquez. Signed by Judge David Briones. (rrv, ) (Entered: 01/18/2008) |
| 02/22/2008 | 249 | MOTION for Extension of Time to File *Pre Trial Motions* by Arturo Enriquez. (Attachments: # 1 Proposed Order)(Morales, Leonard) (Entered: 02/22/2008) |
| 02/25/2008 | 250 | MOTION for Disclosure */LIMITED DISCLOSURE OF INDICTMENT* by USA as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (Acosta, Jose) (Entered: 02/25/2008) |
| 02/26/2008 | 253 | ORDER granting 249 Motion for Extension of Time to File as to Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 02/26/2008) |
| 02/27/2008 | 254 | ORDER granting 250 Motion for Disclosure as to Carlos Perea (1), Manuel Cardoza (2), Benjamin Alvarez (3), Gustavo Gallardo (6), Eugene Mona (7), Jose Martin Garcia (8), Roberto Duran (9), Danny Tarin (10), Johnny Michelletti (11), Said Francisco Herrera (12), Adam Munoz (13), Eric Saucedo (14), Arturo Enriquez (15), Sandy Valles New (16). Signed by Judge David Briones. (rrv, ) (Entered: 02/27/2008) |
| 03/04/2008 | 263 | MOTION *To Designate Case as "Unusual and Complex" and Tolling of Speedy Trial Provisions* by USA as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (Acosta, Jose) (Entered: 03/04/2008) |
| 03/07/2008 | 272 | ORDER GRANTING 263 Motion Designate Case Complex and Tolling of Speedy Trial Provisions as to Carlos Perea (1), Manuel Cardoza (2), Benjamin Alvarez (3), Gustavo Gallardo (6), Eugene Mona (7), Jose Martin Garcia (8), Roberto Duran (9), Danny Tarin (10), Johnny Michelletti (11), Said Francisco Herrera (12), Adam Munoz (13), Eric Saucedo (14), Arturo Enriquez (15), Sandy Valles New (16). Signed by Judge David Briones. (rrv, ) (Entered: 03/07/2008) |
| 03/07/2008 | 273 | Minute Entry for proceedings held before Judge David Briones:Docket Call as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, |

| | | Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 3/7/2008. Docket Call reset. (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 03/10/2008) |
|---|---|---|
| 04/17/2008 | 303 | ORDER TO CONTINUE - Ends of Justice as to Eric Saucedo, Arturo Enriquez, Sandy Valles New, ( Docket Call reset for 5/2/2008 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (lc3, ) (Entered: 04/18/2008) |
| 05/01/2008 | 316 | MOTION *for Reasonable Visitations with his Family and for General Mail and Telephone Correspondence with his Family* by Carlos Perea as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda. (Weiser, Gary) (Entered: 05/01/2008) |
| 05/02/2008 | 321 | Minute Entry for proceedings held before Judge David Briones:Docket Call as to Eric Saucedo, Arturo Enriquez, Sandy Valles New held on 5/2/2008. Docket Call reset. (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 05/02/2008) |
| 05/09/2008 | 327 | ORDER TO CONTINUE - Ends of Justice as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, ( Docket Call set for 7/11/2008 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 05/09/2008) |
| 05/14/2008 | | Notice of Correction: regarding Order Granting In Part/Denying In Part (document #329) Order applies to ALL Defendants in cause number EP-08-CR-59-DB / USA vs Carlos Perea, et al. (rrv, ) (Entered: 05/14/2008) |
| 05/14/2008 | 330 | Order received by U.S. Marshals regarding "Motion for Visitation" by Carlos Perea. Order refers to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, and related cases EP-08-CR-61-DB, EP-08-CR-62-DB, EP-08-CR-66-DB, EP-08-CR-68-DB, and EP-08-CR-69-DB. (rrv, ) (Entered: 05/14/2008) |
| 05/19/2008 | 332 | ORDER GRANTING Government's 311 Motion for Protective Order as to Carlos Perea (1). Signed by Judge David Briones. (rrv, ) (Entered: 05/21/2008) |
| 05/21/2008 | 334 | MOTION to Appoint Investigator by Sandy Valles New as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda. (Revelette, Nancy) (Entered: 05/21/2008) |
| 05/22/2008 | 336 | ORDER RESETTING as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel |

| | | |
|---|---|---|
| | | Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, ( Docket Call reset for 7/10/2008 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 05/23/2008) |
| 05/28/2008 | 339 | ORDER permitting defts limited telephonic and in-person communication as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda. Signed by Judge David Briones. (lc3, ) (Entered: 05/28/2008) |
| 05/28/2008 | 340 | Returned Certified Copy of Order from USMS by Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda (lc3, ) (Entered: 05/28/2008) |
| 07/07/2008 | 356 | ORDER RESETTING as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, ( Docket Call reset for 7/18/2008 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 07/07/2008) |
| 08/19/2008 | 382 | * MOTION *to Adopt Defendant, Sandy Valles New's Motion for Waiver of Maximum Compensation and Interim Payment* by Arturo Enriquez. (Attachments: # 1 Proposed Order)(Morales, Leonard) (Entered: 08/19/2008) |
| 08/22/2008 | 384 | * MOTION to Sever Defendant by Arturo Enriquez. (Attachments: # 1 Proposed Order)(Morales, Leonard) (Entered: 08/22/2008) |
| 08/22/2008 | 385 | MOTION to Suppress *Pre-Arrest Statements* by Arturo Enriquez. (Attachments: # 1 Proposed Order)(Morales, Leonard) (Entered: 08/22/2008) |
| 08/26/2008 | 386 | RESPONSE TO MOTION by USA as to Arturo Enriquez re 384 * MOTION to Sever Defendant filed by Defendant Arturo Enriquez (Acosta, Jose) (Entered: 08/26/2008) |
| 08/28/2008 | 387 | RESPONSE TO MOTION by USA as to Arturo Enriquez re 385 MOTION to Suppress *Pre-Arrest Statements* filed by Defendant Arturo Enriquez (Acosta, Jose) (Entered: 08/28/2008) |
| 09/04/2008 | 392 | * MOTION to Amend/Correct 330 Remark, *Order Granting Reasonable Visitation with the Family and for General Mail and Telephone Correspondence* by Arturo Enriquez. (Attachments: # 1 Proposed Order)(Morales, Leonard) (Entered: 09/04/2008) |
| 09/05/2008 | 393 | ORDER SETTING as to Arturo Enriquez, ( Motion Hearing set for 9/9/2008 02:00 PM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 09/05/2008) |

| | | |
|---|---|---|
| 09/08/2008 | 395 | NOTICE of Intent to Use Evidence by USA as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda (Acosta, Jose) (Entered: 09/08/2008) |
| 09/08/2008 | 396 | * MOTION for Disclosure *of Discovery* by USA as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda. (Acosta, Jose) (Entered: 09/08/2008) |
| 09/09/2008 | 400 | ORDER DENYING 392 Motion to Amend/Correct as to Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 09/09/2008) |
| 09/09/2008 | 401 | ORDER as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda - VENIRE QUESTIONNAIRE DEADLINE SET. Signed by Judge David Briones. (rrv, ) (Entered: 09/09/2008) |
| 09/09/2008 | 428 | Minute Entry for proceedings held before Judge David Briones:Motion Hearing as to Arturo Enriquez held on 9/9/2008 re 385 MOTION to Suppress *Pre-Arrest Statements* filed by Arturo Enriquez (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 10/06/2008) |
| 09/09/2008 | 429 | GOVERNMENT EXHIBIT LIST by Arturo Enriquez (rrv, ) (Entered: 10/06/2008) |
| 09/09/2008 | 430 | GOVERNMENT/DEFENDANT WITNESS LIST by Arturo Enriquez (rrv, ) (Entered: 10/06/2008) |
| 09/15/2008 | 404 | ORDER 396 Motion for Disclosure as to Carlos Perea (1), Manuel Cardoza (2), Benjamin Alvarez (3), Miguel Angel Esqueda (5), Gustavo Gallardo (6), Eugene Mona (7), Jose Martin Garcia (8), Roberto Duran (9), Danny Tarin (10), Johnny Michelletti (11), Said Francisco Herrera (12), Adam Munoz (13), Eric Saucedo (14), Arturo Enriquez (15), Sandy Valles New (16). Signed by Judge David Briones. (rrv, ) (Entered: 09/15/2008) |
| 09/15/2008 | 406 | ORDER DENYING 384 Motion to Sever Defendant as to Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 09/15/2008) |
| 09/15/2008 | 747 | TRANSCRIPT REQUEST by USA as to Arturo Enriquez for proceedings held on 9/9/08 before Judge Briones. Proceedings Transcribed: Motion to Suppress. Court Reporter: M.S.Briggs. (rrv, ) (Entered: 05/28/2009) |
| 09/17/2008 | 411 | Proposed Voir Dire by USA as to Eugene Mona, Danny Tarin, Said Francisco Herrera, Arturo Enriquez, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda (Acosta, Jose) (Entered: 09/17/2008) |
| 09/22/2008 | 418 | ORDER as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said |

| | | |
|---|---|---|
| | | Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda. Signed by Judge David Briones. (ar, ) (Entered: 09/22/2008) |
| 09/29/2008 | 422 | Response by USA as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda re 418 Order, (Acosta, Jose) (Entered: 09/29/2008) |
| 09/30/2008 | 423 | ORDER DENYING 385 Motion to Suppress as to Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 09/30/2008) |
| 10/08/2008 | 431 | ORDER sua sponte as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda. U.S. Marshals Service in receipt of order.. Signed by Judge David Briones. (rrv, ) (Entered: 10/08/2008) |
| 10/15/2008 | 438 | TRANSCRIPT filed of Proceedings as to Arturo Enriquez held on 9-9-08 Proceedings Transcribed: Motion to Suppress. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 11/5/2008. Redacted Transcript Deadline set for 11/17/2008. Release of Transcript Restriction set for 1/13/2009. (Briggs, Maria) (Entered: 10/15/2008) |
| 10/15/2008 | 439 | ORDER as to Arturo Enriquez. Signed by Judge David Briones. (rrv, ) (Entered: 10/15/2008) |
| 10/27/2008 | 458 | * MOTION in Limine *Number One* by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Adam Munoz, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (Acosta, Jose) (Entered: 10/27/2008) |
| 10/27/2008 | 459 | * MOTION in Limine *Number Two* by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Adam Munoz, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (Acosta, Jose) (Entered: 10/27/2008) |
| 10/27/2008 | 460 | * MOTION in Limine *Number Three* by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Adam Munoz, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (Acosta, Jose) (Entered: 10/27/2008) |
| 10/27/2008 | 461 | ORDER SETTING as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Adam Munoz, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, ( Status Conference set for 10/31/2008 01:30 PM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 10/27/2008) |

| | | |
|---|---|---|
| 11/03/2008 | 490 | * MOTION to Unseal Indictment by USA as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo. (rrv, ) (Entered: 11/04/2008) |
| 11/03/2008 | | Voir Dire begun on 11/3/2008 Carlos Perea (1) on Count 1,2,3,4,5 and Manuel Cardoza (2) on Count 1,2,4,5 and Benjamin Alvarez (3) on Count 1,2,4,5 and Eugene Mona (7) on Count 2 and Said Francisco Herrera (12) on Count 1,2,3,5,10 and Arturo Enriquez (15) on Count 3,5,11 (rrv, ) (Entered: 11/04/2008) |
| 11/03/2008 | 492 | Minute Entry for proceedings held before Judge David Briones: Jury Selection Held, Jurors Sworn, Jury Trial held, Rule Invoked, Opening Statemenst for Govt/Deft as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/3/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 11/04/2008) |
| 11/04/2008 | 491 | ORDER GRANTING 490 Motion to Unseal Indictment as to Carlos Perea (1), Manuel Cardoza (2), Benjamin Alvarez (3), Miguel Angel Esqueda (5), Gustavo Gallardo (6), Eugene Mona (7), Jose Martin Garcia (8), Roberto Duran (9), Danny Tarin (10), Johnny Michelletti (11), Said Francisco Herrera (12), Adam Munoz (13), Eric Saucedo (14), Arturo Enriquez (15), Sandy Valles New (16). Signed by Judge David Briones. (rrv, ) (Entered: 11/04/2008) |
| 11/04/2008 | | INDICTMENT UNSEALED as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo (rrv, ) (Entered: 11/04/2008) |
| 11/04/2008 | 494 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/4/2008. Evidence presented by Government / Defendant. (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 11/05/2008) |
| 11/05/2008 | 496 | WITHDRAWAL EXHIBIT RECEIPT by Govt as to Arturo Enriquez (rrv, ) (Entered: 11/05/2008) |
| 11/05/2008 | 499 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/5/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 11/10/2008) |
| 11/06/2008 | 500 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/6/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 11/10/2008) |
| 11/10/2008 | 498 | Proposed Jury Instructions by Carlos Perea as to Eugene Mona, Said Francisco |

| | | Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Weiser, Gary) (Entered: 11/10/2008) |
|---|---|---|
| 11/10/2008 | [502](#) | * MOTION in Limine Number Four by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (rrv, ) (Entered: 11/12/2008) |
| 11/10/2008 | [503](#) | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/10/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # [1](#) Jury Trial Proceedings cont.) (rrv, ) (Entered: 11/12/2008) |
| 11/10/2008 | | ORAL ORDER GRANTING [502](#) Motion in Limine as to Carlos Perea (1) Manuel Cardoza (2) Benjamin Alvarez (3) Eugene Mona (7) Said Frnacisco Herrera (12) Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 11/12/2008) |
| 11/12/2008 | [504](#) | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/12/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # [1](#) Proceeding sheet cont.) (rrv, ) (Entered: 11/13/2008) |
| 11/13/2008 | [506](#) | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/13/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # [1](#) Proceeding sheet cont.) (rrv, ) (Entered: 11/14/2008) |
| 11/17/2008 | [508](#) | Proposed Jury Instructions by Arturo Enriquez (Morales, Leonard) (Entered: 11/17/2008) |
| 11/17/2008 | [509](#) | Proposed Jury Instructions by Arturo Enriquez (Morales, Leonard) (Entered: 11/17/2008) |
| 11/17/2008 | [510](#) | DEFICIENCY NOTICE:. as to Arturo Enriquez (rrv, ) (Entered: 11/17/2008) |
| 11/17/2008 | [511](#) | DEFICIENCY NOTICE:. as to Arturo Enriquez (rrv, ) (Entered: 11/17/2008) |
| 11/17/2008 | [512](#) | Proposed Jury Instructions by Arturo Enriquez *Corrected* (Morales, Leonard) (Entered: 11/17/2008) |
| 11/17/2008 | [513](#) | Proposed Jury Instructions by Arturo Enriquez *Corrected* (Morales, Leonard) (Entered: 11/17/2008) |
| 11/17/2008 | [514](#) | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/17/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S. Briggs.) (Attachments: # [1](#) proceeding sheet continued) (rrv, ) (Entered: 11/18/2008) |
| 11/18/2008 | [516](#) | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to |

| | | Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/18/2008 (Minute entry documents are not available electronically.) (Court Reporter Shannon Rose.) (Attachments: # 1 proceeding continued) (rrv, ) (Entered: 11/18/2008) |
|---|---|---|
| 11/20/2008 | 518 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/20/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # 1 proceeding sheet cont.) (rrv, ) (Entered: 11/21/2008) |
| 11/20/2008 | | ORAL MOTION for Acquittal by Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez. (rrv, ) (Entered: 11/21/2008) |
| 11/21/2008 | | ORAL ORDER DENYING [] Motion for Acquittal as to Carlos Perea (1), Manuel Cardoza (2), Benjamin Alvarez (3), Eugene Mona (7), Said Francisco Herrera (12), Arturo Enriquez (15). Count 5 granted as to Defendant Enriquez, all other counts denied.. Signed by Judge David Briones. (rrv, ) (Entered: 11/21/2008) |
| 11/24/2008 | 520 | RESPONSE TO MOTION by USA as to Arturo Enriquez re oral MOTION for Acquittal filed by Defendant Arturo Enriquez, (rrv, ) (Entered: 11/25/2008) |
| 11/24/2008 | 522 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/24/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # 1 proceeding sheet cont.) (rrv, ) (Entered: 11/25/2008) |
| 11/24/2008 | 530 | EXHIBIT LIST by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (rrv, ) (Entered: 12/03/2008) |
| 11/24/2008 | 551 | WITNESS LIST by USA, Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (rrv, ) (Entered: 12/04/2008) |
| 11/25/2008 | 523 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 11/25/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # 1 proceeding sheet cont.) (rrv, ) (Entered: 11/26/2008) |
| 11/25/2008 | 534 | Court's Charge/Instructions to Jury as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Attachments: # 1 Court Instructions cont.)(rrv, ) (Entered: 12/03/2008) |
| 11/25/2008 | 535 | Jury Note 1 as to Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |

| | | |
|---|---|---|
| 12/01/2008 | 528 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 12/1/2008 (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # 1 proceeding sheet cont.) (rrv, ) (Entered: 12/02/2008) |
| 12/01/2008 | 536 | Jury Note 2 as to Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/01/2008 | 537 | Court's Response to 536 Jury Note 2 (Sealed) as to Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/01/2008 | 538 | Jury Note 3 as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Benjamin Alvarez, Miguel Angel Esqueda SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/01/2008 | 539 | Court's Response to 538 Jury Note 3(Sealed) as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/01/2008 | 540 | Jury Note 4 as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 529 | Minute Entry for proceedings held before Judge David Briones:Jury Trial as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez held on 12/2/2008. Trial concluded. (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (Attachments: # 1 proceeding sheet cont.) (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 541 | Jury Note 5 as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 542 | Court's Response to 541 Jury Note (Sealed) as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 543 | Jury Note 6 as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 544 | Jury Note 7 as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez SEALED pursuant to E-Government Act of 2002 (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 545 | WITHDRAWAL EXHIBIT RECEIPT all Govt Exhibits as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (rrv, ) (Entered: 12/03/2008) |

| | | |
|---|---|---|
| 12/02/2008 | 549 | JURY VERDICT (Redacted Version) as to Carlos Perea (1) Guilty on Count 1,2,4,5 and Manuel Cardoza (2) Guilty on Count 1,2,4,5 and Benjamin Alvarez (3) Guilty on Count 1,2,4,5 and Eugene Mona (7) Guilty on Count 2 and Said Francisco Herrera (12) Guilty on Count 1,2,3,5 and Arturo Enriquez (15) Guilty on Count 3Arturo Enriquez (15) Not Guilty on Count 11. filed. Unredacted Version Sealed pursuant to E-Government Act of 2002. (rrv, ) (Entered: 12/03/2008) |
| 12/02/2008 | 550 | ORDER SETTING as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, ( Sentencing set for 2/24/2009 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 12/03/2008) |
| 12/09/2008 | 552 | MOTION for New Trial by Arturo Enriquez. (Morales, Leonard) (Entered: 12/09/2008) |
| 12/09/2008 | 553 | MOTION for Acquittal *Post Verdict* by Arturo Enriquez. (Morales, Leonard) (Entered: 12/09/2008) |
| 12/11/2008 | 554 | RESPONSE TO MOTION by USA as to Arturo Enriquez re 552 MOTION for New Trial filed by Defendant Arturo Enriquez (Acosta, Jose) (Entered: 12/11/2008) |
| 12/16/2008 | 564 | ORDER RESETTING as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, ( Sentencing reset for 4/1/2009 08:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 12/16/2008) |
| 12/23/2008 | 568 | ORDER GRANTING 375 Motion Expedited Motion For Waiver Of Maximum Compensation And Interim Payment Pursuant to 18 USC 3006A as to Carlos Perea (1) Manuel Cardoza (2) Benjamin Alvarez (3) Eduardo Ravelo (4) Miguel Angel Esqueda (5) Eugene Mona (7), Jose Martin Garcia (8) Roberto Duran(9) Danny Tarin (1) Johnny Michelletti (11) Said Francisco Herrera (12) Adam Munoz (13) Eric Saucedo (14) Arturo Enriquez (15) Sandy Valles New (16). Signed by Judge David Briones. (rrv, ) Modified on 12/23/2008 (rrv, ). (Entered: 12/23/2008) |
| 01/14/2009 | 572 | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-12-08 Proceedings Transcribed: Jury trial Excerpt. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/4/2009. Redacted Transcript Deadline set for 2/17/2009. Release of Transcript Restriction set for 4/14/2009. (Briggs, Maria) (Entered: 01/14/2009) |
| 01/14/2009 | 573 | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin |

| | | |
|---|---|---|
| | | Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-13-08 Proceedings Transcribed: Jury trial excerpt 11-13-08. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/4/2009. Redacted Transcript Deadline set for 2/17/2009. Release of Transcript Restriction set for 4/14/2009. (Briggs, Maria) (Entered: 01/14/2009) |
| 01/14/2009 | [574](#) | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-20-08 Proceedings Transcribed: Jury trial excerpt 11-20-08. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/4/2009. Redacted Transcript Deadline set for 2/17/2009. Release of Transcript Restriction set for 4/14/2009. (Briggs, Maria) (Entered: 01/14/2009) |
| 01/14/2009 | [575](#) | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-24-08 Proceedings Transcribed: Jury trial excerpt 11-24-08. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/4/2009. Redacted Transcript Deadline set for 2/17/2009. Release of Transcript Restriction set for 4/14/2009. (Briggs, Maria) (Entered: 01/14/2009) |
| 01/16/2009 | [578](#) | TRANSCRIPT REQUEST by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda for proceedings held on 11/3/08 & 12/2/08 before Judge Briones. Proceedings Transcribed: Testimony. Court Reporter: M.S.Briggs. (rrv, ) (Entered: |

| | | 01/16/2009) |
|---|---|---|
| 01/28/2009 | 579 | ORDER DENYING 552 Motion for New Trial as to Arturo Enriquez (15); DENYING 553 Motion for Acquittal as to Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 01/29/2009) |
| 02/03/2009 | 581 | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-4-08 Proceedings Transcribed: Trial Excerpt Jose Martin Garcia. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/24/2009. Redacted Transcript Deadline set for 3/6/2009. Release of Transcript Restriction set for 5/4/2009. (Briggs, Maria) (Entered: 02/03/2009) |
| 02/03/2009 | 582 | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-5-08 & 11-6-08 Proceedings Transcribed: Trial Excerpt Gustavo Gallardo. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/24/2009. Redacted Transcript Deadline set for 3/6/2009. Release of Transcript Restriction set for 5/4/2009. (Briggs, Maria) (Entered: 02/03/2009) |
| 02/03/2009 | 583 | TRANSCRIPT filed of Proceedings as to Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, Johnny Michelletti, Arturo Enriquez, Gustavo Gallardo, Roberto Duran, Adam Munoz, Sandy Valles New, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Eduardo Ravelo held on 11-17-08 Proceedings Transcribed: Trial Excerpt Josue Aguirre. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 2/24/2009. Redacted Transcript Deadline set for 3/6/2009. Release of Transcript |

| | | |
|---|---|---|
| | | Restriction set for 5/4/2009. (Briggs, Maria) (Entered: 02/03/2009) |
| 02/09/2009 | 584 | Transcript Redaction Request in case as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez re 582 Transcript. filed by attorney Jose Luis Acosta (Acosta, Jose) (Entered: 02/09/2009) |
| 02/18/2009 | 587 | Redacted Transcript filed re: 582 Transcript in case as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Briggs, Maria) (Entered: 02/18/2009) |
| 03/26/2009 | 624 | MOTION for Downward Departure *or Variance* by Arturo Enriquez. (Morales, Leonard) (Entered: 03/26/2009) |
| 03/27/2009 | 630 | ORDER RESETTING as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, ( Sentencing reset for 4/10/2009 09:30 AM before Judge David Briones.) It is further ordered that any objections Pre-Sentence Investigation Reports be filed on or before April 3, 2009.. Signed by Judge David Briones. (ar, ) (Entered: 03/27/2009) |
| 04/06/2009 | 648 | ORDER RESETTING as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, ( Sentencing reset for 4/13/2009 10:30 AM before Judge David Briones.). Signed by Judge David Briones. (rrv, ) (Entered: 04/06/2009) |
| 04/09/2009 | 652 | RESPONSE TO MOTION by USA as to Arturo Enriquez re 624 MOTION for Downward Departure *or Variance* filed by Defendant Arturo Enriquez (Acosta, Jose) (Entered: 04/09/2009) |
| 04/13/2009 | 662 | Minute Entry for proceedings held before Judge David Briones:Sentencing held on 4/13/2009 for Arturo Enriquez (15), Count(s) 11, Not guilty on count 11.; Count(s) 3, 180 months imprisonment, 3 years supervised release, $1,000.00 fine, $100 S/A; Count(s) 5, Acquitted on count 5.. (Minute entry documents are not available electronically.) (Court Reporter M.S.Briggs.) (rrv, ) (Entered: 04/14/2009) |
| 04/14/2009 | 667 | MOTION for Leave to File Sealed Document (Acosta, Jose) (Additional attachment(s) added on 4/15/2009: # 1 Mtn for Leave) (rrv, ). (Entered: 04/14/2009) |
| 04/14/2009 | 673 | JUDGMENT AND COMMITMENT as to Arturo Enriquez. Signed by Judge David Briones. (rrv, ) (Entered: 04/14/2009) |
| 04/16/2009 | 681 | Sealed Order granting Sealed Motion. Signed by Judge David Briones. (rrv, ) (Entered: 04/16/2009) |
| 04/21/2009 | 689 | NOTICE OF APPEAL by Arturo Enriquez Per 5th Circuit rules, the appellant has 10 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out Form DKT-13 (Transcript Order) and follow the instructions set out on the form. If the appellant has a court appointed attorney under CJA, the Form CJA 24 should also be completed. Both forms are available in the Clerk's Office or by clicking the hyperlinks above. (rrv, ) (Entered: 04/21/2009) |
| 04/27/2009 | 697 | MOTION to Withdraw as Attorney by Arturo Enriquez. (Morales, Leonard) Modified on 4/27/2009 (ar, ). ***Document Deficient: The judge's name on the order is |

| | | incorrect. Please correct order to read Judge David Briones on the signature line*** (Entered: 04/27/2009) |
|---|---|---|
| 04/27/2009 | 698 | DEFICIENCY NOTICE: re 697 MOTION to Withdraw as Attorney. as to Arturo Enriquez ***The judge's name on the order is incorrect. Please correct order to read Judge David Briones on the signature line*** (ar, ) (Entered: 04/27/2009) |
| 04/27/2009 | 700 | MOTION to Amend/Correct 698 Deficiency Notice *Motion to Withdraw as Attorney with corrected Order* by Arturo Enriquez. (Morales, Leonard) (Entered: 04/27/2009) |
| 04/29/2009 | 701 | ORDER GRANTING 700 Motion to Withdraw As Counsel And For Appointment Of Counsel On Appeal as to Arturo Enriquez (15). Signed by Judge David Briones. (rrv, ) (Entered: 04/29/2009) |
| 04/29/2009 | 703 | ORDER as to Arturo Enriquez, Attorney Patrick Adam Lara for Arturo Enriquez added. Signed by Judge Michael S. McDonald. (rrv, ) (Entered: 04/30/2009) |
| 04/29/2009 | 704 | CJA 20 as to Arturo Enriquez: Appointment of Attorney Patrick Adam Lara for Arturo Enriquez.. Signed by Judge Michael S. McDonald. (rrv, ) (Entered: 04/30/2009) |
| 05/04/2009 | 709 | USCA Info Sheet Received. USCA Case Number 09-50365 as to Arturo Enriquez in 5th Circuit USCA for 689 Notice of Appeal - Final Judgment,, filed by Arturo Enriquez. (rrv, ) (Entered: 05/05/2009) |
| 05/08/2009 | 712 | TRANSCRIPT REQUEST by Arturo Enriquez for dates of 11/8/08 before Judge Briones,. Proceedings Transcribed: Jury Trial. Court Reporter: Shannon Rose. re 689 Notice of Appeal - Final Judgment,, (rrv, ) (Entered: 05/12/2009) |
| 05/26/2009 | 751 | Letter from USCA received as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza in for 695 Notice of Appeal - Final Judgment,, filed by Carlos Perea, 692 Notice of Appeal - Final Judgment,, filed by Manuel Cardoza, 689 Notice of Appeal - Final Judgment,, filed by Arturo Enriquez, 696 Notice of Appeal - Final Judgment,, filed by Eugene Mona. (rrv, ) (Entered: 05/28/2009) |
| 06/23/2009 | 770 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-3-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 771 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-4-08 Proceedings |

| | | |
|---|---|---|
| | | Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 772 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-5-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 773 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-6-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 774 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-10-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. |

| | | Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
|---|---|---|
| 06/23/2009 | 775 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-12-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 776 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-13-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 777 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-17-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 778 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-20-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction |

| | | |
|---|---|---|
| | | after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 780 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-24-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 781 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11-25-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 782 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 12-1-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | 783 | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 12-2-08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased |

| | | |
|---|---|---|
| | | from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/23/2009 | <u>784</u> | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 4-13-09 Proceedings Transcribed: Sentencing. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/14/2009. Redacted Transcript Deadline set for 7/24/2009. Release of Transcript Restriction set for 9/21/2009. Appeal Record due by 7/8/2009. (Briggs, Maria) (Entered: 06/23/2009) |
| 06/25/2009 | <u>786</u> | TRANSCRIPT filed of Proceedings as to Arturo Enriquez held on 10-31-08 Proceedings Transcribed: Status Conference. Court Reporter/Transcriber Maria S. Briggs, Telephone number 915-577-9901. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/16/2009. Redacted Transcript Deadline set for 7/27/2009. Release of Transcript Restriction set for 9/23/2009. Appeal Record due by 7/10/2009. (Briggs, Maria) (Entered: 06/25/2009) |
| 06/25/2009 | <u>790</u> | TRANSCRIPT filed of Proceedings as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza held on 11/18/08 Proceedings Transcribed: Jury Trial. Court Reporter/Transcriber Shannon Rose, Telephone number (915) 544-1515. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. Redaction Request due 7/16/2009. Redacted Transcript Deadline set for 7/27/2009. Release of Transcript Restriction set for 9/23/2009. (rrv, ) (Entered: 07/13/2009) |
| 07/28/2009 | <u>791</u> | Transcript Redaction Request in case as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez re <u>778</u> , <u>777</u> , <u>776</u> , <u>780</u> , <u>773</u> , <u>775</u> Transcript. filed by attorney Jose Luis Acosta (Acosta, Jose) |

| | | |
|---|---|---|
| | | (Entered: 07/28/2009) |
| 08/03/2009 | 796 | Certified and Transmitted Record on Appeal as to Arturo Enriquez to US Court of Appeals re 689 Notice of Appeal - Final Judgment, Held for Attorney, (em, ) (Entered: 08/03/2009) |
| 08/26/2009 | 800 | Redacted Transcript filed re: 775 Transcript in case as to Said Francisco Herrera, Arturo Enriquez, Gustavo Gallardo, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Briggs, Maria) (Entered: 08/26/2009) |
| 08/26/2009 | 801 | Redacted Transcript filed re: 776 Transcript in case as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Briggs, Maria) (Entered: 08/26/2009) |
| 08/26/2009 | 802 | Redacted Transcript filed re: 777 Transcript in case as to Said Francisco Herrera, Arturo Enriquez, Gustavo Gallardo, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Briggs, Maria) (Entered: 08/26/2009) |
| 08/26/2009 | 803 | Redacted Transcript filed re: 778 Transcript in case as to Said Francisco Herrera, Arturo Enriquez, Gustavo Gallardo, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Briggs, Maria) (Entered: 08/26/2009) |
| 08/26/2009 | 804 | Redacted Transcript filed re: 780 Transcript in case as to Said Francisco Herrera, Arturo Enriquez, Gustavo Gallardo, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Briggs, Maria) (Entered: 08/26/2009) |
| 12/22/2009 | 810 | NOTICE *of Discovery and Disclosure of Potential Impeachment Information* by USA as to Eugene Mona, Said Francisco Herrera, Arturo Enriquez, Carlos Perea, Manuel Cardoza, Benjamin Alvarez (Acosta, Jose) (Entered: 12/22/2009) |
| 01/06/2010 | 812 | DEFICIENCY NOTICE:***PROPOSED ORDER NOT ATTACHED. PLEASE REFILE WITH PROPOSED ORDER*** re 811 MOTION for New Trial. as to Arturo Enriquez (rrv, ) (Entered: 01/06/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/06/2010 19:16:39 | | |
| **PACER Login:** | pl1839 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:08-cr-00059-DB |
| **Billable Pages:** | 16 | **Cost:** | 1.28 |

**Indictment (16 pages)**

**Page 23**

JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

2008 JAN -9 PM 12: 43

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EUGENE MONA,
aka "Gino,"

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

INDICTMENT

EP08CR059

CT 1: 18 U.S.C. § 1962(c); Engaging in the affairs of an enterprise through a pattern of racketeering activity.

CT 2: 18 U.S.C. § 1962(d); Conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity.

CT 3: 18 U.S.C. § 1951; Conspiracy to interfere with commerce by threats or violence.

CT 4: 18 U.S.C. § 1956(a)(1)(A)(i)(B)(i) & (h); Conspiracy to launder monetary instruments.

CT 5: 21 U.S.C. §§ 846 & 841(a)(1); Conspiracy to possess heroin, cocaine & marijuana with intent to distribute.

CT 6: 21 U.S.C. §841(a) & (b)(1)(A)(i)- Possession with intent to distribute a controlled substance;

CT 7: 21 U.S.C. § 841(a) & (b)(1)(A)(ii)- Possession with intent to distribute a controlled substance;

CT 8: 21 U.S.C. § 841(a) & (b)(1)(B)(ii)- Possession with intent to distribute a controlled substance;

CT 9: 21 U.S.C. § 841(a) & (b)(1)(C)- Possession with intent to distribute a controlled substance;

CT 10: 18 U.S.C. §§ 2 & 1959(a)(3); Violent crimes in aid of racketeering activity.

CT 11: 18 U.S.C. § 1959(a)(1);Murder in aid of racketeering activity.

1

THE GRAND JURY CHARGES:

## INTRODUCTION

THE RACKETEERING ENTERPRISE:
The "Barrio Azteca" Enterprise

1. At all times relevant to this Indictment, in the Western District of Texas, and

elsewhere, Defendants,

**EUGENE MONA, aka "Gino,"**

and others, were members and associates of a criminal organization engaged in murder, attempted

murder, conspiracy to commit murder, extortion, money laundering, importation of controlled

substances, and distribution of controlled substances and possession with the intent to distribute

controlled substances. At all relevant times, this organization has operated in the Western District

of Texas and elsewhere, and has been and is known as the Barrio Azteca(s) and will be referred to

hereinafter in this indictment as the "Barrio Azteca" or BA. The BA, including its leadership,

membership, and associates constitute an "enterprise," as defined by Title 18, United States Code,

Section 1961(4) (hereinafter "the enterprise") that is to say, a group of individuals associated in fact.

2

## REDACTED

### Pages 3 - 10

## COUNT ONE
### (RICO)
### 18 U.S.C. 1962(c)

18.  Paragraphs 1 through 17 of this indictment are realleged and incorporated by reference as though fully set forth herein.

19.  Beginning on or about January 1, 2003, and continuing thereafter through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

being persons employed by and associated with the Barrio Azteca enterprise described in paragraphs 1 through 17, above, said enterprise being engaged in activities which affected, interstate and foreign commerce, knowingly and intentionally did conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as set forth below:

11

### The Pattern of Racketeering Activity

20. The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

Racketeering Act One: Conspiracy to interfere with commerce by threats or violence.

21. Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally, conspired, combined, confederated, and agreed with each other, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1951(a), that is to say, they conspired to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of an article and commodity in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the defendants did obtain and attempt to obtain monetary instruments by extortion, and the property of persons known and unknown with the consent of such persons, having been induced by the wrongful use of actual and threatened force, violence and fear.

All in violation of Title 18, United States Code, Section 1951(a).

USCA5 33

<u>Racketeering Act Two</u>: Conspiracy to possess with intent to distribute a controlled substance.

22. Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally, conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a controlled substance, which offense involved one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled substance, which offense involved 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance.

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii) and (b)(1)(B)(vii).

13

Racketeering Act Three: Conspiracy to launder monetary instruments.

23. Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally conspired, combined, confederated and agreed together and with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i), that is to say they conspired to conduct and attempt to conduct a financial transaction, affecting interstate and foreign commerce, knowing that the property in the financial transaction represented the proceeds of some form of unlawful activity, to-wit; conspiracy to obtain monetary instruments by extortion, having been induced by the wrongful use of actual and threatened force, violence and fear and conspiracy to possess with the intent to distribute a controlled substance, and did so with the intent to promote the carrying on of the specific unlawful activity, and knowing that the financial transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i)(B)(i) and (h).

14

<u>Racketeering Act Four</u>: Possession of heroin, with intent to distribute.

24.  On or about September 15, 2006, in the Western District of Texas, and elsewhere, the

defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense

involved one kilogram or more of a mixture or substance containing a detectable amount of heroin,

a Schedule II Controlled Substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i).


<u>Racketeering Act Five</u>: Possession of cocaine, with intent to distribute.

25.  Beginning on or about November 8, 2006, and continuing through and including on or

about the date of the return of this indictment, both dates being approximate and inclusive, within

the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense

involved five kilograms or more of a mixture or substance containing a detectable amount of

cocaine, a Schedule II Controlled Substance.

All in violation of Title 18, United States Code, Section 2, Title 21, United States Code, Sections

846 and 841(b)(1)(A)(ii).

15

<u>Racketeering Act Six</u>: Possession of a marijuana, with intent to distribute.

26.  That on or about September 7, 2007, in the Western District of Texas, Defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense

involved 50 kilograms or more of a mixture or substance containing a detectable amount of

marijuana, a Schedule I Controlled Substance.

All in violation of Title 18, United States Code, Section 2; Title 21, United States Code, Sections

841(a)(1) and 841(b)(1)(C).


<u>Racketeering Act Seven</u>: Murder.

27.  The defendants named below committed the following acts, either one of which alone

constitutes Racketeering Act Seven:

a.  On or about December 6, 2006, in the Western District of Texas, Defendants

knowingly, and intentionally, conspired, combined, confederated, and agreed with each other, and

with others to the Grand Jury known and unknown, to cause serious bodily injury; and to commit

an act clearly dangerous to human life that caused the death of                                    in violation

of Texas Penal Code § 19.02(b)(2).

b.  On or about December 6, 2006, in the Western District of Texas, Defendants

16

knowingly, and intentionally, conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to commit and attempt to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission and attempt, and in immediate flight from the commission and attempt, they committed and attempted to commit an act clearly dangerous to human life that caused the death of                                    , in violation of Texas Penal Code § 19.02(b)(3).

All in violation of Title 18, United States Code, 1962(c).

USCA5 38

## COUNT TWO
### (RICO Conspiracy)
### 18 U.S.C. § 1962(d)

28. Paragraphs 1 through 17 of the introduction to this indictment are hereby realleged and incorporated by reference as if fully set forth herein.

29. Beginning on or about January 1, 2003, and continuing thereafter through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

### EUGENE MONA, aka "Gino."

and others known and unknown, being persons employed by and associated with the Barrio Azteca Enterprise, an enterprise described in paragraphs 1 through 17 of the introduction to this indictment, which engaged in, and the activities of which affected interstate and foreign commerce, knowingly, and intentionally conspired, combined, confederated, and agreed together, and with others to the Grand Jury known and unknown, to violate Title 18, United States Code, Section 1962(c), that is to say, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5)

18

of Title 18, United States Code, consisting of multiple acts indictable under the following provisions of federal law:

    A.    18 U.S.C. § 1951 (extortion and conspiracy to commit extortion);

    B.    18 U.S.C. § 1956 (money laundering and conspiracy to launder monetary

        instruments);

and multiple acts involving narcotics trafficking, including heroin, cocaine, and marijuana, in violation of the laws of the United States; namely,

    C.    21 U.S.C. §§ 846 and 841(a)(1) (involving narcotics trafficking and conspiracy to

        commit narcotics trafficking, including heroin, cocaine and marijuana);

        and multiple acts chargeable under the following provisions of state law:

    D.    Texas Penal Code, Section 19.02(b) (Murder).

30. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## OVERT ACTS

USCA5 40

# REDACTED

## Pages 20 - 51

USCA5 41

Notice of Special Sentencing Factors.

226.  The allegations and facts set forth in this Notice of Special Sentencing Factors relates to Count 2 of this indictment.

227.  Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the defendants,

knowingly, and intentionally conspired, to possess a controlled substance, which offense involved one kilogram or more of a mixture or substance containing a detectable amount of heroin, with intent to distribute same, and they conspired to possess five kilograms or more of a mixture or substance containing a detectable amount of cocaine, with intent to distribute same.  All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii).

228.  On or about September 15, 2006, in the Western District of Texas, and elsewhere, the defendant,                                      knowingly and intentionally possessed with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin.  All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i).

229.  Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within

52

USCA5 42

the Western District of Texas, and elsewhere, the defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine. All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii).

230. On or about December 6, 2006, in the Western District of Texas, Defendant knowingly, and intentionally, conspired, combined, confederated, and agreed with others to the Grand Jury known and unknown, to cause serious bodily injury, and to commit an act clearly dangerous to human life that caused the death of                     , in violation of Texas Penal Code § 19.02(b)(2).

231. On or about December 6, 2006, in the Western District of Texas and elsewhere, defendant                               knowingly, and intentionally, conspired, combined, confederated, and agreed with each other and with others to the Grand Jury known and unknown, and did unlawfully attempt to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission and attempt, and in immediate flight from the commission and attempt, they committed and attempted to commit an act clearly dangerous to human life that caused the death of                    , in violation of Texas Penal Code § 19.02(b)(3).

USCA5 43

## COUNT THREE
### (Hobbs Act Conspiracy)
### 18 U.S.C. § 1951

232. Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally conspired, combined, confederated, and agreed with each other, and with others to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1951(a), that is to say, they conspired to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of an article and commodity in such commerce, by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that the defendants did obtain and attempt to obtain monetary instruments by extortion, and the property of persons known and unknown with the consent of such persons, having been induced by the wrongful use of actual and threatened force, violence and fear.

All in violation of Title 18, United States Code, Section 1951(a).

54

## COUNT FOUR
(Conspiracy to Launder Monetary Instruments)
18 U.S.C. 1956 (a)(1)(A)(i)(B)(i) and (h)

233.  Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally conspired, combined, confederated and agreed together and with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i), that is to say they conspired to conduct and attempt to conduct a financial transaction, affecting interstate and foreign commerce, knowing that the property in the financial transaction represented the proceeds of some form of unlawful activity, to-wit; conspiracy to obtain monetary instruments by extortion, having been induced by the wrongful use of actual and threatened force, violence and fear and conspiracy to possess with the intent to distribute a controlled substance, and did so with the intent to promote the carrying on of the specific unlawful activity; and knowing that the financial transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i)(B)(i) and (h).

55

Case: 09-50323    Document: 0051986027    Page: 44    Date Filed: 12/11/2009

## COUNT FIVE

(Conspiracy to possess with intent to distribute heroin, cocaine and marijuana)
21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii) and (b)(1)(B)(vii).

234. Beginning on or about January 1, 2003, and continuing through and including on or

about the date of the return of this indictment, both dates being approximate and inclusive, within

the Western District of Texas, and elsewhere, the Defendants,

knowingly, and intentionally conspired, combined, confederated, and agreed together, and with

others to the Grand Jury known and unknown, to commit offenses against the United States, in

violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess a

controlled substance, which offense involved one kilogram or more of a mixture or substance

containing a detectable amount of heroin, a Schedule II Controlled Substance, with intent to

distribute same, and they conspired to possess a controlled substance, which offense involved five

kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule

II Controlled Substance, with intent to distribute same, and they conspired to possess a controlled

substance, which offense involved 100 kilograms or more of a mixture or substance containing a

56

detectable amount of marijuana, a Schedule I Controlled Substance.

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and 841(b)(1)(A)(i) and (ii) and (b)(1)(B)(vii).

### COUNT SIX
(Possession of heroin with intent to distribute)
21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i)

235. On or about September 15, 2006, in the Western District of Texas, and elsewhere, the defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule II Controlled Substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(i)

### COUNT SEVEN
(Possession of cocaine with intent to distribute.)
21 U.S.C. §§ 841(a) and 841(b)(1)(A)(ii)

236. Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

57

## COUNT EIGHT
(Possession of cocaine with intent to distribute.)
21 U.S.C. §§ 841(a) and 841(b)(1)(B)(ii)

237. Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere, the Defendants,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii).

## COUNT NINE
(21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C))

238. That on or about September 7, 2007, in the Western District of Texas, Defendant,

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved 50 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I Controlled Substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

58

## COUNT TEN
### (Violent crimes in aid of racketeering activity)
### 18 U.S.C. 1959(a)(3) and (2)

239.  Beginning on or about January 1, 2003, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, the Barrio Azteca, as more fully described in paragraphs 1 through 17 of the introduction of this indictment, which are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the Barrio Azteca enterprise, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

240.  At all times relevant to this indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b)(1) and 1961(1), namely acts involving murder in violation of Texas state law, and narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846, and acts indictable under Sections 1951 (extortion) and 1956 (money laundering) of Title 18, United States Code.

241.  On or about January 26, 2006, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, within the Western District of Texas, and elsewhere,  as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the Barrio Azteca, and for the purpose of gaining entrance to and maintaining and increasing position in the Barrio Azteca, an

59

USCA5 49

Case: 09-50323    Document: 0051986027    Page: 48    Date Filed: 12/11/2009

enterprise engaged in racketeering activity, the defendant,

knowingly, and intentionally, assaulted JMA, resulting in serious bodily injury, in violation of

Texas Penal Code, Section 22.02(a)(2).

All in violation of Title 18, United States Code 1959(a)(3) and (2)

## COUNT ELEVEN
(Murder in aid of racketeering activity; )
18 U.S.C. 1959(a)(1) and (2)

242. Paragraphs 239 and 240 are realleged and incorporated by reference as though set forth

fully herein.

243. On or about January 1, 2006, and continuing through and including on or about the date

of the return of this indictment, both dates being approximate and inclusive, within the Western

District of Texas and elsewhere, as consideration for the receipt of, and as consideration for a

promise and an agreement to pay, anything of pecuniary value from the Barrio Azteca, and for the

purpose of gaining entrance to and maintaining and increasing position in the Barrio Azteca, an

enterprise engaged in racketeering activity, the defendants,

knowingly, and intentionally and while intending to cause serious bodily injury did commit an act

clearly dangerous to human life, and while committing and attempting to commit a felony, other

than manslaughter and in the course of and in furtherance of the commission and attempt, and in

immediate flight from the commission and attempt, committed and attempted to commit an act

clearly dangerous to human life and caused the death of                    in violation of Texas

60

Penal Code, Section 19.02(b)(2) & (3).

All in violation of Title 18, United States Code, Sections 2 and 1959(a)(1).

<u>Notice of Special Sentencing Factors</u>.

Case: 09-50323    Document: 0051986027    Page: 50    Date Filed: 12/11/2009

USCA5 52

A TRUE BILL

_____

FOREPERSON OF THE GRAND JURY

JOHNNY SUTTON
UNITED STATES ATTORNEY

BY: _____
    Assistant U.S. Attorney

63

# Verdict (17 pages)

## Page 39

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | EP-08-CR-059-DB |
| | § | |
| CARLOS PEREA | § | |
| aka "Shotgun," | § | **FILED** |
| MANUEL CARDOZA | § | |
| aka "Tolon," | § | DEC 2 2008 |
| BENJAMIN ALVAREZ | § | |
| aka "T-Top," | § | CLERK, U.S. DISTRICT COURT |
| EUGENE MONA | § | WESTERN DISTRICT OF TEXAS |
| aka "Gino," | § | BY _____ |
| SAID FRANCISCO HERRERA | § | DEPUTY CLERK |
| aka "Shorty," and | § | |
| ARTURO ENRIQUEZ | § | |
| "Tury." | § | |

## VERDICT

### COUNT ONE

**DEFENDANT CARLOS PEREA**

1. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **CARLOS PEREA** was employed by or associated with a criminal enterprise, the activities of which affected interstate or foreign commerce, and that he intentionally and knowingly participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity?

GUILTY ✓                    NOT GUILTY _____

If your answer to Question 1 is "Not Guilty," go on to consider the next Defendant. If your answer to Question 1 is "Guilty," go on to answer all remaining questions.

2. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **CARLOS PEREA** participated in the activities of the criminal enterprise by:

    a. Racketeering Act # 2: Conspiring to Possess with the Intent to Distribute a Controlled Substance

        **Proven beyond a reasonable doubt**                    ✓

        **Not proven beyond a reasonable doubt**                    _____

USCA5 549

b. If you answered "**Not proven beyond a reasonable doubt**," go on to answer Question 3. If you answered "**Proven beyond a reasonable doubt**," answer the following before going on to answer Question 3:

Do you find beyond a reasonable doubt that the offense in Count One involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?

_____YES_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

**3.** Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **CARLOS PEREA** participated in the activities of the criminal enterprise by:

Racketeering Act # 3: Conspiring to Launder Monetary Instruments
**Proven beyond a reasonable doubt** _____✓_____

**Not proven beyond a reasonable doubt** _____

2

## DEFENDANT MANUEL CARDOZA

1. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **MANUEL CARDOZA** was employed by or associated with a criminal enterprise, the activities of which affected interstate or foreign commerce, and that he intentionally and knowingly participated, directly or indirectly, in the conduct of the affairs of the criminal enterprise through a pattern of racketeering activity?

GUILTY ____✔____        NOT GUILTY _____

If your answer to Question 1 is "**Not Guilty**," go on to consider the next Defendant. If your answer to Question 1 is "**Guilty**," go on to answer all remaining questions.

2. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **MANUEL CARDOZA** participated in the activities of the enterprise by:

    **a.** Racketeering Act # 2: Conspiring to Possess with the Intent to Distribute a Controlled Substance
       **Proven beyond a reasonable doubt**      ____✔____

       **Not proven beyond a reasonable doubt**      _____

    **b.** If you answered "**Not proven beyond a reasonable doubt**," go on to answer Question 3. If you answered "**Proven beyond a reasonable doubt**," answer the following before going on to answer Question 3:

        Do you find beyond a reasonable doubt that the offense in Count One involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?
        ____YES_____ (please answer "Yes" or "No").

        If you answered "No," answer the following question:

        Do you find beyond a reasonable doubt that the offense in Count One involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?
        _____ (please answer "Yes" or "No").

        If you answered "No," answer the following question:

        Do you find beyond a reasonable doubt that the offense in Count One involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-

3

hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

3. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **MANUEL CARDOZA** participated in the activities of the criminal enterprise by:

Racketeering Act # 3: Conspiring to Launder Monetary Instruments
**Proven beyond a reasonable doubt** ✓

**Not proven beyond a reasonable doubt** _____

## DEFENDANT BENJAMIN ALVAREZ

1. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **BENJAMIN ALVAREZ** was employed by or associated with a criminal enterprise, the activities of which affected interstate or foreign commerce, and that he intentionally and knowingly participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity?

GUILTY ✓         NOT GUILTY _____

If your answer to Question 1 is **"Not Guilty,"** go on to consider the next Defendant. If your answer to Question 1 is **"Guilty,"** go on to answer all remaining questions.

2. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **BENJAMIN ALVAREZ** participated in the activities of the enterprise by:

a. Racketeering Act # 2: Conspiring to Possess with the Intent to Distribute a Controlled Substance
**Proven beyond a reasonable doubt** ✓

**Not proven beyond a reasonable doubt** _____

b. If you answered "Not proven beyond a reasonable doubt," go on to answer Question 3. If you answered "Proven beyond a reasonable doubt," answer the following before going on to answer Question 3:

4

Do you find beyond a reasonable doubt that the offense in Count One involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?

_____YES_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

**3.** Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **BENJAMIN ALVAREZ** participated in the activities of the criminal enterprise by:

Racketeering Act # 3: Conspiracy to Launder Monetary Instruments
**Proven beyond a reasonable doubt** _____

**Not proven beyond a reasonable doubt** _____

5

## DEFENDANT SAID FRANCISCO HERRERA

**1.** Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** was employed by or associated with a criminal enterprise, the activities of which affected interstate or foreign commerce, and that he intentionally and knowingly participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity?

GUILTY ____✓____        NOT GUILTY _____

If your answer to Question 1 is "**Not Guilty**," go on to consider the next Defendant. If your answer to Question 1 is "**Guilty**," go on to answer all remaining questions.

**2.** Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** participated in the activities of the enterprise by:

> Racketeering Act # 1: Conspiring to interfere with Commerce by Threats or Violence
>> **Proven beyond a reasonable doubt** ____✓____
>>
>> **Not proven beyond a reasonable doubt** _____

**3.** Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** participated in the activities of the enterprise by:

> a. Racketeering Act # 2: Conspiring to Possess with the Intent to Distribute a Controlled Substance
>> **Proven beyond a reasonable doubt** ____✓____
>>
>> **Not proven beyond a reasonable doubt** _____

> b. If you answered "**Not proven beyond a reasonable doubt**," go on to consider the next Defendant. If you answered "**Proven beyond a reasonable doubt**," answer the following before going on to consider the next Defendant:

>> Do you find beyond a reasonable doubt that the offense in Count One involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?
>> ____YES____ (please answer "Yes" or "No").

> If you answered "No," answer the following question:

>> Do you find beyond a reasonable doubt that the offense in Count One involved either one-hundred grams or more of a mixture or substance

6

USCA5 554

containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count One involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

7

## COUNT TWO

**DEFENDANT CARLOS PEREA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **CARLOS PEREA** conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of a racketeering influenced and corrupt enterprise through a pattern of racketeering activity:

GUILTY __✓__          NOT GUILTY _____

**DEFENDANT MANUEL CARDOZA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **MANUEL CARDOZA** conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of a racketeering influenced and corrupt enterprise through a pattern of racketeering activity:

GUILTY __✓__          NOT GUILTY _____

**DEFENDANT BENJAMIN ALVAREZ**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **BENJAMIN ALVAREZ** conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of a racketeering influenced and corrupt enterprise through a pattern of racketeering activity:

GUILTY __✓__          NOT GUILTY _____

**DEFENDANT EUGENE MONA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **EUGENE MONA** conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of a racketeering influenced and corrupt enterprise through a pattern of racketeering activity:

GUILTY __✓__          NOT GUILTY _____

8

## DEFENDANT SAID FRANCISCO HERRERA

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of a racketeering influenced and corrupt enterprise through a pattern of racketeering activity:

GUILTY ___✓___          NOT GUILTY _____

9

### COUNT THREE

**DEFENDANT SAID FRANCISCO HERRERA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** knowingly and intentionally conspired to obstruct, delay and affect commerce by extortion:

GUILTY ___✓___        NOT GUILTY _____

**DEFENDANT ARTURO ENRIQUEZ**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **ARTURO ENRIQUEZ** knowingly and intentionally conspired to obstruct, delay and affect commerce by extortion:

GUILTY ___✓___        NOT GUILTY _____

10

## COUNT FOUR

**DEFENDANT CARLOS PEREA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **CARLOS PEREA** conspired to launder monetary instruments:

GUILTY ____✔____          NOT GUILTY _____

**DEFENDANT MANUEL CARDOZA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **MANUEL CARDOZA** conspired to launder monetary instruments:

GUILTY ____✔____          NOT GUILTY _____

**DEFENDANT BENJAMIN ALVAREZ**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **BENJAMIN ALVAREZ** conspired to launder monetary instruments:

GUILTY ____✔____          NOT GUILTY _____

11

USCA5 559

## COUNT FIVE

**DEFENDANT CARLOS PEREA**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **CARLOS PEREA** conspired to possess with the intent to distribute controlled substances:

GUILTY ___✓___          NOT GUILTY _____

If you answered "**Not Guilty**," go on to consider the next Defendant. If you answered "Guilty," answer the following:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?
___YES_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

12

## DEFENDANT MANUEL CARDOZA

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **MANUEL CARDOZA** conspired to possess with the intent to distribute controlled substances:

GUILTY _____✓_____          NOT GUILTY _____

If you answered "**Not Guilty**," go on to consider the next Defendant. If you answered "**Guilty**," answer the following:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?

_____YES_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?

_____ (please answer "Yes" or "No").

13

## DEFENDANT BENJAMIN ALVAREZ

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant BENJAMIN ALVAREZ conspired to possess with the intent to distribute controlled substances:

GUILTY __✓__        NOT GUILTY _____

If you answered **"Not Guilty,"** go on to consider the next Defendant. If you answered **"Guilty,"** answer the following:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?
_____YES_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

14

## DEFENDANT SAID FRANCISCO HERRERA

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** conspired to possess with the intent to distribute controlled substances:

GUILTY __✓__          NOT GUILTY _____

If you answered "**Not Guilty**," go on to consider the next Defendant. If you answered "**Guilty**," answer the following:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one kilogram or more of a mixture or substance containing a detectable amount of heroin, or five kilograms or more of a mixture or substance containing a detectable amount of cocaine?
__YES_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or one-hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved either less than one-hundred grams or more of a mixture or substance containing a detectable amount of heroin, or less than five-hundred grams or more of a mixture or substance containing a detectable amount of cocaine or fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

If you answered "No," answer the following question:

Do you find beyond a reasonable doubt that the offense in Count Five involved less than fifty kilograms or more of a mixture or substance containing a detectable amount of marijuana?
_____ (please answer "Yes" or "No").

15

USCA5 563

## COUNT TEN

### DEFENDANT SAID FRANCISCO HERRERA

1. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** knowingly and intentionally assaulted JMA, resulting in serious bodily harm, in aid of racketeering activity:

GUILTY _____          NOT GUILTY _____

If your answer to Question 1 is "**Not Guilty,**" go on to consider the next question.

2. Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **SAID FRANCISCO HERRERA** knowingly and intentionally assaulted JMA, in aid of racketeering activity:

GUILTY _____          NOT GUILTY _____

16

## COUNT ELEVEN

**DEFENDANT ARTURO ENRIQUEZ**

Has the Government proven to your unanimous satisfaction, beyond a reasonable doubt, that Defendant **ARTURO ENRIQUEZ** did commit murder in aid of racketeering activity:

GUILTY _____          NOT GUILTY _____✓_____

If your answer is "**Not Guilty**," do not answer the remaining questions.  If your answer is "**Guilty**," go on to answer all remaining questions.

That at the time of the murder, **ARTURO ENRIQUEZ** was 18 years or older:
**Proven beyond a reasonable doubt**          _____

**Not proven beyond a reasonable doubt**          _____

That **ARTURO ENRIQUEZ** committed the murder after substantial planning and premeditation to cause the death of the victim, Jose Luis Oviedo:
**Proven beyond a reasonable doubt**          _____

**Not proven beyond a reasonable doubt**          _____

That **ARTURO ENRIQUEZ** intentionally participated in an act contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants and Jose Luis Oviedo died as a result of the act:
**Proven beyond a reasonable doubt**          _____

**Not proven beyond a reasonable doubt**          _____

That **ARTURO ENRIQUEZ** committed the murder in the expectation of anything of pecuniary value:
**Proven beyond a reasonable doubt**          _____

**Not proven beyond a reasonable doubt**          _____

Dec 02 2008
_____          _____
DATE          FOREPERSON

17

# Pre-Sentence Report (68 pages)

## Page 56

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA   )
                             )
      vs.                )    **PRESENTENCE INVESTIGATION REPORT**
                             )
**ARTURO ENRIQUEZ**        )    **Docket No. EP-08-CR-59DB(15)**
**AKA: "TURY"**            )

| | |
|---|---|
| **Prepared For:** | David Briones<br>Senior United States District Judge |
| **Prepared By:** | Sonia A. Lujan<br>U.S. Probation Officer<br>El Paso, Texas<br>(915) 585-6505 |

**Assistant U.S. Attorney**
Jose Luis Acosta
200 Federal Building
700 E. San Antonio Avenue
El Paso, Texas 79901
(915) 534-6884

**Defense Counsel**
Leonard C. Morales
303 Texas Avenue
El Paso, Texas 79901
(915) 546-2696
(915) 532-0904 -fax

| | |
|---|---|
| **Sentence Date:** | April 1, 2009 |
| **Offense:** | **Count 3:** Conspiracy to Interfere With Commerce by Threats or Violence; 20 Years Custody/$250,000 Fine/3 Years Supervised Release/$100 Special Assessment; Class C Felony; 18 U.S.C. § 1951(a) |
| **Release Status:** | In federal custody without bond since January 14, 2008. |
| **Detainer:** | None |
| **Codefendants:** | Refer to co-defendant page |
| **Related Cases:** | Juan Daniel Samaniego-Bejerano, aka: Chapo, et al. - EP-05-CR-1895KC<br>Gerardo Hernandez: EP-06-CR-894DB<br>Robert Flores, aka: Oso: EP-08-CR-61DB |

**Date Report Prepared:** March 9, 2009      **Date Report Revised:** March 25, 2009

**Re:** Enriquez, Arturo
**Aka:** "Tury"
**Dkt. No.:** EP-08-CR-59DB(15)

**Related Cases:**     Alberto Silvas, aka: Flaco, et al.: EP-08-CR-68DB
Abel Castillo, aka: Junky: EP-08-CR-62DB
Ronnie Rojas, aka: Shooter: EP-08-CR-69DB
Roberto Angel Cardona, aka: Little Angelillo: EP-08-CR-66DB
David Uzeta, aka: Guerro: EP-08-CR-65FM
Juan Valles, aka: Johnny: EP-08-CR-67DB.
Samuel Alejandro Frausto, aka: Scrappy, et al.: EP-08-CR-60DB
Jesus Talamas: EP-08-CR-64DB
Luis Carlos Valadez, aka: Shotgun: EP-08-CR-63DB

**Defendant Identifying Data:**    **ARTURO ENRIQUEZ**

| | |
|---|---|
| **True Name:** | Arturo Enriquez |
| **Date of Birth:** | July 31, 1977 |
| **Place of Birth:** | El Paso, Texas |
| **Age:** | 31 |
| **Race:** | White (Hispanic) |
| **Sex:** | Male |

| | |
|---|---|
| **SSN:** | 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 |
| **FBI No.:** | 356695VB8 |
| **USM No.:** | 10168-280 |
| **SID No.:** | TX06167687 |
| **Other ID No.:** | Texas Driver's License No. 18371745 |
| **PACTS No.:** | 135855 |

| | |
|---|---|
| **Education:** | Nine years |
| **Dependants:** | Three (three daughters) |
| **Citizenship:** | United States |

**Last Known Address:**    512 S. Park Apartment No. 1
El Paso, Texas 79901

**Aliases:**    "Tury"
Francisco Enriquez

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorists activities. If this presentence investigation report is redisclosed by the Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## Co-defendants

(1)    Carlos Perea, aka: Shotgun - On December 2, 2008, Perea was found guilty of Counts One, Two, Four, and Five of the Indictment. Sentencing is scheduled for April 1, 2009.

(2)    Manuel Cardoza, aka: Tolon - On December 2, 2008, Cardoza was found guilty of Counts One, Two, Four, and Five of the Indictment. Sentencing is scheduled for April 10, 2009.

(3)    Benjamin Alvarez, aka: T-Top - On December 2, 2008, Alvarez was found guilty of Counts One, Two, Four and Five of the Indictment. Sentencing is scheduled for April 1, 2009.

(4)    Eduardo Ravelo, aka: Tablas - Fugitive.

(5)    Miguel Angel Esqueda, aka: Angelillo - On October 10, 2008, Esqueda pled guilty to Counts One and Two of the Indictment. Sentencing is scheduled for March 30, 2009.

(6)    Gustavo Gallardo, aka: Tavo - On August 12, 2008, Gallardo pled guilty to Counts One, Two, and Five of the Indictment. On March 25, 2009, Gallardo was sentenced to 90 months custody followed by 5 years supervised release.

(7)    Eugene Mona, aka: Gino - On December 2, 2008, Mona was found guilty of Count Two of the Indictment. Sentencing is scheduled for April 1, 2009.

(8)    Jose Martin Garcia, aka: Spider - On July 25, 2008, Garcia pled guilty to Counts One, Two, and Five of the Indictment. Sentencing is scheduled for April 3, 2009.

(9)    Roberto Duran, aka: Niteowl - On July 24, 2008, Duran pled guilty to Counts One, Two and Five of the Indictment. On March 23, 2009, Duran was sentenced to 60 months custody followed by 5 years supervised release.

(10)    Danny Tarin - On October 22, 2008, Tarin pled guilty to Counts Two and Five of the Indictment. Sentencing is scheduled for March 31, 2009.

(11)    Johnny Michelletti, tn: John Carl Michelletti III, aka: Conejo - On August 29, 2008, Michelletti pled guilty to Counts One and Two of the Indictment. Sentencing is scheduled for March 27, 2009.

(12)     Said Francisco Herrera, aka: Shorty - On December 2, 2008, Herrera was found guilty of Counts One, Two, Three and Five of the Indictment. Sentencing is scheduled for April 1, 2009.

(13)     Adam Munoz, tn: Adam Ray Munoz, aka: Serio - On October 28, 2008, Munoz pled guilty to Counts One, Two, Three, and Eleven of the Indictment pursuant to a Sealed Plea Agreement. Sentencing is scheduled for April 2, 2009.

(14)     Eric Saucedo, aka: Flaco - On August 14, 2008, Saucedo pled guilty to Counts One and Two of the Indictment. Sentencing is scheduled for March 26, 2009.

(16)     Sandy Valles New, Tn: Sandy New Valles, aka: Guera - On October 14, 2008, Valles pled guilty to Count Two of the Indictment. On March 11, 2009, New was sentenced to 63 months custody followed by 5 years supervised release.

## PART A.  THE OFFENSE

### Charge and Conviction

1.  Carlos Perea, aka: Shotgun; Manuel Cardoza, aka: Tolon; Benjamin Alvarez, aka: T-Top; Eduardo Ravelo, aka: Tablas; Miguel Angel Esqueda, aka: Angelillo; Gustavo Gallardo, aka: Tavo; Eugene Mona, aka: Gino; Jose Martin Garcia, aka: Spider; Roberto Duran, aka: Niteowl; Danny Tarin; Johnny Michelletti, tn: John Carl Michelletti III, aka: Conejo; Said Francisco Herrera, aka: Shorty; Adam Munoz, aka: Serio; Eric Saucedo, aka: Flaco; Arturo Enriquez, aka: Tury; and Sandy Valles New, tn: Sandy New Valles, aka: Guera, are named in various counts of an eleven-count Sealed Indictment filed in the Western District of Texas, El Paso Division.  Enriquez is named as follows:

    Count 3:  Conspiracy to Interfere With Commerce by Threats or Violence;
    Count 5:  Conspiracy to Possess Heroin, Cocaine, and Marijuana With Intent to Distribute; and
    Count 11: Murder in Aid of Racketeering Activity.

2.  On July 24, 2008, Roberto Duran pled guilty to Counts One, Two and Five of the Indictment pursuant to a Sealed Plea Agreement.

3.  On July 25, 2008, Jose Martin Garcia pled guilty to Counts One, Two, and Five of the Indictment pursuant to a Sealed Plea Agreement.

4.  On August 12, 2008, Gustavo Gallardo pled guilty to Counts One, Two, and Five of the Indictment pursuant to a Sealed Plea Agreement.

5.  On August 14, 2008, Eric Saucedo pled guilty to Counts One and Two of the Indictment pursuant to a Sealed Plea Agreement.

1

6.    On August 29, 2008, Johnny Michelletti, tn: John Carl Michelletti III, pled guilty to Counts One and Two of the Indictment pursuant to a Sealed Plea Agreement.

7.    On October 10, 2008, Miguel Angel Esqueda pled guilty to Counts One and Two of the Indictment pursuant to a Sealed Plea Agreement.

8.    On October 14, 2008, Sandy Valles New, tn: Sandy New Valles, pled guilty to Count Two of the Indictment pursuant to a written Plea Agreement.

9.    On October 22, 2008, Danny Tarin pled guilty to Counts Two and Five of the Indictment pursuant to a Sealed Plea Agreement.

10.    On October 28, 2008, Adam Munoz pled guilty to Counts One, Two, Three, and Eleven of the Indictment pursuant to a Sealed Plea Agreement.

11.    On December 2, 2008, Carlos Perea was found guilty of Counts One, Two, Four, and Five of the Indictment.

12.    On December 2, 2008, Manuel Cardoza was found guilty of Counts One, Two, Four, and Five of the Indictment.

13.    On December 2, 2008, Benjamin Alvarez was found guilty of Counts One, Two, Four and Five of the Indictment.

14.    On December 2, 2008, Eugene Mona was found guilty of Count Two of the Indictment.

15.    On December 2, 2008, Said Francisco Herrera was found guilty of Counts One, Two, Three and Five of the Indictment.

16.   On December 2, 2008, Arturo Enriquez was found guilty of Count Three of the Indictment.

17.   Eduardo Ravelo, aka: Tablas, remains a fugitive from justice.

**Related Cases**

18.   The following individuals were arrested/convicted for criminal conduct associated with the instant offense.

19.   On April 2, 2006, Gerardo Hernandez was arrested and subsequently indicted with Importation and Possession With Intent to Distribute a Quantity of Marijuana (47.56 kilograms) in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-06-CR-894DB(1). On August 30, 2006, Hernandez was sentenced to 12 months and 1 day custody, followed by 2 years supervised release.

20.   Juan Daniel Samaniego-Bejerano and Hector Ramos Frausto, Jennifer Martinez, Gerardo Hernandez, Jesus Jose Murga, Jr. and others (sealed) were arrested and charged with Conspiracy to Import and Possession with Intent to Distribute Cocaine (14.06 kilograms), Conspiracy to Launder Money Instruments, and Bulk Cash Smuggling. All the defendants were sentenced in the United States District Court, Western District of Texas, El Paso Division, under Dkt. No. EP-05-CR-1895KC. On December 18, 2007, Murga was sentenced to 24 months custody followed by 3 years supervised release. On January 9, 2008, Hernandez was sentenced to 96 months custody, followed by 5 years supervised release. On August 5, 2008, Martinez was sentenced to 40 months custody, followed by 8 years supervised release. On August 14, 2008, Frausto was sentenced to 5 years probation and assessed a $2,000 fine. Also, on August 14, 2008, Samaniego-Bejerano was sentenced to 210 months custody, followed by 10 years supervised release.

21.     On April 23, 2008, Robert Flores was transferred from the Texas Department of Criminal Justice - Institutional Division to Federal custody on a Writ of Habeas Corpus Ad Prosequendum on charges of Felon in Possession of a Firearm.  On October 27, 2008, Flores was sentenced to 70 months custody, followed by 3 years supervised release, in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-61DB(1).

22.     On February 6, 2008, Alberto Silvas, tn: Alberto Granados-Silvas, was arrested and subsequently indicted with Conspiracy to Possess With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (44.6 grams), in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-68DB(1).  On September 24, 2008, Silvas was sentenced to 30 months custody, followed by 3 years supervised release.

23.     On February 28, 2008, Abel Castillo was arrested and subsequently indicted with Felon in Possession of a Firearm, in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-62DB(1).  On August 18, 2008, Castillo was sentenced to 24 months custody, followed by 2 years supervised.

24.     On March 6, 2008, Ronnie Rojas, tn: Ronnie Armando Rojas, was arrested and subsequently indicted with Possession With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (24 grams), in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-69DB(1).  On September 3, 2008, Rojas was sentenced to 41 months custody, followed by 3 years supervised release.

25.     On April 10, 2008, Robert Angel Cardona, tn: Roberto Angel Cardona, was arrested and subsequently indicted with Possession With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (28 grams), in the United States District Court for the Western District of Texas, El Paso Division,

under Dkt. No. EP-08-CR-66DB(1). On September 29, 2008, Cardona was sentenced to 24 months custody, followed by 3 years supervised release.

26.     On July 7, 2008, David Uzeta was transferred from the Texas Department of Criminal Justice - Institutional Division to Federal custody on a Writ of Habeas Corpus Ad Prosequendum.  Uzeta is named in a two-count Federal Indictment charging Possession With Intent to Distribute a Quantity of Cocaine (54.7 grams). On December 10, 2008, Uzeta pled guilty to both counts of the Indictment in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-65FM(1).  On February 18, 2009, Uzeta was sentenced to 77 months custody, followed by 5 years supervised release.

27.     On August 20, 2008, Juan Valles was arrested on a bench warrant issued by the United States District Court for the Western District of Texas, El Paso Division, for two counts of Possession With Intent to Distribute a Quantity of Cocaine (57 grams). On January 15, 2009, Valles pled guilty to both counts of the indictment in the United States District Court for the Western District of Texas, under Dkt. No. EP-08-CR-67DB(1). Sentencing is scheduled for April 8, 2009.

28.     On September 9, 2008, Samuel Alejandro Frausto was arrested on a bench warrant issued by the United States District Court for the Western District of Texas, El Paso Division, for Possession With Intent to Distribute a Quantity of Cocaine (83 grams), Felon in Possession of a Firearm, and Felon in Possession of Ammunition. On February 5, 2009, Frausto pled guilty to Counts One and Three of the indictment, in the United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-60DB(1).  Sentencing is scheduled for April 29, 2009.

29.     On September 24, 2008, Jesus Talamas was charged with Possession With Intent to Distribute Methamphetamine (22 grams).  This case remains pending in the

United States District Court for the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-64DB(1), and a federal detainer has been lodged.

30. Luis Carlos Valadez was charged in the United States District Court for the Western District of Texas, El Paso Division, for Possession With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (49.5 grams). This case remains pending in the Western District of Texas, El Paso Division, under Dkt. No. EP-08-CR-63DB(1), and a federal detainer has been lodged.

**The Offense Conduct**

31. Beginning January 1, 2003, and continuing to January 9, 2008, the Federal Bureau of Investigation (FBI) commenced an investigation into the Barrio Azteca (BA) criminal enterprise. Based on information obtained throughout the course of the investigation, to include information obtained from various confidential sources and witnesses, the following findings were established.

32. From 1986 through the present, a criminal organization and enterprise known as the "Barrio Azteca (BA)", "Del West", "Familia Azteca", "The Arrow Empire" or "Los Indios," engaged in the activities of extortion, retaliation, robbery, assault, murder, money laundering and narcotics trafficking. The BA is a violent prison gang, whose members are located within the Texas Department of Criminal Justice (TDCJ), local jail facilities, federal correctional facilities, throughout the City of El Paso, Texas, and elsewhere. According to the BA's "Constitution," the criminal activities of the enterprise are directed by leaders who are designated as "Capos" (Captains) and who are the individuals in charge of directing the criminal activities of the entire criminal enterprise.

33. The BA was formed by inmates from El Paso, Texas, who banded together to protect themselves from other prison gangs within the TDCJ. Founding members

of the BA created an organization of inmates that would stand up to the challenges of the enterprise. The principle goals of the organization were to protect members, battle with rival gangs, raise money by importing and distributing narcotics, provide protection to non-gang members for a fee, and collect "cuota" or "taxes from individuals/businesses selling drugs on areas controlled by the BA criminal enterprise. After the monies are collected, they are then forwarded to high ranking BA members who are incarcerated in detention facilities. Members eventually sought to generate income to help inmates with legal expenses, commissary expenses and the financial needs of inmates' families occasioned by their loved ones' incarceration. The BA has expanded its sphere of influence to various cities in West Texas and Ciudad Juarez, Chihuahua, Mexico.

34. The original members of the BA created a charter or rules, also known as "sacred rules," which are inherit rules for members of the BA to follow. These rules direct BA members to be loyal, obey, protect, and serve the "family" as dictated by ranking members. The rules also required that a member must continue his participation in the organization after being released from prison. Membership is for life, and loyalty to the BA and its members take precedent over any other relationship. A violation of the BA rules or orders may result in harsh penalties, including death. An order to carry out a punishment involving assault, or murder, is commonly referred to as a "green light" or "X." A "calentada" is a less severe form of punishment which is administered to BA members when BA members failed to follow an inherent sacred rule. The rules help insure that members and associates will function as a continuing unit, despite any changes in leadership or membership.

35. The BA continues to generate income through narcotics trafficking, extortion of money "cuota" or "taxes" from individuals/businesses who engaged in the sale of narcotics. These individuals are threatened, robbed, assaulted or killed by members and/or associates of the enterprise and it is the responsibility of the soldier/indio to carry out the orders of the ranking members. Ultimately, El Paso became the "capital" of the BA; however, other western cities in Texas have BA members.

36.  Each new member of the BA is instructed by their "Padrino" (mentor) to participate in drug trafficking activities, collect a "cuota" or "taxes," murder rival gang members in the event of gang warfare, murder their own members who violate BA rules, and murder non-gang members who interfere with the BA enterprise. The BA also enforces its rules and promotes discipline among its own members by issuing "green lights" to those who disrespect the BA's "Constitution".

37.  The BA leadership ranks are the following: Capos (Captains) Lieutenants, Sergeants and Soldiers, also known as "Indios." BAs refer to each other as "Carnal" and a person wishing to join the BA is called a "prospecto," or "esquina."

38.  A "green light" or "X" (murder/assault) is issued on individuals, to include BA members, who disrespect the BA Constitution or interfere with the BA criminal enterprise, and can be authorized only by a Captain. The Captain can issue the orders without the majority vote of four other Captains. However, the other Captains must be advised of the issuance of the order. Any major decision must be reviewed by all of the leaders of the BA criminal enterprise. If a Captain issues a green light without advising the leadership, that decision will be investigated by the Captains. After the evidence is reviewed, the leadership will either uphold the green light or issue a green light against the Captain for disobeying the rules of the BA criminal enterprise. The Captain is also allowed to issue orders involving drug distribution and the collection of a "cuota" or "taxes." The collection of a "cuota" or "taxes" which are ultimately converted into money orders and sent to incarcerated high ranking BA members, is referred to as "the scheme."

39.  "Carnales" conduct the day to day operation of the BA criminal enterprise, including engaging in criminal activities in order to prove their loyalty and dedication to the criminal enterprise. Every new member coming into the organization knows they will have to commit murder, assault, kidnaping, extortion, intimidation, robbery and drug related activities. Prior to becoming a "Carnal," the prospect will be investigated by the organization. Members conducting the investigation will seek the assistance

of BA associates familiar with the legal community, and who have access to public records as well as other more sensitive records. A report is submitted to the BA leadership for their consideration in determining whether the prospect will be allowed to become a BA member.

40. A BA member that is released from prison is instructed to report to a ranking member of the organization in El Paso, Texas, or elsewhere, so that he can be provided with narcotics to sell, collect a "cuota" or "taxes," import drugs into the United States, and perform other illegal activities, including murder. The BA is involved in distributing quantities of marijuana, heroin and cocaine, the majority of which are imported from the Republic of Mexico. To assist incarcerated BA members with commissary expenses and other needs, money orders are transmitted through the United States Postal Service. These money orders represent proceeds derived from the sale of illegal substances and the collection of "cuota" or "taxes."

41. The BA has entered into an alliance with the Vicente Carrillo-Fuentes Drug Trafficking Organization (VCFDTO) in Ciudad Juarez, Chihuahua, Mexico. This symbiotic relationship consists of the BA members importing and transporting controlled substances, as well as conducting enforcement operations for the VCFDTO. The VCFDTO in exchange pays the BA for these services, or provides the BA with controlled substances at discount prices.

42. The BA has further subdivided its enterprise and developed geographical groups to better serve the criminal aims of the organization. These groups include the cities of Ciudad Juarez, Chihuahua, Mexico, and El Paso, Midland, and Odessa, Texas. Each of these geographical groups has some autonomy in deciding how they will achieve their criminal aims, within the framework and rules of the overarching BA criminal enterprise. El Paso is subdivided into different subsections similar to the political subdivisions in the city, such as Central, Westside, Northeast, Eastside, Lower Valley, Horizon, Socorro, etc.

43.  The BA enterprise utilized the United States Postal Service to send and receive letter communications between BA members who are in prison and those who are in the "free world." The letter writer would use coded references to discuss BA enterprise business. These letters were sometimes called "Kites" or "Wilas." BA members would often utilize an individual as a conduit to receive or send letters from another BA member or associate. These conduits are called "bridges." The conduits would often use fictitious names and addresses to send and receive letters and money orders to BA members who were incarcerated. The use of these conduits prevent law enforcement from finding out the identities or source of the true correspondents and the final destination of the letters.

44.  BA members additionally utilize telephone communications to discuss BA enterprise affairs. BA members who are incarcerated coordinate telephone calls with BA members and associates to give out orders. Additionally, the BA criminal enterprise coordinates on-going meetings with BA members. The topics discussed in these meetings consist, but are not limited to the following: 1) distribution of narcotics, 2) the areas of operation, 3) who was is in charge of those areas, 4) how much money was collected in the areas, 5) the status of the "store" in the areas, 6) who needed a "calentada" (beating), and 7) collection of "cuotas".

45.  The FBI's investigation into the criminal activities of the BA culminated in the Indictment of Carlos Perea, aka: Shotgun; Manuel Cardoza, aka: Tolon; Benjamin Alvarez, aka: T-Top; Eduardo Ravelo, aka: Tablas; Miguel Angel Esqueda, aka: Angelillo; Gustavo Gallardo, aka: Tavo; Eugene Mona, aka: Gino; Jose Martin Garcia, aka: Spider; Roberto Duran, tn: Roberto Nestor Duran III, aka: Niteowl; Danny Tarin; Johnny Michelletti, tn: John Carl Michelletti III, aka: Conejo; Said Francisco Herrera, aka: Shorty; Adam Munoz, tn: Adam Ray Munoz, aka: Serio; Eric Saucedo, aka: Flaco; **Arturo Enriquez, aka: Tury**; and Sandy Valles New, tn: Sandy New Valles, aka: Guera.

46. Carlos Perea, the most feared member of the BA, Manuel Cardoza, and Benjamin Alvarez were captains who directed members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the BA's enterprise's affairs. Captains promote and demote members of the enterprise, pronounce disciplinary measures, and direct how drug proceeds are distributed to BA members within the various prison facilities.

47. Eduardo Ravelo, Miguel Angel Esqueda, and Gustavo Gallardo, were high ranking members of the enterprise. They directed other BA members and associates. They also supervised the importation, transportation, and distribution of narcotics and the collection, and distribution of drug proceeds and the collection of a "cuota" or "taxes."

48. Eugene Mona, Jose Martin Garcia, Roberto Duran, Johnny Michelletti, Said Francisco Herrera, Adam Munoz, Eric Saucedo, **Arturo Enriquez**, and Sandy Valles New, tn: Sandy New Valles, participated in BA activities, including facilitating communications between BA members and carrying out orders of the BA leadership, and enforcing BA rules.

49. Danny Tarin, an associate of the BA, participated in BA activities by paying "cuota" or "taxes" to the BA criminal enterprise for protection.

50. From January 1, 2003, until January 9, 2008, the pattern of racketeering activity through which the above-mentioned conducted and participated in the conduct of the affairs of the criminal enterprise consisted of murder, aggravated assault, extortion and conspiracy to commit extortion, and possession with intent to distribute approximately 67.1 kilograms of heroin, 258 kilograms of cocaine, and 1,075.64 kilograms of marijuana. The investigation further revealed that the BA criminal enterprise collected approximately $960,000 (conservative amount) in "cuota" or "taxes" throughout the RICO conspiracy, of which $56,192 was laundered into the commissary accounts of Carlos Perea, Benjamin Alvarez, Manuel Cardoza,

11

and another unindicted co-conspirator. The monies collected and laundered were derived from the unlawful distribution/transportation/sale of controlled substances.

**Murder**

51.  The FBI investigation revealed that the BA developed a rule that gave drug-traffickers permission to sell narcotics on BA turf as long as they paid a "cuota" or "taxes" to the BA criminal enterprise. The collection of the "cuota" or "taxes," the beginning process of "the scheme," supported the "extortion" and "intimidation" factor for the BA criminal enterprise. BA captains Carlos Perea, Benjamin Alvarez, and Manuel Cardoza, were aware that failure to comply with payment of a "cuota" would result in severe punishment, to include death.

52.  Captains within the BA additionally allowed any other captain to issue a "green light" on BA members who would disobey the BAs Constitution or on those who interfered with the affairs of the BAs criminal enterprise.

53.  On May 6, 2004, a CS reported that on April 22, 2004, captain Manuel Cardoza, wrote a letter to Gerardo Hernandez, aka: Little Man. According to the CS, the letter made reference that Alberto Silvas', aka: Flaco, had a mentor identified as Ruben Tagle, aka: Jawbreaker. Cardoza stated that Silvas was allowed back into the BA; however, he would have to be mentored by someone else. The CS later reported that the CS was advised by a BA member that a "green light" had been issued on Tagle for disrespecting BA rules. According to the CS, Tagle stole narcotics from another BA member and was subsequently killed by a BA member. The investigation revealed captains Perea and Alvarez, were involved with the authorization of Tagle's murder. At the time of Tagle's murder, Manuel Cardoza was not a captain.

54.  On June 22, 2004, Eugene Mona, aka: Gino, mailed a letter through the United States Postal Service to a CS, authorizing a "green light" on a rival gang known as

"PRM" or "Paisas" for interfering with the BA criminal enterprise. According to the CS, this letter was sent to Mona from Manuel Cardoza. The CS reported that this declaration of war was the direct result of an altercation that occurred in the CeReSo Prison in Ciudad Juarez, Chihuahua, Mexico, in April 2004. Additionally, because of this letter, Eduardo Ravelo, under the direction of the BA captains, issued a "green light" on any "Paisas" member in order to prevent them from "setting up shop" (be an established gang) in Ciudad Juarez. The CS reported that thereafter, a "Paisas" member was killed in Ciudad Juarez by a Ciudad Juarez BA member, identified as "Morgan." The CS reported that the Paisas gang member was shot in the face with a .357 caliber weapon.

55.  FBI agents interviewed Gerardo Hernandez. During the interview, Hernandez confirmed that captains Perea, Alvarez, and Manuel Torres, aka: Longo, wrote to Manuel Cardoza requesting a "green light" be placed on "Paisas" gang members. According to Hernandez, Cardoza put the pressure on David Meraz, aka: Chicho, and Eduardo Ravelo to order the hits on all "Paisas" gang members. Hernandez further stated that Cardoza instructed Meraz and Ravelo to also kill any BA member who were followers of former BA member Jesus Arguelles Palos, aka: El Diablo.

56.  On April 23, 2005, Channel 9 News in El Paso, Texas, reported that an individual identified as Jesus Arguelles Palos, aka: El Diablo, ex-leader of the Ciudad Juarez BA gang, had been shot and killed at the "Deco" restaurant located in downtown Ciudad Juarez. Upon interviewing a CS, the CS reported that Manuel Cardoza wrote a letter to Eduardo Ravelo telling Ravelo that Ciudad Juarez BA member Palos needed to clean up his "shit" and keep his mouth shut. Cardoza informed Ravelo that if Palos did not clean up his "shit" for Ravelo to clean it up for him.

57.  On May 28, 2005, Johnny Micheletti, aka: Conejo, was interviewed by FBI agents. Micheletti confirmed that Eduardo Ravelo was the individual who had killed Palos.

58. On December 6, 2006, Adam Munoz, aka: Serio, Eric Saucedo, aka: Flaco, and **Arturo Enriquez, aka: Tury**, traveled to an apartment located on Frutas Street in El Paso, Texas, where Jose Luis Oviedo, a street level drug-trafficker, resided. Upon arrival at the residence, Munoz demanded Oviedo to pay the "cuota" owed to the BA. When Oviedo informed Munoz he was unable to pay, Oviedo and Munoz engaged in a verbal dispute. Munoz subsequently killed Oviedo by shooting Oviedo with a hand gun.  Medical records reflect Oviedo died from multiple gun shot wounds to the head and chest.

59. On December 19, 2006, Munoz was arrested at the Bridge of the Americas Port of Entry, El Paso, Texas, and was transported to the El Paso Police Department headquarters for questioning. Upon being interviewed, Munoz denied any knowledge of the events of December 6, 2006, or the collection of the "cuota" in general.

60. Upon being interviewed, Saucedo and **Enriquez** reported they were familiar with the BA's practice of intimidation and threats of bodily injury when a drug-trafficker was reluctant or unable to pay. Saucedo and **Enriquez** admitted they participated in the collection of "cuota" or "taxes" from Oviedo; however, Saucedo and **Enriquez** reported they were not aware that Munoz planned to kill Oviedo on their last visit to Oviedo on December 6, 2006. Saucedo admitted he was a BA member.

61. Upon interviewing a CS, the CS stated the **Arturo Enriquez** was a soldier in the BA who assisted Adam Munoz with the collection of "cuota" or "taxes" in the Central part of El Paso. The CS further stated that in early 2007, **Enriquez** confessed to him that while assisting Munoz with the collection of a "cuota" he was outside waiting on Munoz when he (**Enriquez**) heard a gunshot. **Enriquez** told the CS that Munoz had given him (**Enriquez**) some gloves to get rid of.

62. On May 30, 2007, a CS reported that two weeks earlier, individuals identified as Antonio Alsarez, Ivan Ortiz, and Jesus Vital were murdered in Ciudad Juarez and

that Eduardo Ravelo was the individual who, under the direction of the BA captains, issued the "green light" on the above-mentioned individuals. The investigation later confirmed that Ortiz and Vital had been murdered.

63.     On July 11, 2007, a CS reported that two months earlier, an individual identified as Arturo Jaramillo Morillon was killed and his body had been found in an empty lot located in Ciudad Juarez. Eduardo Ravelo had ordered the "hit" on Morillon because Morillon owed a drug debt. The investigation later confirmed that Morillon had been murdered.

64.     On October 23, 2007, Gerardo Hernandez reported that BA member Raul Landeros, aka: Muslim, had advised him that David Meraz, aka: Chicho, had given up fellow BA member Mike Flores, aka: Chato, to operatives from the Vicente Carrillo Fuentes Drug Trafficking Organization (VCFDTO) for $20,000 cash. According to another CS, the BA captains granted the order to turn in Flores because Flores had been stealing narcotics from the VCFDTO. Gustavo Gallardo, corroborated Hernandez' statement and stated that Eduardo Ravelo was also involved. BA member Johnny Michelletti, corroborated Hernandez' statement and added that he, Michelletti, was informed that Flores had been dumped into a 50 gallon drum of acid. The investigation later confirmed that Flores had been murdered.

65.     On May 8, 2008, Gustavo Gallardo reported that David Meraz had been murdered. Gallardo believed that Eduardo Ravelo and Miguel Angel Esqueda, aka: Angelillo, were involved in Meraz' murder and that a BA captain had issued the order. According to the Government and FBI agent, a letter was intercepted two weeks prior to Meraz' murder written by Carlos Perea to Esqueda through a third party ordering the "hit" on Meraz. The letter confirmed other recent contact between Perea and Esqueda and details other instructions from Perea to Esqueda and other BA members. The investigation later confirmed Meraz had been murder. Moreover, the investigation additionally revealed that Esqueda, under the direction of BA

captains, ordered "hits" on other BA members. However, those murders have not been confirmed.

66. Based on the FBI investigation, captains Carlos Perea and Benjamin Alvarez are held accountable for the murder of Ruben Tagle, Arguelles Palos, Jose Luis Oviedo, Mike Flores, Ivan Ortiz, Jesus Vital, Arturo Jaramillo Morillon, and David Meraz. The investigation revealed that Perea and Alvarez, were BA captains authorizing the "green light" on the above-mentioned individuals.

67. Captain Manuel Cardoza is held accountable for the murder of Arguelles Palos, Jose Luis Oviedo, Mike Flores, Ivan Ortiz, Jesus Vital, Arturo Jaramillo Morillon, and David Meraz. The investigation revealed that Cardoza was a BA captain who authorized the "green light" on these individuals.

68. BA member Miguel Angel Esqueda is held accountable for the murder of David Meraz. The investigation revealed Esqueda acted under the direction of BA captains.

69. BA member Eduardo Ravelo is held accountable for the murder of Arguelles Palos, Mike Flores, Ivan Ortiz, Jesus Vital, Arturo Jaramillo Morillon, and David Meraz. The investigation revealed Ravelo acted under the direction of BA captains.

70. BA members Adam Munoz, Eric Saucedo, and **Arturo Enriquez** are held accountable for the murder of Jose Luis Oviedo. The investigation revealed Munoz acted under the authority of BA captains.

**Aggravated Assault**

71. On January 26, 2006, Said Francisco Herrera, aka: Shorty, and several unindicted co-conspirators traveled to a Whataburger restaurant located in El Paso, Texas and struck Jose Manuel Acuna with their hands and feet, causing serious bodily injury

to Acuna. The injuries sustained by Acuna consisted of a left subdural hematoma (head trauma) and several facial bone fractures (a right zygomatic fracture, a right maxillary fracture, a right orbital wall fracture, and a right medial orbital wall fracture). Upon interviewing several witnesses, they all identified Herrera as one of three individuals who was involved in the assault. The witnesses reported Herrera was the individual who continued to stomp Acuna's head repeatedly, even after Acuna had been bleeding profusely and his body had begun to "twitch." Upon interviewing several BA members, they all reported they had no knowledge as to why Herrera assaulted Acuna. According to the FBI agent, Herrera was an "enforcer" for the BA (conducted assaults or calentadas) who assaulted Acuna because Herrera believed Acuna was a drug-trafficker who was not paying a "cuota" to the BA criminal enterprise.

72.   Based on available information, BA member Said Francisco Herrera is held accountable for the aggravated assault against Jose Manuel Acuna.

**Extortion and Conspiracy to Commit Extortion**

73.   As previously mentioned, the BA developed a rule that gave drug-traffickers permission to sell narcotics on BA turf as long as they paid a "cuota" or "taxes" which supported the "extortion" and "intimidation" factor for the BA criminal enterprise.

74.   The BA criminal enterprise operated throughout El Paso, Texas, and assigned certain BA members to supervise the drug-trafficking activities and the collection of "cuota" or "taxes" in designated subdivisions. The subdivisions consisted of Central, Westside, Northeast, Eastside, Lower Valley, Horizon City, Socorro etc. Each drug-trafficking entity, referred to as a "tienda" (store), allowed to sell narcotics on BA turf, were required to pay the BA for protection.

75. On July 5, 2003, a CS reported that Gustavo Gallardo was in charge of collecting all of the "cuota" or "taxes" received and would forward the monies to David Meraz. The CS further identified various unindicted BA members responsible for collecting "cuota" or "taxes" from various areas in El Paso.

76. On July 18, 2003, a CS reported that he personally accompanied BA member Carlos Diaz, aka: Joker, to several "tiendas" in the Central area of El Paso. According to the CS, there were four "tiendas" in which the BAs collected approximately $300 to $400 per week. The CS further reported that there were two "stores" in the Northeast area and that there were four stores paying in El Secundo Barrio area of El Paso.

77. On November 11, 2003, a CS reported that Jose Garcia, aka: Spider, an individual identified as "Little Rob," and Roberto Duran, aka: Niteowl, collected "cuota" or "taxes" from the Central area of El Paso.

78. On December 30, 2003, a CS collected approximately $420 from a Westside "tienda" and $160 from an Eastside "tienda" in El Paso.

79. On March 2, 2004, a CS reported that Gustavo Gallardo picked up "cuota" or "taxes" in El Paso and delivered the monies to BA member Eugene Mona. Once the money was collected by Mona, Mona delivered the money to another unindicted BA member.

80. On March 14, 2004, a CS collected $310 from various "tiendas" throughout the El Paso.

81. On June 15, 2004, a CS reported that the CS collected $320 in "cuota" or "taxes" from Adam Garcia, aka: Bad Boy. The CS indicated Garcia was in charge of collecting "cuota" or "taxes" in the Lower Valley of El Paso. The CS further stated the CS collected $96 from Daniel Miranda and that Miranda still owed the CS $294.

According to the CS, Miranda was in charge of collecting "cuota" or "taxes" from the Central area.

82.    On June 30, 2004, a CS reported that the business "World Class Suspensions" located in El Paso paid $140 per week in "cuota" or "taxes" to the BA for allowing them to sell narcotics out of the business.

83.    On August 4, 2004, a CS reported that the CS collected a total of $709 of "cuota" or "taxes" from the following areas: Lower Valley, Central, Westside, and Eastside El Paso. Upon collection of the monies, the CS turned the money over to Gustavo Gallardo, who then sent the money to incarcerated BA members. The CS confirmed that the "cuota" or "taxes" were monies derived from the distribution/transportation/sale of narcotics.

84.    On August 6, 2004, a CS collected approximately $709 in "cuota" or "taxes" from BA members. The CS turned over the money to Gustavo Gallardo. Also, on August 6, 2004, the CS collected $710 from Danny Tarin and other "tiendas" in El Paso.

85.    On October 26, 2004, an unindicted co-conspirator turned over $100 in "cuotas" or "taxes" to the CS. On the same date, two other unindicted co-conspirators turned over $210 each to the CS. Miguel Angel Esqueda then collected the $520 from the CS.

86.    On May 28, 2005, Johnny Michelleti reported he had collected "cuota" or "taxes" from "tiendas" (stores) and turned the money over to Andy Zubia, aka: Duke. Michelleti reported he collected approximately $1,800 per week and reported he was directed by David Meraz to open new stores and distribute drugs to make money for the organization. Michelleti reported he collected "cuota" or "taxes" from at least sixteen individuals or stores in El Paso. According to Michelleti, he was also the "enforcer" who conducted calentadas and assaults for the BA.

87. On November 29, 2006, Adam Munoz, demanded payment from Jose Luis Oviedo. On December 6, 2006, Munoz killed Oviedo.

88. On December 13, 2006, a CS reported that the BA collected approximately $4,000 per month in "cuota" or "taxes." According to the CS, $2,800 of the $4,000 was forwarded to the commissary accounts of incarcerated BA members. The CS further reported that Manuel Cardoza, Carlos Perea, Benjamin Alvarez, Manuel Torres, and Ruben Balcazar, aka: Pelon, received $200 per month, while other selected ranking BA members received $50 per month. Furthermore, the CS indicated that the list of incarcerated BA members was usually provided by Gustavo Gallardo or David Meraz. Eugene Mona, however, was in charge of communicating with Cardoza and passing on the orders and directives given by Cardoza to Meraz. Meraz in turn issued all of the orders/directives given by the leaders of the BA to BA members in the "free world."

89. On July 16, 2007, Gustavo Gallardo was interviewed by FBI agents. Gallardo reported that a BA member known to him as "Squirrel" was responsible for collecting "cuota" or "taxes" from the CeReSo prison located in Ciudad Juarez, Chihuahua, Mexico. According to Gallardo, Squirrel collected approximately $100,000 per week.

90. On February 13, 2008, Jose Martin Garcia was interviewed by FBI agents. Garcia reported he had seven "tiendas" in East El Paso and reported he also collected money from Loco Hydraulics and an unknown liquor store in El Paso. According to Garcia, he collected $175 per week from Loco Hydraulics and $35 per week from the liquor store. Garcia further added he also collected $50 a week from an unknown female who was selling marijuana in the El Paso area. Garcia estimated he collected anywhere between $27,000 to $30,000 per year in "cuota" or "taxes."

91. On June 3, 2008, Roberto Duran was interviewed by FBI agents. Duran reported he became a BA member in February 1999, and had collected a "cuota" or "taxes"

from the Central area of El Paso. According to Duran, he collected $50 from Bobby's Place, $50 from the El Coyote Bar and two other stores that Duran could not recall. After collecting the money, Duran would turn the money over to BA member "Casper" and Casper would turn the money over to David Meraz. According to Duran, the monies were sent to incarcerated BA members. Duran reported he was removed from being in charge of the Central area by Said Francisco Herrera; however, sometime in early 2004, Duran was placed back in charge by Miguel Angel Esqueda.

92.  The FBI investigation did not identify all the BA members who were directly involved in the collection of "cuota" or "taxes." However, according to FBI, based on statements provided by several BA members, CSs, and witnesses, it was estimated that the BA criminal enterprise collected approximately $192,000 (conservative amount) per year in "cuota" or "taxes." Throughout this RICO conspiracy, the BA criminal enterprise collected $960,000.

93.  Based on the FBI investigation, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Miguel Angel Esqueda, Gustavo Gallardo, Eugene Mona, Adam Munoz, Roberto Duran, Jose Martin Garcia, Johnny Michelleti and Said Francisco Herrera are all held accountable for the collection of approximately $960,000 in "cuota" or "taxes" paid by various drug-traffickers who were given permission by the BA to sell narcotics on BA turf throughout the RICO conspiracy. The narcotics attributed to the RICO conspiracy consists of 67.1 kilograms of heroin, 258 kilograms of cocaine, and 1,075.64 kilograms of marijuana. Furthermore, the collection of the "cuota" or "taxes" were subsequently pooled together and converted into money orders of various denominations and laundered into the commissary accounts of incarcerated BA members and to BA members in the "free world," with the highest denominations going to the highest ranking members. As such, the above mentioned will additionally be held accountable for narcotics trafficking and money laundering.

**Possession with Intent to Distribute Narcotics**

94.  The BA continuously engaged in the activities of narcotics trafficking because the distribution/possession/sale of narcotics supported the "extortion" and "intimidation" factor of the BA. BA captains Carlos Perea, Benjamin Alvarez, and Manuel Cardoza designated certain BA members to supervise the drug-distribution activities of the BA in the El Paso area. The following outlines the distribution/transportation/sale of narcotics directly attributed to the RICO conspiracy.

95.  On July 2, 2003, a CS reported that an individual identified as Juan Carlos Diaz, aka: Joker, advised the CS that David Meraz had 453.6 grams of heroin crossed from Mexico into the United States by unknown females in their body cavity.

96.  On an unknown date, Luis Carlos Valadez was arrested and charged of Possession With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (49.5 grams). According to investigative reports, on July 18, 2003, a CS purchased 22 grams of heroin from Valadez for $400 and on August 13, 2003, the CS purchased 27.5 grams of heroin from Valadez for $1,000. The CS further reported that Valadez usually kept heroin in his underwear because if he was arrested, he could take the heroin into the jail.

97.  On October 16, 2003, a CS reported that Gustavo Gallardo was in possession of 20 kilograms of cocaine and asked the CS if the CS knew of a buyer. According to the CS, the CS informed Gallardo that he knew of a buyer and both the CS and Gallardo met at Gallardo's residence to negotiate a deal.

98.  On October 29, 2003, a CS reported that Gallardo negotiated with the CS the sale of 5 kilograms of cocaine for $15,000 per kilogram. The CS reported he informed Gallardo that the cost was too high and that Gallardo responded "the cocaine was of good quality."

99. On November 3, 2003, Gustavo Gallardo transported a CS to a residence located in El Paso, Texas, where a BA member/associate turned over approximately 50.2 grams of cocaine to the CS.

100. On November 10, 2003, a CS reported that Gallardo negotiated with the CS the sale of 4 kilograms of cocaine.

101. On December 9, 2003, a CS reported that Said Francisco Herrera moved heroin for David Meraz. The CS further reported that Eugene Mona informed the CS that Gustavo Gallardo used his residence as a "stash house" and that Mona recently purchased cocaine from Gallardo. Furthermore, the CS reported that on December 8, 2003, Gallardo contacted the CS and was extremely upset and advised the CS that "something went down" and that he (Gallardo) needed to take care of it. According to the CS, Gallardo was upset because 7.7 kilograms of cocaine was seized by law enforcement officials.

102. On December 29, 2003, a CS reported that Said Francisco Herrera assisted David Meraz in running the streets of El Paso. The CS reported that their was discussion that if Herrera went to prison, Eugene Mona would take over.

103. On February 14, 2004, a CS reported that Gustavo Gallardo inquired about selling 90.72 kilograms of marijuana he (Gallardo) had in his possession. Further Alejandro Frausto, aka: Scrappy, acquired .5 kilogram of cocaine from Eduardo Ravelo.

104. On March 4, 2004, a CS reported that Said Francisco Herrera sold large quantities of cocaine at the Jaguar's and Foxy's strip clubs in El Paso, Texas, and that Gustavo Gallardo transported large quantities of narcotics out of town, specifically to the Chicago, Illinois, area. The CS further reported Gallardo stored the narcotics at his residence and further stated he once personally saw $100,000 at Gallardo's residence.

105.  On March 17, 2004, Alejandro Frausto sold approximately 24.7 grams of cocaine to a CS at an apartment located in El Paso, Texas.

106.  On March 22, 2004, Gustavo Gallardo, sold approximately 28 grams of cocaine to a CS.

107.  On April 16, 2004, Alejandro Frausto made arrangements to sell approximately 28.5 grams of cocaine to a CS.

108.  On April 23, 2004, an unindicted co-conspirator sold approximately 28 grams of heroin to a CS.

109.  On May 6, 2004, a CS reported that Jose Martin Garcia smuggled at least 12 kilograms of heroin utilizing various International ports of entry. The CS stated that the heroin was usually smuggled in the soles of "sketcher" brand shoes. Additionally, Garcia paid each individual $500 per load that was successfully smuggled into the United States. Once the heroin was successfully crossed into the United States, it was transported to New Jersey by drug couriers. The heroin was owned as an individual identified as "Mondo."

110.  On June 2, 2004, a CS reported that on May 30, 2004, Jose Martin Garcia got Miguel Angel Esqueda to assist him in smuggling 2 kilograms of heroin into the United States. According to the CS, the heroin was placed inside two jackets. The jackets were placed in a vehicle and were successfully imported into the United States in a vehicle being driven by Esqueda.

111.  On June 10, 2004, an unindicted co-conspirator sold approximately 27.7 grams of cocaine to a CS at a tattoo shop located in El Paso.

112.  On June 17, 2004, Jose Martin Garcia sold approximately 3 grams of heroin to a CS at the Bad Boyz Tattoo shop in El Paso for $180.

113.    On June 23, 2004, Juan Valles, aka: Johnny, under the direction of Mike Thomas Flores, aka: Chato, sold 28.5 grams of cocaine to a CS at a tattoo shop in El Paso.

114.    On July 1, 2004, Valles, at the direction of Mike Thomas Flores sold 29 grams of cocaine to a CS at a tattoo shop in El Paso.

115.    On July 28, 2004, an unindicted co-conspirator sold 44.6 grams of heroin to a CS2, at a tattoo shop located in El Paso.

116.    On August 9, 2004, Carlos Perea and Eduardo Ravelo talked over the telephone. Revalo and Esqueda discussed the leadership problems with the BA dealing with David Meraz and Miguel Angel Esqueda. Ravelo informed Perea that the BA leadership needed to be restructured and told Perea of a recent load of drugs that had been lost. Perea instructed Ravelo to have Esqueda write a letter to him (Perea).

117.    Later that day, Perea and Ravelo again talked over the telephone. Ravelo told Perea they had drugs that were ready to be transported, but because of the problems in El Paso, they had to wait. Ravelo informed Perea that he and Gerardo Hernandez were attempting to resume their drug-trafficking activities and were addressing previous problems in their drug-trafficking ventures. Ravelo discussed the decision to replace Meraz as the head of the BA enterprise. Meraz was subsequently demoted from supervising the drug related activities in El Paso by Perea; however, shortly thereafter, he was reinstated by Manuel Cardoza.

118.    On August 23, 2004, a CS identified Eduardo Ravelo as the individual in charge of the narcotic-trafficking activities in Ciudad Juarez. According to the CS, Ravelo had direct contact with the Vicente Carrillo Fuentes Drug Trafficking Organization (VCFDTO).

119.  On August 24, 2004, Carlos Perea wrote a letter to Miguel Angel Esqueda, confirming that Perea had demoted David Meraz and had promoted Esqueda to lead the narcotic-trafficking activities in El Paso. Perea authorized Esqueda to take control from Meraz and clean up the streets. Perea gave Esqueda the rank of lieutenant, and advised that the BA leadership would be made aware of the changes.

120.  Six days later, Perea and Ravelo talked over the telephone. Perea asked if Ravelo had talked to Esqueda. Ravelo confirmed he had spoken to Esqueda and that Esqueda had people supporting him. Perea told Ravelo that if Meraz did not relinquish his authority, he (Meraz) would be removed by force.

121.  On August 25, 2004, Alberto Silvas sold 23.3 grams of heroin to a CS while at a tattoo shop in El Paso, Texas.

122.  Later on August 25, 2004, Eduardo Villescas, aka: Shooter, approached a CS to inquire of the whereabouts of Mike Thomas Flores and Robert Valles. Villescas advised the CS that he was approached by people from the "cartel" to find Flores and Valles because they had been suspected of stealing drugs from the cartel.

123.  On September 25, 2004, Ronnie Rojas sold 24 grams of heroin to a CS while at the Bad Boyz tattoo shop in El Paso.

124.  On December 10, 2004, Miguel Angel Esqueda sold approximately 246 grams of cocaine to a CS at a tattoo shop in El Paso.

125.  On June 8, 2005, Johnny Michelleti reported that an individual identified as Victor Mendoza, provided him with 2 grams of heroin to sell.

126.  On July 5, 2005, Johnny Michelleti, reported he declined to sell 1 kilogram of cocaine on behalf of Eduardo Ravelo.

127.    On September 30, 2005, a CS advised that Gustavo Gallardo was collecting all the monies from the "cuota" or "taxes" collected. The CS stated that Gallardo also assisted BA member Eduardo Ravelo transporting drugs into the United States. Once the drugs were in the United States, Said Francisco Herrera would help Gallardo "move" the drugs.

128.    On October 26, 2005, Gerardo Hernandez was interviewed by FBI agents. Hernandez reported he obtained United States passports to provide to drug couriers in order to transport drugs directly from Colombia to New York. Hernandez advised that his job was to find couriers for Jose Martin Garcia. Hernandez indicated he recruited Monica Montano, Erica Salcido and Andres Angel Zubia to transport the heroin into the United States and then to New York. Hernandez reported Salcido and Zubia did not conduct any load transportation; however, Montano transported at least 8 kilograms of heroin to New York. Hernandez reported that when a load was scheduled to be crossed into the United States, Hernandez would contact Montano. Montano would travel to Ciudad Juarez with Garcia and then would meet with "Mondo," the supplier of heroin. Hernandez further indicated that Garcia's wife, Christie Garcia, coordinated the heroin shipments to New York. Hernandez reported Christie Garcia is of Colombia decent and is related to Mondo.

129.    Hernandez additionally reported that Danny Tarin purchased cocaine from World Class Suspensions, a business allowed by the BA to sell narcotics. According to Hernandez, World Class Suspensions controlled the majority of small quantities of cocaine sales in El Paso. Moreover, Hernandez stated that Angel Esqueda moved cocaine to other cities on Greyhound buses. Esqueda used a Hispanic female to smuggle drugs into the United States. Hernandez further stated Esqueda was well connected with Eduardo Ravelo.

130.    Hernandez stated that a BA member, identified as "Corral," was Gustavo Gallardo's right hand man and that Eugene Mona was a Sergeant within the BA gang and would back Gallardo. Hernandez reported that Mona and Gallardo would send

money orders derived from the collection of "cuota" or "taxes" to BA members who were incarcerated in federal, state and local detention facilities. Said Francisco Herrera also assisted Gallardo.

131. On April 2, 2006, Gerardo Hernandez was arrested at the Ysleta Port of Entry, El Paso, Texas, for transporting 47.56 kilograms of marijuana into the United States from Mexico. Hernandez stated he was to be paid $300 for his participation.

132. On September 15, 2006, an individual identified as Michael Warman was arrested for transporting 8.16 kilograms of heroin, while traveling in a bus though Kansas City, Missouri, destined for New York. When questioned, Warman identified Jose Martin Garcia as the individual who provided him the heroin.

133. On October 7, 2006, a CS reported that a BA member from Odessa, Texas, Ramon Romero, aka: Peanut, had requested the CS to pick him up at the Sunland Park Mall in El Paso. The CS reported that once he picked up Romero and his family, he drove them to the Rio Grande Mall in Ciudad Juarez. Prior to exiting the vehicle, Romero gave the CS $100. The CS further reported that the CS asked Romero about the X-ray machines that the Customs Inspectors had to detect drugs. Romero responded that the machines did not work and that he had been transporting drugs in the van for a year and a half. The CS advised that after Romero was dropped off, the CS contacted Eugene Mona to negotiate a sale of cocaine on behalf of Romero.

134. On November 8, 2006, Gustavo Gallardo arrived at a restaurant in El Paso to supervise the delivery of 82.75 kilograms of cocaine that he had coordinated.

135. On November 26, 2006, a CS arranged for the sale/purchase of 113.4 grams of cocaine with Danny Tarin.

136.  On December 11, 2006, a CS reported that on December 10, 2006, Ramon Romero had a load vehicle with approximately 90.72 kilograms of marijuana seized by U. S. Immigration and Customs Enforcement at the Bridge of the Americas Port of Entry, El Paso, Texas. Romero was accompanied by his three minor children. According to the CS, Romero contacted Eugene Mona requesting that Mona pick up his children from the bridge.

137.  On December 13, 2006, a CS turned over 4.5 grams of marijuana the CS had purchased from Jose Martin Garcia.

138.  On December 13, 2006, a CS reported that BA member Eduardo Ravelo had direct contact with VCFDTO , therefore, was the source of supply of cocaine and heroin for the BA. The CS additionally reported that Said Francisco Herrera and an individual identified as "Joe" transported marijuana to Tucson, Arizona. Moreover, the CS reported that Herrera purchased cocaine from a business identified as World Class Suspensions.

139.  The CS reported that the 370.36 kilograms of marijuana seized on November 16, 2004, belonged to a BA member identified as Benefacio Soria. The narcotics were initially stashed in Gustavo Gallardo's residence.

140.  On December 20, 2006, a CS purchased 56 grams of cocaine from Danny Tarin for $1,400.

141.  On March 21, 2007, a CS advised that Gustavo Gallardo utilized a residence located at 3721 Jefferson Avenue, El Paso, Texas, to store drugs. Moreover, the CS reported that Eugene Mona frequently visited Manuel Cardoza at the Texas Department of Corrections, Ellis unit, to discuss problems within the BA criminal enterprise reference the distribution of narcotics.

142. On April 12, 2007, Danny Tarin discussed the sale/purchase of 23.5 grams of cocaine with an individual identified as Raul Nevarez. On April 13, 2007, Danny Tarin and Jose Martin Garcia, discussed the sale/purchase of 10 kilograms of cocaine for $13,000 each. On April 14, 2007, Danny Tarin and Raul Nevarez again discussed the sale/purchase of 142 grams of cocaine. On April 16, 2007, Danny Tarin and Raul Nevarez discussed the sale/purchase of 113.4 grams of cocaine and how they were going to sell the cocaine in .5 gram amounts.

143. On April 17, 2007, surveillance units observed Danny Tarin arrive at a car wash located in El Paso. Tarin met with a minor female. During the course of the surveillance, agents observe Tarin exchange an item with the minor female. The minor female was subsequently stopped by law enforcement officials and was found to be in possession of 1 gram of cocaine. The minor female advised that Tarin sold her the cocaine for $40. The sale occurred within 1,000 feet from a high school.

144. On April 19, 2007, Danny Tarin discussed the sale/purchase of 68.04 kilograms of marijuana with an individual known as "OZZY." Thereafter, Tarin sold 1 gram of cocaine to a high school student within 1000 feet of Ysleta High School, El Paso, Texas and discussed the sale/purchase of 1 kilogram of cocaine with an unknown male. On that same date, Tarin was also contacted by BA member Alberto Silvas, who purchased 45.36 kilograms of marijuana from Tarin. Tarin additionally discussed with Raul Nevarez the sale of 45 grams of cocaine.

145. On April 22, 2007, Tarin discussed the sale/purchase of 90.72 kilograms of marijuana and 85 grams of cocaine with an unknown male.

146. On April 24, 2007, an individual identified as Uriel Verrueta, aka: Pelon, purchased 22.68 kilograms of marijuana from Danny Tarin. Also on that same date, Tarin contacted an unknown male and requested 2 kilograms of cocaine. Lastly, on that same date, an unknown male asked Tarin to sell him 136.08 kilograms of marijuana.

147. On April 26, 2007, Jose Martin Garcia and Danny Tarin discussed the sale/purchase of 1.5 kilograms of cocaine. Additionally, Tarin and Raul Nevarez discussed purchasing 1 kilogram of cocaine from Uriel Verrueta.

148. On April 27, 2007, Tarin discussed the sale/purchase of 1 kilogram of cocaine with an unidentified subject. Tarin also discussed the sale/purchase of 22.68 kilograms of marijuana with another subject.

149. On May 1, 2007, Tarin discussed the sale/purchase of 45.36 kilograms of marijuana with an unidentified subject.

150. On May 5, 2007, Jose Martin Garcia asked Danny Tarin to sell him (Garcia) 142 grams of cocaine for $1,800.

151. On May 7, 2007, an individual identified as Sergio Lujan gave Tarin 3 kilograms of cocaine. Tarin sold 1 kilogram of cocaine (given to Tarin by Lujan) to a CS for $14,000.

152. On May 8, 2007, Danny Tarin discussed the sale/purchase of 3 kilograms of cocaine with an unidentified subject. On May 14, 2007, Tarin and Jose Martin Garcia discussed the sale/purchase of 4 kilograms of cocaine. On May 15, 2007, Tarin discussed the sale/purchase of 1 kilogram of cocaine with an unidentified subject. On May 25, 2007, Tarin discussed the sale/purchase of 1 kilogram of cocaine with an unidentified subject. On May 28, 2007, Tarin discussed the sale/purchase of 1.5 kilograms of cocaine with an unidentified subject. On May 29, 2007, Tarin discussed the sale/purchase of 45.36 kilograms of marijuana with an unidentified subject, and on May 30, 2007, Tarin discussed the sale/purchase of 2 kilograms of cocaine with an unidentified subject.

153. On June 30, 2007, a CS advised that Eugene Mona had advised him that Gustavo Gallardo had been arrested for transporting 100 kilograms of cocaine.

154.  On July 6, 2007, a CS purchased .5 kilograms of cocaine from Danny Tarin for $8,000.

155.  On July 16, 2007, Gustavo Gallardo was interviewed by FBI agents reference his June 30, 2007, arrest.  Gallardo reported that Eduardo Ravelo worked for an individual identified as Ruben Esquejeda and an individual identified as "La Gata," both who were operatives for the VCDTO. Gallardo reported that an individual identified as "Mendez" contacted Gallardo regarding the transportation of 100 kilograms of cocaine. Gallardo further reported that Ravelo was the controller of the drugs for the BA and was the contact person for the distribution of drugs.

156.  On July 25, 2007, a CS purchased 1 kilograms of cocaine for $16,000 from Danny Tarin.

157.  On October 23, 2007, Gerardo Hernandez reported that Robert Duran worked for the VCFDTO distributing heroin.

158.  On February 6, 2008, Alberto Silvas, tn: Alberto Granados-Silvas, was arrested for Conspiracy to Possess With Intent to Distribute a Quantity of Mixture or Substance Containing a Detectable Amount of Heroin (44.6 grams). According to investigative reports, on July 28, 2004, a CS contacted Granados-Silvas regarding the purchase of heroin. The investigation revealed that the CS purchased 22.3 grams of heroin from Granados-Silvas on two occasions for $1,000, each. (Refer to paragraph 115)

159.  On March 6, 2008, Ronnie Rojas, tn: Ronnie Armando Rojas, aka: Shooter, was arrested for Possession With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (24 grams).  According to investigative reports, on September 25, 2004, a CS purchased 24 grams of heroin from Rojas for $800, at the Bad Boys Ink Tattoo Shop located in El Paso. (Refer to paragraph 123)

160.    On March 10, 2008, Jose Martin Garcia was interviewed by FBI agents. Garcia reported he recalled BA member Gerardo Hernandez seeking someone to transport a load of heroin for him. Hernandez recruited a "stripper" identified as "Eve" to transport the load of heroin to New York. Garcia advised that Eve transported a total of 2 kilograms of heroin to New York on behalf of Hernandez. During this period, Garcia also used a female identified as Vanessa LNU to transport another 2 kilograms of heroin to New York. Garcia further stated that Hernandez obtained United States official passports for specific individuals who then traveled to Colombia to purchase narcotics to smuggle into the United States. Moreover, Garcia reported that on a separate occasion, Hernandez used a female identified as Monica Montano to transport 2 kilograms of heroin to New York.

161.    On April 10, 2008, Robert Angel Cardona, tn: Roberto Angel Cardona, was arrested for Possession With Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin (28 grams). According to investigative reports, on April 23, 2004, a CS gave Cardona $900 to purchase 28 grams of cocaine. (Refer to paragraph 108)

162.    On June 3, 2008, Roberto Duran was interviewed referenced his participation in the BA criminal enterprise. Duran reported that from August 2005 until November 2007, he delivered approximately 30 kilograms of heroin to New York City or New Jersey on behalf of Jose Martin Garcia. Duran reported he was given money in advance to cover traveling expenses. Duran further reported that the heroin was usually transported into the United States by either Garcia or his wife, Christie Garcia.

163.    Duran reported that in March 22, 2007, he was detained at the Greyhound Bus Station by law enforcement officers and that the law enforcement officers seized $20,000 from Duran. Duran reported he was transporting the money back to Jose Martin Garcia from New York. Duran reported that prior to working for Garcia, Garcia paid Gerardo Hernandez $1,000 to $1,500 for transporting loads of heroin to New York. Duran further stated that Garcia's wife, Christie Garcia, was the

individual who made the transportation arrangements. Duran advised that Christie Garcia would obtain the phones used to communicate while transporting the drug loads due to the fact that she worked at a telephone company. Christie Garcia also made the hotel, airline, and bus reservations and researched Greyhound bus routes on the internet to obtain the best way of travel to avoid law enforcement detection.

164. On July 7, 2008, David Uzeta, tn: David Javier Uzeta, aka: Guerro, was arrested and charged for Possession With Intent to Distribute a Quantity of Cocaine (54.7 grams). According to investigative reports, on September 11, 2003, a CS purchased 27.2 grams of cocaine for $540 and on September 18, 2003, the CS purchased another 27.5 grams of cocaine for $560.

165. On August 20, 2008, Juan Valles, was arrested and charged for Possession With Intent to Distribute a Quantity of Cocaine (57 grams). According to investigative reports, on June 23, 2004, a CS purchased 28 grams of cocaine from Mike Flores, for $400 which was delivered by Valles, and on July 1, 2004, Valles again delivered 29 grams of cocaine to a CS on behalf of Flores for $400. (Refer to paragraphs 113 and 114)

166. On September 9, 2008, Samuel Alejandro Frausto, was arrested for Possession With Intent to Distribute a Quantity of Cocaine (83 grams), Felon in Possession of a Firearm, and Felon in Possession of Ammunition. According to investigative reports, on March 17, 2008, a CS traveled to Frausto's residence and purchased 83 grams of cocaine for $560. The CS reported that Frausto and BA member Miguel Angel Esqueda usually obtained the cocaine from Eduardo Ravelo. The CS further reported he negotiated with Frausto for the purchase of a 9mm pistol, with armor piercing ammunition.

167. Based on the FBI investigation, Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Eduardo Ravelo, Miguel Angel Esqueda, Gustavo Gallardo, Said Francisco Herrera, Eugene Mona, Jose Martin Garcia, Robert Duran, and Johnny Michelleti are held

accountable for 67.1 kilograms of heroin, 258 kilograms of cocaine, and 1,075.64 kilograms of marijuana, which were narcotics that were either seized, transported, distributed, or purchased during the course of the RICO conspiracy.

168.  Danny Tarin is held accountable for 33.67 kilograms of cocaine and 430.92 kilograms of marijuana which he directly participated in transporting, distributing, and selling during the course of the RICO conspiracy.

**Money Laundering**

169.  The FBI investigation revealed that the collection of "cuota" or "taxes" that were collected by drug-traffickers allowed to sell drugs on BA turf, were pooled together by high ranking BA members and converted into money orders in various denominations, with the higher denominations going to the highest ranking members in prison. Out of the $960,000 collected in "cuota" or "taxes," $56,192 was laundered into the commissary accounts of Carlos Perea, Benjamin Alvarez, Manuel Cardoza, and another unindicted co-conspirator (captain).

170.  The BA enterprise utilized the United States Postal Service to send money orders and to also send/receive letter communications between BA members who were in prison and those who were in the "free world." The letter writer would use coded references to discuss BA enterprise business. BA members utilized an individual as a conduit to receive or send letters from another BA member or associate. These conduits were referred to as "bridges." The conduits would often use fictitious names and addresses to send and receive letters and money orders to BA members who were incarcerated. The use of these conduits prevented law enforcement from finding out the identities or source of the true correspondents and the final destination of the letters.

171.   BA members additionally utilized telephone communications to discuss BA enterprise affairs.  BA members who were incarcerated coordinate telephone calls with BA members and associates to give out orders.

172.   During the course of the investigation, FBI agents learned that BA associate Sandy Valles New, tn: Sandy New Valles (hereinafter referred to as Valles) was familiar with the BA's orders involving drug distribution and the collection of the "cuota" or "taxes."  The investigation revealed that Valles had subscribed to post office box; P.O. Box 580, El Paso, Texas 79944, and utilize the post office box and 306 E. Paisano, 1445, El Paso, Texas,  to send BA letters and money orders (monies derived from the collection of "cuota" or "taxes") to high ranking BA members.

173.   Valles also received telephone calls from Carlos Perea and Benjamin Alvarez, incarcerated BA captains, who would instruct Valles to accept money from the BA leadership and to arrange the mailing of the money to BA members who were in custody.   Moreover, Valles spoke to Perea and Alvarez reference a prior RICO case for which Alvarez and Perea had been previously convicted under (EP-01-CR-1437DB). Valles provided documents relating to this prior RICO case to other members of the BA, so that the BA members could investigate possible cooperators.

174.   Valles acknowledged being aware that Perea and Alvarez were the heads of the BA criminal enterprise and ordered BA members, to include Valles, to send money orders, to their accounts on multiple occasions. Valles stated she knew the BA was involved in implementing "the scheme" (collection of "cuota" or "taxes") and facilitated directly and indirectly in "the scheme." Furthermore, Valles admitted she knew her addresses were being used as a bridge by incarcerated members of the BA, in order for them to communicate with other BA members to conduct the affairs of the BA criminal enterprise.

175.  Below is in chronological order statements made by CS's, conversations between BA members and associates regarding the mailings of money orders to incarcerated gang members, and pertinent conversation conducted between BA members and associates to discuss BA business matters.

176.  On April 26, 2003, Valles and captain Benjamin Alvarez spoke on the telephone to discuss BA related activities. Valles read a letter to Alvarez detailing current problems in Ciudad Juarez, Chihuahua, Mexico. According to Valles, the leader of the Ciudad Juarez BA (Juanillo) was seeking the advise of Alvarez. Valles specifically mentioned a dispute between Juanillo and a female who said she had contacted Alvarez. Alvarez advised he did not know who that person was, and that he would send a letter to Juanillo through Valles. During that same conversation, Valles agreed to serve as a bridge/conduit for BA communications between Alvarez and the BA members in El Paso, Texas, and Ciudad Juarez.

177.  On June 24, 2003, a CS reported that David Meraz wanted for Gustavo Gallardo to send money orders to the commissary accounts of at least 24 incarcerated BA members.

178.  On June 25, 2003, a letter listing the sender as A. Chuck Alvarez, P.O. Box 580, El Paso, Texas, 79944, (P.O. Box listed under Valles' name) was sent to Alvarez. The letter described a conflict between the letter writer and two other subjects. The letter also referenced a possible conflict between "Roofer," an alias used by Benjamin Alvarez and the same two subjects. According to the letter writer, this problem was brought to the attention of "MC Hammer," an alias for Manuel Cardoza.

179.  On July 1, 2003, a CS reported that on June 26, 2003, Gustavo Gallardo sent $100 to Manuel Cardoza and $100 to Manuel Torres.

180.    On July 5, 2003, Valles talked to Benjamin Alvarez to report BA related activities. Valles asked Alvarez if he (Alvarez) had received a letter from her "brother-in law" Chuck Alvarez (an alias for Carlos Perea). Alvarez advised that he had not received the letter. Alvarez then asked Valles if she had received his May 2003 letter, addressing their prior telephone call. Alvarez advised he requested the address of another person in El Paso because it had been over five months since anything had been sent to him. Valles advised she could not recall the content of the "Chuck Alvarez" letter, but that she maintained a copy. Valles mentioned that her brother-in law mentioned something about "Chicho" (David Meraz). Alvarez then advised that "Chicho" was the person Alvarez was trying to contact.

181.    On December 6, 2003, Valles talked to Benjamin Alvarez. In that conversation, Valles asked Alvarez if he (Alvarez) had received the money Valles had sent. Alvarez responded he received the money in November, with Valles' P.O. Box address. Valles confirmed that the money was from the new leadership, Eduardo Ravelo. Valles additionally informed Alvarez that Ramon Armendariz' case was overturned and advised Alvarez she would inquire who the attorney was to determine if anything else could be done. (*The case Valles was referring to was a 2001 BA RICO case in which Alvarez and Carlos Perea pled guilty. The indictment set out an extortion, money laundering scheme involving the collection of the "cuota" for distribution to imprisoned BA members.*) Valles further informed Alvarez she was working for a private attorney and lost her previous job (Federal Public Defenders office) because of the "family." Valles told Alvarez that "they wanted to talk to me about my gang affiliation." Valles advised that she told them she did not know what they were talking about.

182.    On February 17, 2004, a CS reported that the BA organization sent $2,200 to commissary accounts of incarcerated BA members.

183.    On May 4, 2004, a CS reported that Gustavo Gallardo was in control of all of the collection of "cuota" or "taxes" during David Meraz incarceration. Once Gallardo

collected the monies, he purchased money orders and would send the money to incarcerated BA members.

184. On June 15, 2004, unindicted co-conspirator Shannon Ramirez sent a letter to a CS. The letter identified various BA members who were "X d-out." The letter further identified various BA members who needed to receive money in their respective commissary accounts.

185 . On July 28, 2004, Carlos Perea talked to Valles. Perea informed Valles  he had arrived at the BOP in Pollack, Louisiana, and was with other BA's including "Lonely" (Ricardo Marquez).  Perea directed Valles to send his address to "Eddie" Eduardo Ravelo and to make sure Ravelo send him money. Perea further inquired about "Road Dog," later identified as Benjamin Alvarez. Valles informed Perea that she also had tried to contact Ravelo to ask him for money to send Alvarez.

186. On July 29, 2004, Carlos Perea talked to Valles.  Perea instructed Valles to contact various members of the BA criminal enterprise to confirm Benjamin Alvarez address. Valles advised that she confirmed the address and that she also advised BA members of Perea's new address.  Perea inquired about money that was to be sent to him by members of the BA. Valles confirmed that "they already have the money orders" and that she (Valles) would make sure the person responsible for sending the money would send it.  Other conversations between Perea and Valles revealed various attempts by Valles to arrange for Perea to talk to other members of the BA criminal enterprise.

187. On July 30, 2004, Carlos Perea talked to Valles. Valles advised that she gave Perea' address to BA members, so that they could send Perea money.

188. On July 31, 2004, Carlos Perea talked to Valles. Perea and Valles talked about the prior RICO indictment having been redacted to conceal the identity of those BA members who cooperated. Valles advised she was going to make documents

(indictment/discovery material) available to Eduardo Ravelo. Valles additionally told Perea she had met with Ravelo and passed on Perea's information to Ravelo, and that Ravelo was going to send Perea money.

189. On August 2, 2004, Carlos Perea talked to Sandy New Valles. Perea informed Valles he had received the $100 Valles had sent. Perea further advised Valles that a BA member named "Pelon" was going to be transferred to Marion, a penal institution in Illinois. Perea asked Valles to advise "Pelon" to take it easy there, because of the problems with gang members. According to Perea, he had obtained this information from a law enforcement officer in charge of gangs.

190. During that same conversation, Valles asked Perea if he knew why they were all being charged with RICO, to which Perea responded to Valles that she (Valles) knew, since she had reviewed the indictment. Valles reported Eduardo Ravelo had been inquiring because she (Valles) told Ravelo about the money orders sent into the prison facilities. Further, Valles advised she (Valles) and Ravelo talked about the current RICO indictment and that she (Valles) was going to provide Ravelo with the indictment and other discovery. Perea told Valles that many of the names in the indictment had been redacted to protect the cooperators that were still active in the BA. Valles acknowledged and advised that Ravelo believed a person named Martinez was a cooperator. Valles further advised Perea that Manny Cardoza had been transferred.

191. On August 3, 2004, Carlos Perea talked to Valles. Valles confirmed she had been in contact with various BA members through letters as well as telephonically, and had passed on Perea's letters accordingly. Valles confirmed that she sent $100 to Perea.

192. On August 4, 2004, Carlos Perea talked to Valles. Valles advised she wrote to several BA members including Benjamin Alvarez.

193. On August 8, 2004, Carlos Perea talked to Valles. Valles and Perea discussed their attempts to find out where Benjamin Alvarez was located. Perea told Valles to make sure "Ardilla" was at her (Valles') home the following day so that Perea and "Ardilla" could talk over the telephone.

194. In a later conversation on August 8, 2004, Perea asked Valles if she had received money from Eduardo Ravelo. Valles informed Perea she had tried to contact Ravelo. Valles informed Perea that she received two letters from Ravelo, one addressed to her and the other to Perea. Valles additionally told Perea that she did not receive the legal papers they had previously discussed.

195. On August 12, 2004, Carlos Perea talked to Valles. Perea asked Valles to call a 5person identified as "O" (Omar) on his behalf and to instruct "O" to send him (Perea) money, via Western Union. Valles told Perea "they brought me $200."

196. Later that day, on August 12, 2004, Perea talked to Valles. Perea directed Valles to send the money ($170) to Perea because Benjamin Alvarez was in need of money for books. Valles confirmed she would send Alvarez a list of books and money to purchase books. Valles and Perea further discussed several letters that had been mailed and how they were to be directed. Valles advised Perea she had to send Perea a newspaper clipping Perea had previously requested. Perea additionally advised Valles not to inform Eduardo Ravelo that Valles would send Perea money so that Ravelo would continue to send Perea money.

197. On August 24, 2004, Carlos Perea talked to Valles. Valles advised Perea that she had sent several letters to Perea. Perea advised that the letters were taking a long time to reach him because of the inspection by law enforcement officials. Valles confirmed that the letters she sent to Benjamin Alvarez were also inspected and decoded by law enforcement. Valles advised she was able to communicate with "Pelon" who advised he was going to be transferred to Marion and that he (Pelon) should "put a lot of ice in his water." Valles advised she was big on revolutions, but

that she was 100% non-violent and "against stuff within the familia." Valles then asked Perea if her husband could be precluded from having to engage in violent activities.

198.    On September 16, 2004, Miguel Angel Esqueda purchased four Travelers Express money orders. The face value for the money orders was $100 each. Esqueda sent these money orders to high-ranking incarcerated BA members.

199.    On October 6, 2004, Valles wrote a letter to Benjamin Alvarez advising Alvarez that she had no success in contacting "the table guy," an alias for Eduardo Ravelo.

200.    On October 8, 2004, Miguel Angel Esqueda purchased four Travelers Express money order. The face value for the money orders was $100 each. Esqueda sent these money orders to Carlos Perea, Benjamin Alvarez, Manuel Cardoza and Manuel Torres.

201.    On October 18, 2004, a letter written by Benjamin Alvarez to Sandy New Valles was intercepted. Alvarez thanked Valles for her previous communications and asked if Valles could communicate with another subject. Alvarez advised Valles she had to advise his brother-in-law about the new centralized inmate account system.

202.    On that same date, October 18, 2004, Miguel Angel Esqueda turned over four Travelers Express money order receipts to a CS. The face value for three of the money orders was $50 each and one for $100.

203.    On November 23, 2004, a CS reported that Miguel Angel Esqueda purchased four money orders in the amount of $50. The money orders were sent to the commissary accounts of incarcerated Carlos Perea, Benjamin Alvarez, Manuel Cardoza and Manuel Torres.

204. On November 23, 2004, Miguel Angel Esqueda turned over four Travelers Express money order receipts to a CS. The face value for three of the money orders was $100 and the other one for $50.

205. On November 24, 2004, Miguel Angel Esqueda turned over seven money order receipts to a CS. The face value for five of the money orders were $50 each and the remaining two money orders face value was $30 each.

206. On December 1, 2004, a CS reported that Miguel Angel Esqueda purchased seven money orders, five in the amount of $50 and two in the amount of $30, with proceeds collected from "cuota" or "taxes." The CS reported that six of the money orders were sent by Esqueda to the commissary accounts of incarcerated BA members.

207. On December 17, 2004, Miguel Angel Esqueda turned over eleven money order receipts to a CS. The face value for four of the money orders was $100 each, with the remaining seven money orders valued at $50 each.

208. On December 23, 2004, a CS reported that Miguel Angel Esqueda purchased eleven money orders, four in the amount of $100 and seven in the amount of $50. The money orders were sent to the commissary accounts of incarcerated BA members Carlos Perea, Benjamin Alvarez, Manuel Cardoza and Manuel Torres.

209. On January 7, 2005, Miguel Angel Esqueda turned over eight money order receipts to a CS. The face value for four of the money orders was $100 each, with the remaining four money orders valued at $50 each. The CS reported that the money orders were sent to Carlos Perea, Benjamin Alvarez, Manuel Cardoza and Manuel Torres.

210. On February 3, 2005, a CS reported that BA member Miguel Angel Esqueda purchased nine money orders in the amount of $50. The money orders were sent to the commissary accounts of incarcerated BA members.

211. On February 23, 2005, a CS reported that Miguel Angel Esqueda purchased eleven money orders in the amount of $50. The money orders were sent to the commissary accounts of incarcerated BA members.

212. On March 11, 2005, Miguel Angel Esqueda turned over nine money order receipts to a CS. The face value for four of the money orders was $100 each, with the remaining five money orders valued at $50 each.

213. On March 15, 2005, Miguel Angel Esqueda turned over twenty money order receipts to a CS. The face value for four of the money orders was $100 each, with the remaining sixteen money orders valued at $50 each.

214. On March 23, 2005, Miguel Angel Esqueda turned over seven money order receipts to CS2. The face value of the money orders was $50 each.

215. On April 26, 2005, Miguel Angel Esqueda turned over fourteen money order receipts. The face value for four of the money orders was $100 each, with the remaining ten money orders valued at $50 each. The money orders were sent to the commissary accounts of incarcerated BA members.

216. On May 10, 2005, Miguel Angel Esqueda turned over twelve money order receipts to a CS. The face value for the money orders was $50 each. The money orders were sent to the commissary accounts of incarcerated BA members.

217. On May 23, 2005, Miguel Angel Esqueda turned over twenty-six money order receipts to a CS. The face value for two of the money orders was $100 each, with the remaining twenty-four money orders valued at $50 each. According to the CS,

the money orders were sent by Esqueda to the commissary accounts of incarcerated BA members Carlos Perea, Benjamin Alvarez, Manuel Cardoza and Manuel Torres.

218.  On February 20, 2006, a CS reported that Manuel Cardoza, while incarcerated at the Texas Department of Corrections (TDC), contacted Eugene Mona and left a message asking Mona where was the money that he (Cardoza) had asked for. The CS indicated that Cardoza was referring to a letter that was sent to Mona from BA members, requesting money to be sent to 11 other BA members who were incarcerated. The CS reported that Mona subsequently sent the 11 BA members money.

219.  On March 23, 2006, a CS reported that one month earlier, Gustavo Gallardo gave Eugene Mona an envelope that contained $32,000. The CS reported that Gallardo and Mona conducted the majority of the BA's business for the criminal enterprise.

220.  From May 17, through May 20, 2006, Carlos Perea made a series of calls to Valles and two other subjects. Perea advised that he had sent a letter to "Polanco," Lujans's brother with a directive he wanted to retract. The letter was to arrive at Lujan's address as a bridge and was going to be forwarded to the BOP. Valles agreed to intercept the letter and destroy the letter under Perea's directive.

221.  On July 14, 2006, Carlos Perea telephoned Valles. Perea directed Valles to advise Ricardo Marquez, aka, Lonely, to send him (Perea) his money. Valles agreed to instruct Marquez to send the money. Perea further directed Valles to inform Eduardo Ravelo to turn on his telephone.

222.  On July 14, 2006, in a separate conversation, Perea contacted Marquez on the telephone. Perea asked about the money that was supposed to be mailed to him. Marquez advised Perea that "Sandy" (Valles) said she would send a $600 money

order to Perea. During this same call, Valles began to speak to Perea. Valles confirmed that she had sent a "Western Union," but that it had been returned.

223. On July 19, 2006, Carlos Perea talked to Valles. Valles advised she would send Perea $100 via Western Union. Perea advised he was supposed to get $250.

224. On July 26, 2006, Carlos Perea talked to Valles. Perea asked Valles if he had sent his ring. Valles advised she sent "Roofer," (Benjamin Alvarez) two things, and she would send a third later.

225. On July 28, 2006, Carlos Perea talked to Valles. Perea asked Valles if she had sent his ring. Valles confirmed and Perea asked Valles what name she used to send the ring. Valles advised she used his (Perea's) mothers name utilizing her (Valles) P.O. Box 580 address.

226. On August 30, 2006, Carlos Perea talked to Valles. Perea advised Valles that he had to send a letter to a BA member, but needed to talk to him first. Valles suggested that Perea send the letter to her (Valles). She would later turn over the letter to the BA member without opening.

227. On January 15, 2008, Benjamin Alvarez talked to Valles. Valles asked Alvarez if he was aware of a detainer against Alvarez. Valles explained that there was a new RICO indictment charging Carlos Perea and others, however, when Valles conducted research, she only found the old RICO indictment. Valles advised Alvarez she would keep Alvarez informed on who was charged in the new RICO.

228. On January 28, 2008, a letter written by Benjamin Alvarez to Valles was intercepted. Alvarez advised he was about to be transferred to an institution in El Paso pursuant to the warrant on the RICO case and would contact Valles upon his arrival.

229.    On January 31, 2008, a letter signed by Carlos Perea and addressed to Valles was intercepted.  Perea directed Valles to conduct research on the pending RICO case.

230.    On February 8, 2008, a letter written by Benjamin Alvarez and addressed to Valles was intercepted.  Alvarez directed Valles to let the BA members know that he would no longer be incarcerated in Colorado, but would be in El Paso and in need of money.

231.    According to the FBI investigation, beginning from April 2003 until January 9, 2008, BA members and associates of the BA deposited approximately $56,192 in form of money orders ranging in amounts of $100 to $600 into the commissary accounts of Carlos Perea, Benjamin Alvarez, Manuel Cardoza, and an unindicted BA. Other indicted and un-indicted BA ranking members also received additional monies which were not calculated into the $56,192 figure. The money deposited into these accounts were derived from the collection of "cuota" or "taxes." The collection of "cuota or taxes collected throughout the RICO conspiracy ($960,000) represented profits collected from drug-traffickers selling narcotics on BA turf.  Receipts from the money orders purchased with the extorted drug proceeds were used to trace deposits made into the inmate accounts of BA members. BOP and TDCJ-ID records confirm that BA members in the respective prisons received money orders corresponding to the money order receipts obtained by agents. The money orders were mailed through the United States Postal Service to institutions in and outside of the state of Texas. The names listed on these money orders as payer or remittor were fictitious. It should further be noted that the TDCJ only allowed small deposits since inmates were only allowed to spend a certain amount.

232.    Based on available information, Carlos Perea, Benjamin Alvarez, Manuel Cardoza, Eduardo Ravelo, Miguel Angel Esqueda, Gustavo Gallardo, Eugene Mona, and Sandy New Valles are held accountable for a total of $56,192 they jointly laundered into the prison facilities to incarcerated BA members which were monies derived from the collection of "cuota" or "taxes" ($960,000). Again, the collection of "cuota"

or "taxes" were monies derived by drug-traffickers who were allowed to sell narcotics on BA turf. The narcotics attributed to the RICO conspiracy consists of 67.1 kilograms of heroin, 258 kilograms of cocaine, and 1,075.64 kilograms of marijuana. As such, Valles is additionally held accountable for Extortion and Conspiracy to Commit Extortion or Violence and Narcotics Trafficking and Conspiracy to Commit Narcotics Trafficking. The rest of the above-mentioned have also been held accountable with Extortion and Conspiracy to Commit Extortion or Violence and Narcotics Trafficking and Conspiracy to Commit Narcotics Trafficking.

### Roles in the Offense

233.   Based on the FBI investigation, the following roles were established:

Carlos Perea, Manuel Cardoza, Benjamin Alvarez were BA captains who directed numerous members of the BA criminal enterprise in carrying out unlawful and other activities to include extortion, retaliation, robbery, assault, murder, money laundering and narcotics trafficking, in furtherance of the conduct of the BA's enterprise's affairs. As such, they are consider organizers/leaders and a four-level increase is warranted.

Eduardo Ravelo was head of the BA in the Ciudad Juarez, Chihuahua, Mexico area. Ravelo, under the direction and authority of the BA captains, assisted the incarcerated captains in carrying out unlawful and other activities, to include extortion, retaliation, murder, money laundering and narcotics trafficking. Ravelo additionally recruited and directed various individuals to transport narcotics into the United States which Ravelo obtained from the VCFDTO in Ciudad Juarez. Ravelo was considered the head of the BA in Ciudad Juarez and was considered the go-to person to obtain narcotics. As such, Ravelo is considered a manager/supervisor and a three-level increase is warranted.

Miguel Angel Esqueda, Gustavo Gallardo, Eugene Mona, and Said Francisco Herrera, under the direction of BA captains, where designated to supervise the drug-trafficking activities and the collection of "cuota" or "taxes" in the El Paso, Texas, area. As a result, they all would either recruit individuals to distribute or transport narcotics and/or would direct other individuals to conduct other BA criminal affairs. As such, they all are considered managers in this RICO conspiracy and a two-level increase is warranted.

Johnny Michelletti, Adam Munoz, Eric Saucedo, **Arturo Enriquez**, Robert Duran, Jose Martin Garcia, and Sandy New Valles, under the direction of the BA captains, assisted in carrying out unlawful and other activities to include extortion, murder, money laundering and narcotics trafficking. Although some of the above-mentioned played multiple roles in this conspiracy to include recruiting individuals to transport drugs, in comparison to others named in the indictment, their participation in the RICO conspiracy did not involve extensive supervising, leading, or managing. A such, their role in the offense is neither aggravating nor mitigating and an adjustment for role is not warranted.

As for Danny Tarin, although he distributed and sold narcotics on multiple occasions, and may have directed/recruited others to participate in drug-trafficking ventures, his role in this RICO conspiracy was limited to paying "cuota" or "taxes" to the BA criminal enterprise for protection. As such, Tarin is considered a minor participant and a two-level decrease is warranted.

234.    On January 9, 2008, an eleven-count indictment was filed by the Assistant United States Attorneys Office against Carlos Perea, Manuel Cardoza, Benjamin Alvarez, Eduardo Ravelo, Miguel Angel Esqueda, Gustavo Gallardo, Eugene Mona, Jose Martin Garcia, Roberto Duran, Danny Tarin, Johnny Michelletti, tn: John Carl Michelletti III, Said Francisco Herrera, Adam Munoz, Eric Saucedo, **Arturo Enriquez**, and Sandy Valles New, tn: Sandy New Valles, and a bench warrant was issued.

235.    On January 11, 2008, Eric Saucedo, Eugene Mona, Jose Martin Garcia, Danny Tarin, Said Francisco Herrera, and Johnny Michelletti, were arrested on the bench warrant.

236.    On January 14, 2008, **Arturo Enriquez** and Gustavo Gallardo were arrested on the bench warrant.

237.    On January 24, 2008, Adam Munoz and Robert Duran, were released to federal custody on a Writ of Habeas Corpus Ad Prosequendum from State of Texas custody.

238.    On February 6, 2008, Sandy New Valles was arrested on the bench warrant.

239.    On February 13, 2008, Carlos Perea, Benjamin Alvarez, and Manuel Cardoza, were arrested on the bench warrant.

240.    On April 18, 2008, Miguel Angel Esqueda was arrested on the bench warrant.

241.    Enriquez declined to discuss the offense conduct per the advise of defense counsel.

**Victim Impact**

242.    According to the Law Enforcement Committee/Executive Office of the U.S. Attorney, located in Washington D.C., there are no victims in this case. Information obtained revealed that the victim's families in this case are not to be compensated since the victims were members of a criminal enterprise that engaged in criminal activities. Therefore, restitution is not an option.

## Adjustment for Obstruction of Justice

243.  The U.S. Probation Office has no information to suggest Enriquez obstructed or impeded justice.

## Adjustment for Acceptance of Responsibility

244.  Enriquez did not admit knowledge as to his involvement in the instant offense and further, Enriquez put the Government to its burden of proof at trial by denying the essential factual elements of guilt. As such, an adjustment for acceptance of responsibility is not warranted. U.S.S.G. § 3E1.1(a) and (b).

## Offense Level Computations

245.  The Guidelines Manual effective November 1, 2008 has been used in this case. In accordance with U.S.S.G. § 1B1.3, Relevant Conduct, Munoz, Saucedo and Enriquez, are all held accountable for the murder of Jose Luis Oviedo committed on December 6, 2006. Munoz, Saucedo, and Enriquez were familiar with the collection of "cuota" or "taxes" ($960,000 collected through the course of the RICO conspiracy) and they all admitted they were familiar with the BA's practice of intimidation and threats of bodily injury when a drug-trafficker is reluctant or unable to pay. Additionally, since the collection of the "cuota" or "taxes" (paid by drug-traffickers) were subsequently converted into money orders and sent to incarcerated high ranking BA members, they are also held accountable $56,912 laundered into the prison facilities and the distribution, transportation, or sale of 67.1 kilograms of heroin, 258 kilograms of cocaine, and 1,075.64 kilograms of marijuana.

Pursuant to U.S.S.G. § 1B1.3(a)(1)(A) and (B), the base offense level, specific offense characteristics, cross references in Chapter Two, and adjustments in Chapter Three, shall be determined on the basis of all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully

caused by the Defendant. In the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the Defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omission of others in furtherance of the jointly undertaken activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense shall be considered in determining the offense level.

Pursuant to U.S.S.G. § 1B1.2(d), a conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit. Further, Commentary Application Note 4, states that particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applies with respect to an object offense alleged in the conspiracy count if the court, were it sitting as trier of fact, would convict the defendant of conspiring to commit that object offense. Note, however, if the object offenses specified in the conspiracy count would be grouped together under § 3D1.2(d)(e.g., a conspiracy to steal three government checks), it is not necessary to engage in the foregoing analysis because § 1B1.3(a)(2) governs consideration of the defendant's conduct.

Count 3: Conspiracy to Interfere With Commerce by Threats or Violence

246.    **Base Offense Level:** The U.S. Sentencing Commission guideline for    __43__ violation of 18 U.S.C. § 1951(a) is found in U.S.S.G. § 2B3.2(a), which establishes a base offense level of 18. However, U.S.S.G. § 2B3.2(c)(1) states that if a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder).

In this case, on December 6, 2006, Enriquez accompanied Munoz when Munoz killed Jose Luis Oviedo for failure to pay a "cuota" or "taxes" to the BA. As such, the guideline for this violation is found in U.S.S.G. § 2A1.1 and establishes a base offense level of 43.

247.    **Specific Offense Characteristic:** None                                    <u>0</u>

248.    **Victim-Related Adjustments:** None                                         <u>0</u>

249.    **Adjustments for Role in the Offense:** The investigation reveals Enriquez    <u>0</u>
assisted in carrying out unlawful and other activities, specifically in murder and the collection of "cuota" or "taxes" which were monies obtained from drug-traffickers who sold narcotics on BA turf. Although the investigation revealed Enriquez acted under the direction of the high ranking BA members, Enriquez, through his own admission, admitted he accompanied Munoz and Saucedo in the collection of "cuota" or "taxes" from Oviedo. Enriquez' participation was vital to the success of the BA criminal enterprise and as such, his role is neither aggravating nor mitigating and an adjustment for role is not warranted. U.S.S.G. §§ 3B1.1 and 3B1.2.

250.    **Adjustment for Obstruction of Justice:** None                              <u>0</u>

251.    **Adjusted Offense Level (Subtotal):**                                       <u>43</u>

252.    **Adjustment for Acceptance of Responsibility:** Enriquez did not admit      <u>0</u>
knowledge as to his involvement in the instant offense and further, Enriquez put the Government to its burden of proof at trial by denying the essential factual elements of guilt. As such, an adjustment for acceptance of responsibility is not warranted. U.S.S.G. § 3E1.1(a) and (b).

253.    **Total Offense Level:**                                                   **43**

## PART B.  DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

254.    None

### Adult Criminal Conviction(s)

| | Date of Arrest | Conviction/ Court | Date Sentence Imposed/Disposition | Guideline/ Score | |
|---|---|---|---|---|---|
| 255. | 06-24-98 (age 20) | Assault; County Criminal Court at Law No. 3; Harris County, Texas; Cause No. 9825468. | 10-01-98: Pled guilty. Fined $100. | 4A1.1(c) | 1 |

Enriquez was represented by counsel. According to information obtained from the Harris County District Attorney's Intake Management records, on June 13, 1998, officers were dispatched in reference to an assault. Upon arrival, officers met with Enriquez' girlfriend, the complainant, who reported that she was with her cousin at Enriquez' residence when she attempted to leave with her cousin. The complainant informed she tried to get away by biting him but she was unable to do so. At this time, the complainant indicated Enriquez reportedly kicked her left leg causing her pain and injury. The complainant advised Enriquez then took her belongings out of the vehicle and a struggle ensued. The complainant indicated Enriquez kicked her two or three times in the buttocks with his foot.

| | Date of Arrest | Conviction/ Court | Date Sentence Imposed/Disposition | Guideline/ Score | |
|---|---|---|---|---|---|
| 256. | 10-03-98 (age 21) | Failure to Stop and Give Information; County Criminal Court at Law No. 7; Harris County, Texas; Cause No. 9839951. | 02-16-99: Pled guilty. Sentenced to 60 days custody, to run concurrent with Cause Nos. 805300 and 9906511. | 4A1.2(c)(1) | 1 |

Enriquez was represented by counsel. According to investigative reports prepared by the Houston Police Department, officers were dispatched to the 700 block of Lathrop in Houston, Texas in reference to a minor accident. Upon arrival, officers met the complainant who reported that Enriquez had fled on foot. Shortly thereafter, officers located Enriquez and brought him back to the scene where Enriquez was identified by the complainant as being the driver of the striking vehicle.

| | | | | | |
|---|---|---|---|---|---|
| 257. | 02-12-99 (age 21) | Possession of Cocaine Less Than One Gram (Class A Misdemeanor); 182nd Judicial District Court; Harris County, Texas; Cause No. 805300. | 02-15-99: Pled guilty. Sentenced to 10 months custody, to run concurrent with Cause Nos. 9906511 and 9839951. | 4A1.1(b) | 2 |

Name used:
Francisco Enriquez.

Enriquez was represented by counsel. According to investigative reports prepared by the Harris County Police Department, officers while on routine patrol observed a vehicle with an expired inspection sticker and no seat belt; therefore, the officer initiated a traffic stop. The officer met with Enriquez who reported he had no driver's license but that his driver's license was at home. Enriquez identified himself as Francisco Enriquez with a date of birth of March 21, 1976. Enriquez was accompanied by a friend who reported that Enriquez' name was Arturo Enriquez. Enriquez then admitted that his name was Arturo Enriquez with a date of birth July 31, 1977. Further investigation revealed Enriquez had a warrant for failing to stop and give information. Upon further investigation, officers noticed Enriquez' knife on his key chain which resulted in the blade having cocaine residue.

| | | | | | |
|---|---|---|---|---|---|
| 258. | 02-12-99 (age 21) | Failure to Identify Oneself to a Police Officer; County Criminal Court at Law No. 7; Harris County, Texas; Cause No. 9906511. | 02-16-99: Pled guilty. Sentenced to 60 days custody, to run concurrent with Cause Nos. 805300 and 9839951. | 4A1.1(b) 4A1.2(a)(2) | 2 |

Enriquez was represented by counsel. Refer to paragraph number 257 for the arrest details.

| | | | | | |
|---|---|---|---|---|---|
| 259. | 09-12-00 (age 23) | Driving While License Suspended; | 01-08-01: Deferred adjudication. | 4A1.2(c)(1) | 0 |

| | | Court at Law No. 2; El Paso, Texas; Cause No. 20000C15478. | Sentenced to 6 months probation. | | |

Enriquez appeared pro se. According to investigative reports prepared by the El Paso Police Department, an officer while on routine patrol observed a vehicle on Interstate-10 East with an excessive amount of smoke coming from the muffler area; therefore, the officer initiated a traffic stop. The officer met with Enriquez and cited him for excessive smoke and failure to maintain financial responsibility. The officer conducted a records check which results revealed that Enriquez had a suspended license. Enriquez was subsequently arrested.

| 260. | 12-28-01 (age 24) | Ct. 2: Aggravated Assault With Deadly Weapon; 41st District Court; El Paso, Texas; Cause No. 20020D00697. | 04-12-02: Deferred Adjudication. Sentenced to 10 years probation. | 4A1.1(a) | 3 |
| | | | 09-11-04: First Motion to Adjudicate Guilt filed. | | |
| | | | 09-13-04: Second Motion to Adjudicate Guilt filed. | | |
| | | | 10-18-04: Probation revoked. Sentenced to 2 years custody, to run concurrent with 2004D03926. | | |
| | | | 10-24-04: Motion to Dismiss Motion to Revoke Probation and Capias filed. | | |
| | | | 02-17-06: Paroled and discharged. | | |

Enriquez was represented by counsel. According to investigative reports prepared by the El Paso Police Department, on December 25, 2001, an officer while working off duty observed Enriquez entering a vehicle while holding a baseball bat and a person on the ground. The officer attempted to follow Enriquez but lost him several blocks away. The officer met with complainant-2 who reported that Enriquez proceeded to her home enraged

at the fact that the complainant-1 had not gone home. Complainant-2 indicated that after a heated argument Enriquez proceeded to strike complainant-1 with a baseball bat and that she attempted to assist complainant-1. Complainant-2 advised Enriquez swung his baseball bat and struck her on the upper left arm. After the assault, Enriquez proceeded to walk up to complainant-1's vehicle and began to break the glass with the baseball bat. Count 1: Aggravated Assault was subsequently dismissed.

| | | | | | |
|---|---|---|---|---|---|
| 261. | 08-07-04 (age 27) | Possession of a Control Substance in Penalty Group 1<1G- Cocaine (State Jail Felony); 41st District Court; El Paso, Texas; Cause No. 20040D03926. | 10-18-04: Pled guilty. Sentenced to 6 months custody, to run concurrent with 20020D00697.<br><br>02-17-06: Paroled and discharged. | 4A1.1(b) | **2** |

Enriquez was represented by counsel. According to investigative reports prepared by the El Paso Police Department, officers while on routine patrol at an area known for prostitution and high narcotic use observed a vehicle with no light to the rear license plate; therefore, the officers initiated a traffic stop. The officers met with the passenger and Enriquez who appeared to be intoxicated. The officers requested that Enriquez provide a valid driver's license and proof of financial responsibility which he was unable to provide. A routine warrants check revealed that the passenger was wanted for an outstanding criminal warrant. As the passenger stepped out of the vehicle the officer observed a small plastic baggie of marijuana sticking out from out from in between the middle of the front driver's seat. The officer also observed a can of beer on the passenger's side floor board and one quart bottled beer on the right rear passenger floorboard. As the officer opened the right rear passenger door to retrieve the bottle, he observed a folded up piece of paper which officer believed to be a "diamondfold" laying on a baby seat. The "diamondfold" tested positive for cocaine and weighted .5 grams. As Enriquez realized that the officer had seen the item, he immediately reached for it; however, the officer grabbed it and Enriquez was arrested. The officer located another small piece of dried marijuana in the trunk of the vehicle. The marijuana located weighed a total of .24 ounces. A breathalizer test was administered which rendered .177% and .171% blood alcohol content.

| | | | | | |
|---|---|---|---|---|---|
| 262. | 08-07-04 (age 27) | Driving While Intoxicated; Court at Law No. 6; El Paso, Texas; Cause No. 20040C11494. | 10-19-04: Pled guilty. Sentenced to 60 days custody, to run concurrent with 20040D03926. | 4A1.1(b) | **2** |

02-17-06: Released
from custody.

Enriquez was represented by counsel. Refer to paragraph number 261 for arrest details.

| 263. | 02-23-07 (age 29) | Driving While License Invalid; Court at Law No. 2; El Paso, Texas; Cause No. 20060C13774. | 03-01-07: Pled guilty. Sentenced to 6 days custody. | 4A1.2(c)(1) | <u>0</u> |

Enriquez was represented by counsel. According to investigative reports prepared by the El Paso Police Department, on August 2, 2006, officers observed Enriquez and another individual facing each other and exchanging words. The officers observed both individuals standing outside a vehicle and when the officers were about to make contact with them, both of them entered the vehicle and began to drive away. The officers in fear of a domestic argument, conducted a traffic stop of the vehicle. The officer met with Enriquez and the front passenger and conducted a driver's license check. Investigation revealed that Enriquez' driver's license was suspended and revoked with denied renewal. The officers also discovered the passenger had a traffic warrant for her arrest. The officers arrested both individuals.

## Criminal History Computation

264. The total of the criminal history points is 13, which establishes a criminal history category of VI. U.S.S.G. Chapter Five, Part A.

## Other Criminal Conduct

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 265. | 02-27-02 (age 24) | Criminal Mischief; Court at Law No. 2; El Paso, Texas; | Police Department; El Paso, Texas. | 04-12-02: Dismissed. |

Cause No.
20020C03449.

Refer to paragraph number 260 for arrest details.

| 266. | 08-13-02 (age 25) | Ct. 1: Injury to a Child; Ct. 2: Retaliation; 41st District Court; El Paso, Texas; Cause No. 20020D04329. | Police Department; El Paso, Texas. | 10-24-02: Dismissed. |
|---|---|---|---|---|

According to investigative reports prepared by the El Paso Police Department, officers were dispatched to 2108 Magoffin street in reference to an aggravated assault. Upon arrival, officers met with the complainant who reported Enriquez arrived at her home attempting to locate his wife. The complainant informed a verbal argument ensued between her and Enriquez. The complainant stated her son, the victim, overheard the comments and threw a small rock at Enriquez. The complainant indicated Enriquez then chased her son, a child, and proceeded to throw three large rocks at her son, striking him each time causing him pain and discomfort.

| 267. | 08-07-04 (age 27) | Possession of Marijuana Under Two Ounces; County Court at Law No. 6; El Paso, Texas; Cause No. 20040C11489. | Police Department; El Paso, Texas. | 10-19-04: Dismissed. |
|---|---|---|---|---|

Refer to paragraph number 261 for arrest details.

**Other Arrest(s)**

268. According to the El Paso County Criminal Judicial Information Management System (JIMS), from August 9, 1999 to March 1, 2007, Enriquez was cited on four different occasions for Driving While License Suspended, Unregistered Vehicle, Failure to Maintain Financial Responsibility, No or Expired Sticker, and 68 in a 55 Mile Per

Hour Zone. Dispositions of these citations consist of fines and jail time which do not exceed more than eight days custody. No other information is known.

## PART C. OFFENDER CHARACTERISTICS

### Personal and Family Data

269.  Information contained in this section was obtained from Arturo Enriquez and corroborated through telephone contact on December 30, 2008, with Enriquez' brother, Roberto Enriquez, of El Paso, Texas.

270.  Arturo Enriquez was born on July 31, 1977, in El Paso, Texas to the parental union of Francisco Enriquez, who passed away in 2005 of cirrhosis, and Maria Guadalupe Enriquez, who resides in El Paso, Texas. However, according to Enriquez' brother, Enriquez was born in Ciudad Juarez, Chihuahua, Mexico and became a naturalized United States citizen in 1983. Enriquez stated his parents were married for 40 years. Enriquez has four siblings: Francisco, who resides in Dallas, Texas; Juan Carlos and Roberto, both of whom reside in El Paso, Texas; and Alejandro, who was murdered in 2003 by a homeless man for unknown reasons. Enriquez advised he maintains a good relationship with all of his family members. Enriquez did not report any history of physical or mental abuse.

271.  Enriquez advised he was born and raised in El Paso, Texas under middle economic conditions. Shortly after his birth, Enriquez stated he established residence in Tulsa, Oklahoma where he remained until 1988. From 1989 to 1999, Enriquez resided in Houston, Texas and subsequently returned to El Paso, Texas where he lived until 2004. According to Enriquez, he was incarcerated from January 2004 to February 2006 for an undisclosed offense. After his release from incarceration, Enriquez indicated he resided in El Paso, Texas. Prior to his arrest in the instant offense, Enriquez lived in El Paso, Texas with his mother and daughters.

272.   Enriquez reported he entered a common-law relationship with Cynthia Constante in January 1995, in Houston, Texas and separated from Constante after four years. Enriquez reported Constante was a married woman; however, Enriquez indicated he did not become aware of this until later. Enriquez explained that when Constante's husband was released from prison, Constante left with him and abandoned him (Enriquez) and their daughter. One child was born to their union: Jerica Maya, age 12, who is currently residing with his mother in El Paso, Texas. Enriquez informed he was granted full custody of Jerica in Houston, Texas after Constante abandoned her. Enriquez advised he has not had contact with Constante since their separation.

273.   Furthermore, Enriquez reported he entered a common-law relationship in 2000 with Maria Murga in El Paso, Texas and separated in 2004 due to his incarceration for an undisclosed charge. Two children were born to their union: Destiny, age 5 and Justine, age 4, both of whom reside with Murga in El Paso, Texas. Enriquez reported he was Court ordered to pay $62 per week for Destiny only, as Murga was pregnant with Justine when he was incarcerated. Enriquez advised he has weekly contact with his daughters. According to Enriquez, Murga met somebody else while he was incarcerated and started a new relationship.

**Physical Condition**

274.   Enriquez stands five feet eleven inches tall, weighs 210 pounds, has brown eyes, and black/greyish hair. Enriquez can be identified by the following tattoos: tribal art, an eagle, three dots, the letter "J" and one dot on his left hand; five clowns on his upper left arm; a mermaid, a female, the name "Lupita" on his right arm; the name "Alejandro" on his back; a duck on his left ankle; the name "Tury" on his left leg; a claw on his right leg; female faces on the right side of his chest; five clowns on the left side of his chest; the phrase "Moments of Pleasure Years of Pain" across his chest; the names "Enriquez," "Jerica," "Destiny," and "Justine" on his stomach. In addition, Enriquez can be identified by the following scars: a scar on the right side of his eye attributed to him being accidently hit with a bat when he was a child; a

scar on his left knee; and a scar on his right arm attributed him cutting himself with a metal wire. Furthermore, Enriquez reported he has a total of three scars on his head attributed to him being assaulted. Enriquez explained that two of the scars on his head were incurred when he was assaulted and retaliated by Barrio Azteca gang members in December 28, 2007. Enriquez indicated he received stitches at R.E. Thomason Hospital in El Paso, Texas. Enriquez also explained the other scar on his head was due to him being assaulted by an unknown individual in Ciudad Juarez, Mexico for an unknown reason. Enriquez reported no complications as a result of these assaults. Enriquez did not report any other tattoos or scars, and none were visible or reported during the presentence interview. Although available information indicates Enriquez is a Barrio Azteca gang member, Enriquez denied any gang affiliation.

275. According to Enriquez, he is in good physical health and has no history of serious illness; however, Enriquez informed that while incarcerated for the instant offense, he fell in the shower and injured his back. Enriquez reported he ingested Motrin for five days for the pain. Enriquez advised that he continues to have back pain. Per the advise of Defense counsel, Enriquez elected not to sign any waivers; therefore, medical records were not obtained.

**Mental and Emotional Health**

276. Enriquez reported being mentally and emotionally stable; however, Enriquez reported that while incarcerated he had a psychological evaluation conducted by an unknown doctor. According to Enriquez, he was told a psychiatrist had to evaluate him due to his suicidal tendencies; however, Enriquez denied any suicidal tendencies. Per the advise of Defense counsel, Enriquez elected not to sign any waivers; therefore, medical records were not obtained.

### Substance Abuse

277. Enriquez reported the weekly consumption of alcoholic beverages since the age of seventeen with the last instance of alcohol use on December 28, 2007. Enriquez informed he smoked one marijuana cigarette daily since the age of sixteen with the last instance of marijuana use in 2004. In addition, Enriquez advised he used cocaine once every two months since the age of seventeen with the last instance of cocaine use in 2002. Enriquez denied any other illicit drug usage or abuse. Enriquez reported to have been Court ordered as part of his conditions of probation, to participate in substance abuse counseling at Narcotics Anonymous/Alcoholic Anonymous in El Paso, Texas. (corroborated by Enriquez' brother) Enriquez advised he completed his counseling successfully in 2003. Enriquez was unable to provide any additional information. Enriquez admitted to being addicted to marijuana and reported he would be willing to accept substance abuse treatment should it be imposed by the Court.

### Education and Vocational Skills

278. Enriquez informed he competed the 9th grade at North Shore High School in Houston, Texas in 1989 or 1990. According to the school registrar, there is no record of Enriquez having attended school there.

279. Enriquez did not report any other formal education or vocational training.

### Employment Record

280. The information contained in this section was corroborated by Enriquez's brother, Roberto Enriquez.

281. Since January 14, 2008, Enriquez has been in federal custody by virtue of his arrest in the instant offense.

282. From February 2006 to January 10, 2008, Enriquez was employed as a roofer at Southwestern Roofing in El Paso, Texas. He reportedly earned $450 per week. According to the employer, Enriquez was employed intermittently from March 3, 3006 to January 18, 2008.

283. Between January 2004 to January 2006, Enriquez was serving a prison term under Cause No. 20020D00697.

284. From 2001 to January 2004, Enriquez was employed as a roofer at Southwestern Roofing in El Paso, Texas. He reportedly earned $450 per week. According to the employer, Enriquez was employed intermittently from March 3, 3006 to January 18, 2008.

285. In 2001, Enriquez was reportedly employed as a forklift operator at Southwest Staffing in El Paso, Texas. He reportedly earned $7.50 per hour. According to the employer, Enriquez was employed on the following dates: from February 28, 2001 to June 22, 2001; July 9, 2001 to October 19, 2001; and November 12, 2001 to December 24, 2001.

286. In 2000, for six months, Enriquez was employed as a forklift operator at Dickerson and Personnel in El Paso, Texas. He reportedly earned $7.50 per hour. Attempts to contact this employer were made; however, attempts were futile.

287. Between 1995 to 1999, Enriquez was employed as an unloader at National Lumper Service in Houston, Texas. He reportedly earned $550 per week. Attempts to contact this employer were made; however, attempts were futile.

288. According to Enriquez, during periods of unemployment he performed odd jobs, such as landscaping and painting to financially support himself and his daughters.

### Financial Condition:  Ability to Pay

289.    A review of Enriquez' Personal Financial Statement form reflects no assets or liabilities. His monthly expenditures consist mainly of personal living expenses for him and his family. A financial affidavit filed in the U.S. District Court resulted in counsel being appointed to represent Enriquez in these Court proceedings.

290.    Based on Enriquez' reported financial condition it does not appear he is capable of paying a fine or any other Court imposed costs; however, the Court may consider imposing a minimal fine, or waive said fine. Considering the minimum term of imprisonment which can be imposed, Enriquez will have ample opportunity to participate in the Bureaus of Prison's Inmate Financial Responsibility Program, which will allow him the opportunity to make monthly payments toward his fine or any other court imposed costs, based on institutional earnings or community resources. Additionally, any amount not paid while in custody can be paid during his term of supervision.

## PART D.  SENTENCING OPTIONS

### Custody

291.    **Statutory Provisions:** The term of imprisonment is 20 years custody. 18 U.S.C. § 1951(a).

292.    **Guideline Provisions:** Based on a total offense level of 43 and a criminal history category of VI, the guideline imprisonment range is Life. U.S.S.G. Chapter Five, Part A. However, pursuant to U.S.S.G. § 5G1.1(a), where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence. As such, the term of imprisonment becomes 240 months.

## Supervised Release

293. **Statutory Provisions:** The term of supervised release is not more than 3 years. 18 U.S.C. § 3583(b)(2).

294. Pursuant to 18 U.S.C. § 3583(d), mandatory drug testing shall be imposed as a condition of supervised release unless suspended by the Court.

295. **Guideline Provisions:** If a term of imprisonment of more than one year is imposed, the guidelines require a term of supervised release of 2 to 3 years. U.S.S.G. §§ 5D1.1(a) and 5D1.2(a)(2).

## Probation

296. **Statutory Provisions:** Probation is expressly precluded by statute. 18 U.S.C. § 3561(a)(1).

297. **Guideline Provisions:** Probation is expressly precluded by statute. U.S.S.G. § 5B1.1(b)(1).

## Fines

298. **Statutory Provisions:** The maximum fine is $250,000. 18 U.S.C. § 3571(b)(3).

299. A special assessment of at least $100 is mandatory. 18 U.S.C. § 3013(a)(2)(A).

300. **Guideline Provisions:** The fine range is $25,000 to $250,000. U.S.S.G. § 5E1.2(c)(1).

301. Subject to Enriquez' ability to pay, the Court shall consider imposing an additional fine amount that is at least sufficient to pay the costs to the Government of any

imprisonment, probation or supervised release ordered. U.S.S.G. § 5E1.2(d)(7). The most recent Memorandum from the Administrative Office of the U.S. Courts dated May 6, 2008, suggests a monthly cost of $2,076.83 be used for imprisonment, a monthly cost of $301.80 be used for supervision, and a halfway house is $1,905.92.

### Restitution

302.    Restitution is not an issue in this case.

### Forfeiture

303.    Forfeiture is not an issue in this case.

### Denial of Federal Benefits

304.    Any individual convicted of any Federal or state offense consisting of the distribution of controlled substances shall at the discretion of the Court, upon first conviction for such an offense, be ineligible for any or all federal benefits for up to 5 years after such conviction.  21 U.S.C. § 862(a)(1)(A) and U.S.S.G. § 5F1.6.

## PART E.  FACTORS THAT MAY WARRANT DEPARTURE

305.    There do not appear to be any aggravating or mitigating factors regarding the offense or Enriquez which would warrant a departure from the applicable guideline range.

## PART F.  FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

306.    The probation officer has not identified any factors under 18 U.S.C. § 3553(a) that may warrant a sentence outside the advisory guideline range.

**Re:** Enriquez, Arturo
**Aka:** "Tury"
**Dkt. No.:** EP-08-CR-59DB(15)

Respectfully submitted,

SONIA A. LUJAN
U.S. Probation Officer

Approved:

DAVID NATIVIDAD
Supervising U.S. Probation Officer

**Judgment (6 pages)**

**Page 124**

AO 245 B (Rev. 06/05)(W.D.TX.) - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Western District of Texas
### EL PASO DIVISION

UNITED STATES OF AMERICA

    v.

ARTURO ENRIQUEZ aka "Tury"

    Defendant.

Case Number   EP-08-CR-59-DB(15)
USM Number   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

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

*FILED 2009 APR 14 PM 4:25 CLERK US DISTRICT COURT WESTERN DISTRICT OF TEXAS BY_____ DEPUTY*

The defendant, ARTURO ENRIQUEZ aka "Tury", was represented by Leonard Morales.

An Oral Motion by the Defendant for Judgment of Acquittal as to Count 5 was granted by the Court on November 21, 2008.

The defendant has been found not guilty on Count 11 and is discharged as to such Count.

The defendant was found guilty on Count 3 by a jury verdict on December 2, 2008 after a plea of not guilty. Accordingly, the defendant is adjudged guilty of such Count, involving the following offense:

| Title & Section | Nature of Offense | Offense Ended | Count (s) |
|---|---|---|---|
| 18 U.S.C. 1951 | Conspiring to interfere with commerce by threats or violence | 1-1-2003 and continuing through and including on or about the date of the return of this indictment | 3 |

As pronounced on April 13, 2009, the defendant is sentenced as provided in pages 2 through 6 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the Court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the _14th_ day of April, 2009.

DAVID BRIONES
United States District Judge

AO 245 B (Rev. 06/05)(W.D.TX.) - Imprisonment

Judgment--Page 2

Defendant:  ARTURO ENRIQUEZ aka "Tury"
Case Number:  EP-08-CR-59-DB(15)

### IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 180 months.

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant serve this sentence at  a facility as close to El Paso, Texas as possible and that the defendant be allowed to participate in the Comprehensive Drug Treatment Program at the designated institution.

The defendant shall remain in custody pending service of sentence.

### RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

AO 245 B (Rev. 06/05)(W.D.TX.) - Supervised Release

Judgment--Page 3

Defendant:  ARTURO ENRIQUEZ aka "Tury"
Case Number:  EP-08-CR-59-DB(15)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 3 years.

While on supervised release, the defendant shall comply with the mandatory, standard and if applicable, the special conditions that have been adopted by this Court as set forth on pages 4 and 5 of this judgment.

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Judgment--Page 4

Defendant: ARTURO ENRIQUEZ aka "Tury"
Case Number: EP-08-CR-59-DB(15)

## CONDITIONS OF SUPERVISION

**Mandatory Conditions:**

1) The defendant shall not commit another federal, state, or local crime.

2) The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

3) In supervised release cases only, the defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

4) If convicted of a felony, the defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5) The defendant shall cooperate in the collection of DNA as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. § 1413a).

6) If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), the defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.

7) If convicted of a domestic violence crime as defined in 18 U.S.C. § 3561(b), the defendant shall participate in an approved program for domestic violence.

8) If the judgment imposes a fine or restitution, it is a condition of supervision that the defendant pay in accordance with the Schedule of Payments sheet of the judgment.

**Standard Conditions:**

1) The defendant shall not leave the judicial district without permission of the court or probation officer.

2) The defendant shall report to the Probation Officer and shall submit a truthful and complete written report within the first five days of each month.

3) The defendant shall answer truthfully all inquires by the Probation Officer and follow the instructions of the Probation Officer.

4) The defendant shall support his or her dependents and meet other family responsibilities.

5) The defendant shall work regularly at a lawful occupation unless excused by the Probation Officer for schooling, training or other acceptable reasons.

6) The defendant shall notify the Probation Officer at least ten days prior to any change in residence or employment.

7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the Probation Officer.

10) The defendant shall permit a Probation Officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the Probation Officer.

11) The defendant shall notify the Probation Officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 B (Rev. 05/04)(W.D.TX.) - Supervised Release

Defendant:  ARTURO ENRIQUEZ aka "Tury"
Case Number:  EP-08-CR-59-DB(15)

14)  If convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4), or has a prior conviction of a State or local offense that would have been an offense as described in 18 U.S.C. § 4042 (c)(4) if a circumstance giving rise to Federal jurisdiction had existed, the defendant shall participate in a sex offender treatment program approved by the probation officer.  The defendant shall abide by all program rules, requirements and conditions of the sex offender treatment program, including submission to polygraph testing, to determine if the defendant is in compliance with the conditions of release.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based on the defendant's ability to pay.

15)  The defendant shall submit to an evaluation for substance abuse or dependency treatment as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a program approved by the probation officer for treatment of narcotic addiction or drug or alcohol dependency which may include testing and examination to determine if the defendant has reverted to the use of drugs or alcohol.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

16)  The defendant shall submit to an evaluation for mental health counseling as directed by the probation officer, and if deemed necessary by the probation officer, the defendant shall participate in a mental health program approved by the probation officer.  The defendant may be required to contribute to the cost of the services rendered (copayment) in an amount to be determined by the probation officer, based upon the defendant's ability to pay.

17)  If the defendant is excluded, deported, or removed upon release from imprisonment, the term of supervised release shall be a non-reporting term of supervised release.  The defendant shall not illegally re-enter the United States.  If the defendant lawfully re-enters the United States during the term of supervised release, the defendant shall immediately report in person to the nearest U.S. Probation Office.

18)  If the judgment imposes other criminal monetary penalties, it is a condition of supervision that the defendant pay such penalties in accordance with the Schedule of Payments sheet of the judgment.

19)  If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall provide the probation officer access to any requested financial information.

20)  If the judgment imposes a fine, special assessment, restitution, or other criminal monetary penalties, it is a condition of supervision that the defendant shall not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the payment schedule.

The Court further adopts such of the following special conditions applied to the supervised person by the judge at the time of sentencing:

1)  **COMMUNITY CONFINEMENT:** The defendant shall reside in a Community Corrections Center for a period of _____ months to commence on _____.  Further, once employed, the defendant shall pay 25% of his/her weekly gross income for his/her subsistence as long as that amount does not exceed the daily contract rate.

2)  **HOME DETENTION:** The defendant shall participate in the Home Confinement Program for a period of _____ days/months.  During this time the defendant shall remain at his/her place of residence except for employment and other activities approved in advance by the probation officer.  The defendant shall maintain a telephone at his/her place of residence without "call forwarding," a "modem," "caller ID," "call waiting," or portable cordless telephones for the above period.  At the direction of the probation officer, the defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer.  The court further orders that the defendant shall pay for the costs of Home Confinement, as directed by the probation officer.

3)  **COMMUNITY SERVICE:** The defendant shall perform _____ hours of community service work without pay, at a location approved by the probation officer, at a minimum rate of four hours per week, to be completed during the first _____ months of supervision.

AO 245 B (Rev. 06/05)(W.D.TX.) - CMP

Judgment--Page 6

Defendant: ARTURO ENRIQUEZ aka "Tury"
Case Number: EP-08-CR-59-DB(15)

### CRIMINAL MONETARY PENALTIES/ SCHEDULE

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth.  Unless the Court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  Criminal Monetary Penalties, except those payments made through Federal Bureau of Prisons' Inmate Financial Responsibility Program shall be paid through the Clerk, United States District Court,  511 E. San Antonio Street, Room 219 El Paso, Texas 79901.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTAL: | $100.00 | $1,000.00 | $0 |

### Special Assessment

It is ordered that the defendant shall pay to the United States a special assessment of $100.00.  Payment of this sum shall begin immediately.

### Fine

The defendant shall pay a fine of $1,000.00.  Payment of this sum shall begin immediately.  The Court determines that the defendant does not have the ability to pay interest and therefore waives the interest requirement pursuant to 18 U.S.C. § 3612(f)(3).  The fine is below guideline range because of the defendant's inability to pay a fine within the guideline range.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column above.  However, pursuant to 18 U.S.C. § 3664(i), all non-federal victims must be paid before the United States is paid.

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed.  See 18 U.S.C. §3614.

The defendant shall pay interest on any fine or restitution of more than $2,500.00, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f).  All payment options may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

Payments shall be applied in the following order: (1)  assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest,  (7) penalties, and (8) costs, including cost of prosecution and court costs.

Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

## Notice of Appeal (1 page)

## Page 130

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

FILED

2009 APR 21  PM 1:58

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                              DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. EP-08-CR-00059 DB(15) |
| | § | |
| ARTURO ENRIQUEZ | § | |

#### NOTICE OF APPEAL

COMES NOW Arturo Enriquez, by and through his attorney of record, and hereby gives

notice of appeal to the United States Court of Appeals for the Fifth Circuit from the Judgment in his

Criminal Case and the sentence pronounced on April 13, 2009.

Respectfully submitted,
**LAW OFFICE OF LEONARD MORALES**

Leonard Morales
Attorney & Counselor at Law
303 Texas Ave., 9th Floor
El Paso, Texas 79901
Ph: (915)546-2696
Fx: (915)532-0904
Attorney for Arturo Enriquez

#### Certificate of Service

I certify that a true and correct copy of the above Motion was served upon opposing counsel via

hand delivery, in accordance with the Federal Rules of Criminal Procedure on April 21, 2009.

Leonard Morales

## CERTIFICATE OF SERVICE

I served two copies of the foregoing Record Excerpts and diskette containing the brief on Johnny Sutton, U.S. Attorney for the Western District of Texas (Attn: Assistant U.S. Attorney Joseph H. Gay Jr.), by mailing them to his office at 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216-5512, on January 11th, 2009. I also served a copy on Arturo Enriquez, US Marshall # 10168280, by mailing him a copy to West Texas Detention Facility, 401 S. Vaquero Street, P.O. Box 430, Sierra Blanca, Texas 70851 in compliance with Fifth Circuit Rule 31.1.

PATRICK A. LARA
*Attorney for Defendant-Appellant*